IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DR. MANHUA MANDY LIN, | : | CIVIL ACTION  NO. |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| ROHM AND HAAS COMPANY | : | |
| d/b/a Dow Advanced Materials | : | |
| 100 Independence Mall West, | : | |
| Philadelphia, PA 19106 | : | |
| Defendant. | : | |

## COMPLAINT

## I.     INTRODUCTION

Plaintiff, Dr. Manhua Mandy Lin ("Dr. Lin"), brings this action against her former employer, Defendant, Rohm and Haas Company ("Rohm and Haas"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 *et seq.* ("PHRA"). Plaintiff was retaliated against for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In addition, Plaintiff was retaliated against for complaining about and opposing the Defendant's retaliatory acts and practices. Plaintiff also brings related common law claims arising under State Law.

II.   **PARTIES**

1.      Plaintiff, Dr. Manhua Mandy Lin, is an adult female and a citizen of the Commonwealth of Pennsylvania, residing in Maple Glen, PA 19002.

2.      Plaintiff was employed with Defendant for approximately eleven (11) years.  At all times material hereto, Plaintiff was employed for at least twelve hundred and fifty (1,250) hours of service during each twelve (12) month period.

3.      Defendant, Rohm and Haas Company, is a Delaware corporation with its principal place of business at 100 Independence Mall West, Philadelphia, PA  19106.

4.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

5.      At all times material hereto, Defendant employed more than fifteen (15) employees.

6.      At all times material hereto, Defendant employed more than fifty (50) employees at its principal places of business.

7.      At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

8.      At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

9.      At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

2

### III.    JURISDICTION AND VENUE

10.    The causes of action which form the basis of this matter arise under Title VII and the PHRA, and related common law claims arising under state law, for breach of contract and tortious interference with prospective contractual relations.

11.    The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

12.    The District Court has supplemental jurisdiction over Count II (PHRA), Count III (breach of contract), and Count IV (intentional interference with prospective contractual relations pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in the District Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000(e)-5(f).

### IV.    PLAINTIFF'S COMPLIANCE WITH ADMINISTRATIVE REQUIREMENTS

14.    On or about January 5, 1999, Dr. Lin filed a timely administrative Charge of Discrimination ("First Charge") against Rohm and Haas with the Equal Employment Opportunity Commission ("EEOC"), in which Dr. Lin complained of acts of discrimination.  This charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

15.    On or about June 16, 2000, Dr. Lin filed a timely administrative Charge of Discrimination ("Second Charge") against Rohm and Haas with the EEOC, in which Dr. Lin complained of acts of retaliation.  This charge was cross-filed with the PHRC.

16.     On or about August 21, 2001, Dr. Lin filed a timely administrative Charge of Discrimination ("Third Charge") against Rohm and Haas with the EEOC, in which Dr. Lin complained of additional acts of retaliation.  This charge was cross-filed with the PHRC.

17.     On or about June 21, 2004, Dr. Lin filed a timely administrative Charge of Discrimination ("Fourth Charge") against Rohm and Haas with the EEOC, in which Dr. Lin complained of additional acts of retaliation alleged herein.  Dr. Lin's Fourth Charge was cross-filed with the PHRC.  Attached hereto, as Exhibit "A", is a true correct copy of Dr. Lin's Fourth Charge.

18.     On or about February 1, 2011, the EEOC issued a "for cause" Determination ("the Determination") in favor or Dr. Lin for the Fourth Charge.  Attached hereto, as Exhibit "B," is a true and correct copy of the Determination issued to Dr. Lin by the EEOC.

19.     On or about March 8, 2011, the EEOC issued to Dr. Lin a Notice of Right to Sue for the Fourth Charge.  Attached hereto, as Exhibit "C", is a true and correct copy of the Notice of Right to Sue issued to Dr. Lin by the EEOC.

20.     Dr. Lin is filing this action within ninety (90) days of her receipt of the Notice of Right to Sue.

21.     For the reasons stated above, Dr. Lin has the right to include in this action, the PHRA claims against Rohm and Haas.  The PHRA claims are properly before the Court because Dr. Lin filed the Charge of Discrimination with PHRC more than one year ago.

22.   For all the reasons stated above, Dr. Lin has fully and timely complied with all administrative prerequisites and requirements for the filing of this action under Title VII and the PHRA.

## V.   FACTUAL BACKGROUND

### A.   Dr. Lin's Employment History at Rohm and Haas

23.   Dr. Lin was hired as a Senior Research scientist by Rohm and Haas on January 3, 1989.  On February 1, 1995, Dr. Lin transferred to the Monomers Research Department and was assigned a lead role in the metal oxide catalysis research for acrylic acid production.

24.   As a group leader and Senior Scientist assigned to metal oxide research for acrylic acid production, Dr. Lin's research was exclusively dedicated to the development of mixed metal oxide catalysts for the synthesis of acrylic acid from propane.  Dr. Lin did not work in the area of methacrylic acid production, which is a completely different chemical.

25.   In January 1999, Dr. Lin filed a Charge of Discrimination with the EEOC, in which Dr. Lin complained of various acts of discrimination and retaliation in violation of Title VII.

26.   On or about November 10, 1999, Dr. Lin and Rohm and Haas participated in mediation with the EEOC that resulted in a Settlement Agreement between the parties ("the Settlement Agreement").  Pursuant to the Settlement Agreement, Dr. Lin agreed to resign from her employment at Rohm and Haas by November 30, 1999.  In addition to her resignation, the Settlement Agreement provided that Dr. Lin would

5

receive a promotion prior to her resignation, receive credit for all patents attributable to her, and receive a technical award recognizing her scientific achievement.

27.     The Settlement Agreement provided that Dr. Lin would concurrently sign a separate agreement with Rohm and Haas within five (5) business days that would address confidentiality concerns and establish a one (1) year non-compete restriction in the area of acrylic acid  ("the Agreement and Release").

28.     As set forth in the Settlement Agreement, in exchange for Dr. Lin's promise to not institute a lawsuit against Rohm and Haas based on the First Charge, Dr. Lin was expressly authorized to publish her prior research (in acrylic acid production), subject only to a trade secret review by Dr. Scott Han ("Dr. Han").  In the event of a dispute, Dr. Charles Tatum ("Dr. Tatum") would conduct an additional review.  Dr. Han and Dr. Tatum were both employees of Rohm and Haas.

29.     The Agreement and Release was signed by Dr. Lin and Rohm and Haas on November 17, 1999, and November 18, 1999, respectively.  The Agreement and Release adopted the non-compete covenant in the Settlement Agreement, which provided for a one-year non-compete timeframe for work on "catalysts in relation to acrylic acid." Further, as provided by the Settlement Agreement, the Agreement and Release allowed Dr. Lin to publish her prior research subject to a trade secret review by Dr. Han, and in the event of a dispute, an additional review by Dr. Tatum.

30.     As documented in the Settlement Agreement and Agreement and Release signed by Dr. Lin and Rohm and Haas ("the Agreements"), both the trade secret provision and the non-compete provision were limited in scope:  the non-compete restriction was limited temporally, and  both provisions were limited to the area acrylic

acid research.  As written, the Agreements do not apply to Dr. Lin's activities unrelated to acrylic acid.  As written, the Agreements do not apply to Dr. Lin's employment after November 2000.

31.     Pursuant to the Agreements, Rohm and Haas was required to reimburse Dr. Lin for out of pocket expenses and reasonable compensation for post-employment time spent by her at the request of Rohm and Haas to review and execute papers required for filing and prosecuting patent applications and for establishing Rohm and Haas ownership relating to inventions created by Dr. Lin during her employ at Rohm and Haas.

**B.     Defendants Continuing Acts of Unlawful and Retaliatory Conduct through June, 2000:**

32.     While she was still employed by Rohm and Haas, Dr. Lin received approval from Rohm and Haas to make a presentation at the American Chemical Society meeting ("ACS Meeting") in San Francisco in March 2000.  Dr. Lin was scheduled to present acrylic acid research she conducted while still employed by Rohm and Haas.

33.     Pursuant to her obligations under the Agreements, Dr. Lin prepared a PowerPoint presentation consisting of twenty (20) slides and submitted an outline version of it to Rohm and Haas for a trade secret review.  Rohm and Haas approved nineteen (19) slides, but objected to one (1) slide that contained data copied from a published patent application that was still pending.  Dr. Lin was listed as the inventor on the published patent application.

34.     Rohm and Haas objected to the inclusion of this data in Dr. Lin's presentation.  However, the information Rohm and Haas objected to was public

information that was published by the European Patent Office in December 1999. The information was available in print and electronic form on the Internet.

35.     Pursuant to the Agreements, because there was a dispute between Dr. Han and Dr. Lin over the inclusion of the publically available data, Dr. Lin requested an additional trade secret review by Dr. Tatum. However, Dr. Lin did not receive the additional review. Dr. Han threated to damage her job search and career if she included the already-published data in her presentation.

36.     On or about March 28, 2000, just before Dr. Lin was scheduled to give her presentation, Dr. Han handed Dr. Lin a sealed envelope as she was going into the conference room to begin. Dr. Lin did not have the opportunity to open the envelope prior to making her presentation.

37.     Aside from Dr. Han, one (1) other Rohm and Haas employee attended Dr. Lin's presentation. At no time during the presentation at the ACS Meeting did Dr. Lin disclose information that constituted a trade secret or confidential information of Rohm and Haas other than as specifically authorized by Rohm and Haas or by law.

38.     On or about March 29, 2000, Dr. Lin returned home from San Francisco. For the first time, Dr. Lin opened the envelope that was handed to her by Dr. Han. She opened it in front of a notary. The envelope contained a letter from a Rohm and Haas attorney that was dated March 28, 2000. The letter threatened legal action against Dr. Lin if she discussed the (already published) patent information.

39.     On or about April 2, 2000, Dr. Lin made an informal complaint to the EEOC about the threats made prior to her presentation at the ACS Meeting. Dr. Lin

believed the threats were made in violation of the Agreements and otherwise prohibited by law.

40. The EEOC did not immediately contact Rohm and Haas about Dr. Lin's informal complaint.

41. On or about May 23, 2000, an EEOC representative notified Rohm and Haas that Dr. Lin had complained about the threatening remarks and the restrictions that were imposed—but not included—in the Agreements.

42. During the intervening time period from March 29, 2000, until May 23, 2000, Rohm and Haas did not contact or attempt to contact Dr. Lin about the alleged unauthorized presentation she made at the ACS Meeting.

43. On or about May 26, 2000, a representative of Rohm and Haas sent a letter to Dr. Lin alleging for the first time that: a) Dr. Lin took data from Rohm and Haas without its permission or knowledge; b) Dr. Lin disclosed Rohm and Haas trade secrets at her March 2000 presentation; and c) Dr. Lin had implied to the EEOC mediator that she was contemplating making future presentations without consulting Rohm and Haas prior to those presentations.

44. After receiving the letter, Dr. Lin met with the EEOC mediator that was mentioned in Rohm and Haas's letter. The EEOC mediator said that he never suggested that Dr. Lin would not act according to the provisions contained in the Agreements.

45. On or about June 1, 2000, an EEOC representative hand delivered a letter to Rohm and Haas to specifically correct an erroneous "impression" that Rohm and Haas may have drawn from the prior conversation and to reaffirm Dr. Lin's intention to

comply with her contractual obligations.  Further, the letter stated:  "To overstate the obvious, Dr. Lin has no obligation to consult with Rohm and Haas before publishing data that is publically available."

46.     On or about June 2, 2000, Rohm and Haas filed a lawsuit in the Court of Common Pleas of Montgomery County, Pennsylvania, Civil Action No. 00-1035, seeking a Preliminary and Permanent Injunction (the "Injunction Action") alleging that Dr. Lin was threatening to publish confidential and trade secret information in the future without providing Rohm and Haas with prior opportunity for trade secret review.

47.     At the time the Injunction Action was filed, Rohm and Haas did not have any information to indicate that Dr. Lin posed an immediate threat to disclose trade secrets.  In blatant disregard of the EEOC, the Injunction Action was filed after the mediator told Rohm and Haas in person and in writing that Dr. Lin fully intended to comply with the Agreements.

48.     At the time the Injunction Action was filed, Dr. Lin did not have a scientific presentation contemplated or scheduled.  Dr. Lin did not improperly use or publish any research from her employment with Rohm and Haas.

49.     In June 2000, approximately six (6) months after settlement of her first EEOC charge, Dr. Lin filed the Second Charge of Discrimination alleging continuing retaliation by Rohm and Haas for filing the Injunction Action.

## C.     The Formation and Background on EverNu

50.     Dr. Lin formed EverNu Technology, LLC ("EverNu") in June 2000.

51.     EverNu is a Limited Liability Company registered in Pennsylvania.

52.     Dr. Lin is EverNu's founder and sole member.

53.    EverNu is a single member LLC ("SMLLC") that is designated as a disregarded entity and taxed the same as a sole proprietorship for income tax purposes pursuant to Income Tax Regulations §§ 301.7701-1 through 301.7701-3.

54.    As an SMLLC, EverNu's profits and losses pass-through to Dr. Lin's individual tax return.

55.    EverNu specializes in conducting chemical research.

56.    EverNu's location at the time of organization was Maple Glen, PA  19002. In 2009, EverNu moved to its current location in Warminster, Pennsylvania  18974. Prior to moving to its current location, EverNu was operating from leased office and lab space at Temple University and Villanova University.

57.    EverNu did not engage in any substantive activity for approximately two (2) years, from organization until 2002.

58.    Dr. Lin has been an employee of EverNu since its formation in 2000 but has not received a salary since August 2003 due to the retaliatory acts of Rohm and Haas.

59.    At various times between 2003 through 2009, EverNu employed one (1) to four (4) persons in addition to Dr. Lin, each of which was paid a salary.

60.    Since July 1, 2010, EverNu has only employed Dr. Lin.

**EverNu's MAA Project**

61.    One of EverNu's ground-breaking research projects concerns the catalytic production of methacrylic acid ("MAA") from isobutane over mixed metal oxide catalysts (the "MAA Project").

62.     When successfully developed and implemented, this technology has the potential of substantially reducing the cost of manufacturing MAA and its ester derivatives, which are used in the production of a wide range of polymer products, such as plastics for signs, displays, lighting panels, video-disks, molding resins for automotive parts, impact modifiers for PVC, as well as important ingredients in the manufacture of coatings, inks, and binders.

63.     The single most important and highest volume ester derivative of MAA is methyl methacrylate ("MMA").  In 2003, the annual market for MMA was approximately 1.5 billion U.S. dollars domestically and 4.5 billion U.S. dollars worldwide.  The MAA and MMA markets continue to grow at an annual rate of 3-4%.  Rohm and Haas is one of the three major producers of MAA and MMA in the United States.

64.     When Dr. Lin was employed by Rohm and Haas, she did not work in any area related to the production of methacrylic acid.

65.     In early 2002, EverNu and its research collaborator, Temple University, submitted a proposal to the United States Department of Energy's ("DOE") Small Business Innovative Research ("SBIR") program.  The proposal, entitled "Metal Oxide Catalyst for Methacrylic Acid Preparation Via One-Step Oxidation of Isobutane" contained a novel approach to the synthesis of MAA from isobutane using a mixed metal oxide catalyst.

66.     In July 2002, the DOE awarded EverNu a $100,000 Phase I grant to conduct a feasibility study.

67.     Based on the success of EverNu's feasibility study, EverNu then applied for, and received, a second-phase SBIR grant in 2003.  This Phase II award, which was in the amount of $750,000, was to conduct the bulk of the research for the MAA Project.

68.     EverNu's existence, and Dr. Lin's employment, depends on the SBIR grants provided by the DOE.  The SBIR grants were the sole source of revenue for EverNu from 2002 to 2008.

69.     The amount of funds awarded by the DOE for the SBIR grants is based on accepted and approved budget proposals.  From 2002 through 2008, EverNu was awarded eight (8) grants totaling approximately $3,400,000.  From 2003 through 2008, EverNu's budget proposals allocated a salary to Dr. Lin in excess of $1,000,000.  Due to Rohm and Haas's retaliatory acts, EverNu did not pay Dr. Lin's budgeted salary.

**D.   Defendant's Continuing Acts of  Unlawful and Retaliatory Conduct Occurring Between June, 2002 and August, 2003, and Related Federal Litigation:**

70.     On or about July 11, 2000, at a hearing in the Injunction Action in Montgomery County, Rohm and Haas sought and obtained a Preliminary Injunction that broadened and exceeded the scope of the Settlement Agreement negotiated by the EEOC and the Agreement and Release.

71.     As compared to the Agreements, the Preliminary Injunction that Rohm and Haas obtained, prior to the introduction of any evidence, imposed greater restrictions on Dr. Lin's ability to publish her research.  Ignoring the fact that the provisions in the Agreements were bargained for and agreed to by both parties, Rohm and Haas used litigation to impose greater restrictions that were not contemplated by the parties.

13

72.    The restrictions imposed by the Preliminary Injunction were greater than any restrictions imposed on any current or former employee of Rohm and Haas.

73.    On or about April 17, 2001, Rohm and Haas caused the Preliminary Injunction to be revised to impose even greater restrictions on Dr. Lin.  In doing so, Rohm and Haas made representations to the court that such restrictive terms were consistent with Rohm and Haas's policies applicable to all employees.

74.    The restrictions imposed by the revised Preliminary Injunction were greater than any restrictions imposed on any current or former employee of Rohm and Haas.

75.    The Injunctive Action pursued by Rohm and Haas deprived Dr. Lin of the substantive benefits to which she was entitled to under Agreements.

76.    The Injunctive Action imposed greater restrictions on Dr. Lin than the Agreements.

77.    On or about August 21, 2001, more than one (1) year after filing the Second Charge, Dr. Lin filed a Third Charge of discrimination alleging retaliation because Rohm and Haas refused perform a trade secret review that she was entitled to pursuant to the Agreements.

78.    Additionally, the Third Charge alleged that Dr. Lin was forced to cancel two (2) presentations in Chicago in August 2001 due to Rohm and Haas's failure to perform a trade secret review.

79.    On or about June 5, 2002, Dr. Lin filed a Complaint in the Eastern District of Pennsylvania alleging retaliation in violation of Title VII.  The Complaint initiated Civil Action No. 02-cv-3612 (the "Federal Litigation").

80.     On or about July 7, 2002, Dr. Lin filed an Amended Complaint alleging additional acts of retaliation in violation of Title VII.

81.     In a second opinion filed on January 22, 2004, the Honorable J. Curtis Joyner granted Rohm and Haas's Motion for Summary Judgment with regard to the retaliation claim.

82.     Judge Joyner's opinion was based upon case law that has since been abrogated by the Supreme Court decision in *Burlington Northern & Santa Fe Railway Company v. White, 548 U.S. 53 (June 22, 2006)*.

### E.     Defendant's Continuing Acts of Unlawful and Retaliatory Conduct Occurring Since August, 2003 (The Fourth EEOC Charge):

83.     Dr. Lin filed the Fourth Charge with EEOC on June 21, 2004, which alleged retaliation.

84.     The Determination of EEO District Director Spencer H. Lewis includes, "The evidence of record clearly shows that despite DOE's assessment, Respondent has continuously filed burdensome motions without any relevant bases in an effort to gain access to Charging Party's research, to disrupt her business, and to ultimately impose an undue financial burden upon her.  Based on this analysis I have determined that the evidence obtained during the investigation establishes a violation of Title VII in that Charging Party was and continues to be subjected to retaliatory actions by Respondent."

85.     In or around March 2003, Rohm and Haas learned that EverNu received a SBIR grant from the DOE for its MAA Project and began to improperly use the Montgomery County Litigation in an attempt to obtain EverNu's intellectual property—

the research proposals and results of EverNu's research—without ever making a claim against EverNu.

86.     Since 2003, Rohm and Haas has continuously and deliberately used the Montgomery County Litigation as a tactical weapon against Dr. Lin to obtain EverNu's research and eliminate EverNu as a competitor, in continued retaliation against Dr. Lin for complaining about and opposing Rohm and Haas's discriminatory and retaliatory acts and practices.

87.     On or about August 20, 2003, Rohm and Haas caused a subpoena to be issued to EverNu, which required an EverNu corporate designee to appear at a deposition.  The subpoena also demanded that EverNu produce documents including all of its confidential business information, trade secrets and intellectual property.

88.     EverNu filed a motion for a protective order, which the Montgomery County Court denied on or about December 16, 2003.  EverNu appealed this order to the Pennsylvania Superior Court, which quashed the appeal as interlocutory.

89.     On remand, Rohm and Haas moved the Montgomery County Court for an order compelling EverNu to produce all of its confidential and proprietary information, including its original research, and sought sanctions against EverNu for its refusal to do so previously.

90.     On or about January 10, 2005, the Montgomery County Court granted Rohm and Haas's motion.  The court ordered EverNu to produce all of its confidential and proprietary information to Rohm and Haas without any protection, to have a representative testify about all aspects of EverNu's business, and to pay a $1,000

sanction to Rohm and Haas.  EverNu appealed this order to the Pennsylvania Superior Court, which quashed the appeal as interlocutory.

91.     Because EverNu was unwilling to turn over its intellectual property to its competitor, at the urging of Rohm and Haas, on or about June 2, 2005, the Montgomery County Court imposed additional sanction of $100 per day on EverNu and $100 per day on Dr. Lin.  EverNu also appealed this order but it was quashed as interlocutory.

92.     In or around June 2006, Rohm and Haas caused a $32,200 judgment to be entered against non-party EverNu in the Montgomery County Litigation and caused writs of execution to be served upon EverNu's banks, which froze EverNu's accounts. The Montgomery County Court ordered that the judgment be stricken in June 2007.

93.     In or around the same time, Rohm and Haas caused a subpoena to be served upon EverNu's collaborator, Temple University.  In this subpoena, Rohm and Haas sought EverNu's confidential and proprietary research information.  Ultimately, the Montgomery County Court forced Temple University to produce 750 pages of research documents that belonged to EverNu.  These documents included EverNu's SBIR proposal for the MAA Project and other proprietary data and documents.

94.     Subsequently, after Rohm and Haas received the 750 pages of confidential research documents and had time to review EverNu's research, in or around March 2007, Rohm and Haas approached Dr. Lin and made a "settlement proposal."

95.     As part of the "settlement proposal," Rohm and Haas offered to settle the Montgomery County Litigation on the condition that non-party EverNu grant Rohm and

Haas a non-exclusive license for the technology underpinning the MAA Project for no consideration.

96.     Rohm and Haas also threatened to destroy EverNu's relationship with the DOE if EverNu did not agree to the "settlement proposal" and provide Rohm and Haas with its technology for free.

97.     EverNu rejected the "settlement proposal," which reinvigorated Rohm and Haas's campaign to improperly use the judicial process to harass EverNu, to obtain EverNu's proprietary and confidential research, and to put EverNu out of business.

98.     To that end, in December 2007, Rohm and Haas moved for a default judgment against Dr. Lin and to hold Dr. Lin in contempt in the Montgomery County Litigation.

99.     On or about May 5, 2008, the Montgomery County Court entered a default judgment against Dr. Lin and granted Rohm and Haas the following injunctive relief as a discovery sanction ("the Default Judgment"):

> 1.     The Defendant Dr. Lin is permanently enjoined from using, disclosing or divulging directly or indirectly any information that Plaintiff Rohm and Haas Company considers confidential or a trade secret.
>
> 2.     The Defendant Dr. Lin and any other entity or individual associated with Dr. Lin or acting on her behalf are permanently enjoined from proceeding with methacrylic acid research and making other disclosures and uses of Rohm and Haas trade secrets.
>
> 3.     The Defendant Dr. Lin shall cease and desist from consulting, performing any research or engaging in other activities pursuant to the outstanding EverNu Technologies LLC's contract with the Department of Energy or any other research contracts concerning or involving methacrylic acid.

> 4.     Defendant, Dr. Lin, for the next three (3) years shall not make, contribute or participate in any (a) presentation or proposal; (b) publication; (c) application or proposal for research grant whether said presentation or submission for publication or application for a research grant is made on her own behalf, or any other entity she owns or is associated with or on which she will be working as a principal scientist collaborator, employee or otherwise, without submitting the same to Rohm and Haas ninety (90) days in advance for a trade secret review and obtaining agreement of the Plaintiff Rohm and Haas, that the presentation, publication or research grant application or proposal contains no Rohm and Haas trade secrets.

At the request of Rohm and Haas, the Montgomery County Court also entered four (4) separate money judgments against EverNu in or around July 2008, which totaled approximately $117,000 and included the $32,200 judgment that had been ordered stricken in June 2007.  Rohm and Haas also caused twenty (20) writs of execution and garnishment to be served upon banks, which froze EverNu's accounts. Similarly, Rohm and Haas caused four (4) separate money judgments to be entered against Dr. Lin and caused twenty (20) writs of execution and garnishment to be served upon banks, which froze Dr. Lin's bank accounts. As in 2007, the Montgomery County Court ordered that each of these judgments be stricken in November 2008.

100.    Dr. Lin and EverNu appealed the Default Judgment to the Pennsylvania Superior Court.  In an order issued March 1, 2010, the Court held that paragraphs 2 and 3 of the permanent injunction to be overly broad.  In doing so, the Pennsylvania Superior Court noted that paragraphs 2 and 3 improperly limited Dr. Lin's MAA research, which was different from the subject matter of the Montgomery County Litigation, without a sufficient showing that the MAA research implicates Rohm and

Haas's confidential information or trade secrets over ten years after Dr. Lin left Rohm and Haas.

101.    In addition to wrongfully using the judicial process in the Montgomery Court Litigation, Rohm and Haas also attempted to make good on its promise to destroy EverNu and Dr. Lin's relationships with the DOE after Dr. Lin rejected the "settlement agreement" that would provide Rohm and Haas with free and unfettered access to EverNu's technology.

102.    On or about May 13, 2008, Rohm and Haas wrote to the DOE and demanded that the DOE cease doing business with EverNu.

103.    On or about May 13, 2008, Rohm and Haas provided the DOE with a copy of the Default Judgment and demanded that the DOE inform it as to what actions the DOE planned to take against EverNu.

104.    On or about June 23, 2008, Rohm and Haas sent an email to the DOE and demanded to know whether "all work and funding" of EverNu's MAA Project had stopped.  Rohm and Haas also insinuated that EverNu may have misused the SBIR grants.

105.    Over the next two (2) months, Rohm and Haas continued to barrage DOE with emails about EverNu.  In these emails, Rohm and Haas repeatedly sought information about the MAA Project, demanded that the DOE cut off funding to EverNu and even sought information about how to serve the DOE to collect on judgments Rohm and Haas had obtained against EverNu in the Montgomery County Litigation.

106.    Between May 2008 and March 2010, the Default Judgment prohibited EverNu from pursuing additional opportunities with the DOE or anyone else, including interested chemical manufacturers, concerning or involving the MAA project.

107.    Dr. Lin likely would have been awarded additional grant awards and/or contracts but for the unlawful and retaliatory interference of Rohm and Haas.

108.    Evernu likely would have been awarded additional grant awards and/or contracts but for the unlawful and retaliatory interference of Rohm and Haas.

109.    With regard to EverNu's MAA project, in or around February 2006, a DOE official, Charles Russomanno ("Mr. Russomanno") determined that Dr. Lin was not copying Rohm and Haas research for the DOE grant.  Pursuant to a request by the DOE General Counsel's office, Mr. Russomanno reviewed EverNu's research proposals and compared them to certain documents that Rohm and Haas alleged Dr. Lin was exposed to while she worked at Rohm and Haas.  After reviewing this information, Mr. Russomanno wrote an internal memorandum that verified the content and research direction of EverNu's SBIR proposals were "different and unrelated to the content and research direction presented in the Rohm and Haas documents."

110.    In 2007, EverNu submitted patent application US2008/0177106 ("the Patent Application") to the United States Patent and Trademark Office ("the USPTO") for its inventions made in the MAA Project.

111.    The Patent Application was published in July 2008.

112.    However, because of the Default Judgment, EverNu was unable to market its invention, seek potential licensees, or locate collaborators for further commercial development of the technology.

113.    From 2002 until April 2008, EverNu received eight (8) SBIR grants from the DOE.  The grants are EverNu's only source of revenue.  Through the Default Judgment issued in May 2008 by the Montgomery County Court, Rohm and Haas imposed an additional level of trade secret review on Dr. Lin.  The Default Judgment provided that any of EverNu's proprietary SBIR proposals must be submitted to Rohm and Haas for a 90-day trade secret review and must receive approval from Rohm and Haas before submitting them to the federal government.  The 90-day trade secret review period imposed by the Default Judgment is much longer than the actual solicitation period of any SBIR program, which is one (1) to two (2) months. Additionally, Dr. Lin did not want to just relinquish EverNu's intellectual property to its competitor.  Thus, through the Default Judgment, Rohm and Haas has effectively prevented Dr. Lin from working and EverNu from operating.

114.    In September 2008, the DOE released its annual SBIR solicitation with a deadline of November 2008.  Since the DOE grants were EverNu's only source of income, EverNu filed an emergency motion in the Superior Court for a stay of the Default Judgment.  In response, Rohm and Haas submitted an affidavit alleging that EverNu violated the Permanent Injunction when it submitted the Patent Application to the USPTO without obtaining approval.  The affidavit also accused Dr. Lin of stealing the technology contained in the Patent Application.  Further, Rohm and Haas made misrepresentations to the Court by specially stating it would take action at the USPTO concerning EverNu's patent application.  Rohm and Haas never took action against EverNu at the USPTO.

115.    Despite the allegations that EverNu's Patent Application was based on information Dr. Lin stole, during the time period that the Patent Application was published and pending—July 2008 until February 2011—Rohm and Haas never challenged the patent with the USPTO.

116.    Instead of going to the USPTO to challenge the Patent Application and the alleged stolen technology, Rohm and Haas used the Montgomery County Litigation to prevent EverNu from marketing its technology and prevent Dr. Lin from receiving a salary attributable to the technology.  Essentially, Rohm and Haas is using the Montgomery County Litigation in an improper manner to do what it otherwise could not—assert a credible challenge to EverNu's Patent Application—through the USPTO.

117.    On or about February 15, 2011, EverNu's Patent Application was granted, listing Dr. Lin as a co-inventor.

118.    Notwithstanding that the granting of the uncontested Patent Application to EverNu and Dr. Lin is proof that they are the lawful owners of the MAA technology, Rohm and Haas has failed and refused to dismiss the Injunction Action.

119.     Rohm and Haas has relentlessly continued to use the Injunction Action to prevent Dr. Lin from benefiting from the fruit of her invention,  in retaliation against Dr. Lin for complaining about and opposing Rohm and Haas's discriminatory and retaliatory acts and practices.

120.    In addition to the retaliatory acts related to the Montgomery County Litigation and the DOE, Rohm and Haas breached the EEOC Settlement Agreement and Agreement and Release as described herein at paragraphs 23-120.

121.    As described herein at paragraphs 23-120, the Settlement Agreement included a one-year non-compete covenant for research related to acrylic acid.  Acrylic acid research is different and independent from EverNu's MAA project.  Thus, anything Dr. Lin has accomplished as is relates to the MAA project does not violate the non-compete agreement.  Further, the work Dr. Lin performed with regard to the MAA project was not done within the one-year timeframe.

122.    At all times material hereto, Dr. Lin has performed her obligations under the aforementioned EEOC Settlement agreement and Agreement and Release.

123.    Between May 2008 and March 2010, EverNu and Dr. Lin were precluded from submitting two (2) applications for the DOE's Industrial Technology grant program to further develop the MAA project.

124.    Dr. Lin and EverNu were prohibited from collaborating on projects with manufacturers interested in the MAA project.

125.    Dr. Lin and EverNu were precluded from marketing the technology from the MAA project.

126.    Dr. Lin and EverNu were prohibited from submitting any SBIR proposals to the DOE beginning in or around May 2008, thereby causing EverNu to lose at least three (3) years of grant revenue and causing Dr. Lin to lose her salary and other financial benefits as the sole owner and employee of EverNu.

127.    Dr. Lin and EverNu were forced to withdraw the presentation of EverNu's research scheduled at the National Green Chemistry Conference in June 2008 in Washington D.C., in which EverNu was scheduled to make a presentation to the

chemical industry describing the significant environmental benefits offered by its MAA project.

128.   Dr. Lin and EverNu were also prohibited from competing for a DOE SBIR Phase III opportunity for commercialized funding of completed DOE SBIR Phase II projects.  EverNu has completed three (3) Phase II projects.

129.   Rohm and Haas has acted with blatant disregard to the Settlement Agreement that was negotiated with the EEOC and in good faith by Dr. Lin.  Rohm and Haas acted deliberately to cause financial and emotional injury to, as well as weaken the resolve, of Dr. Lin.

130.   Rohm and Haas has proved unstoppable in its efforts to expand the scope of the covenants contained in the  Settlement Agreement to include terms not contemplated or included in the Agreement.  The terms, as they stand today, could never have been included in the original agreement because they are unlimited in duration and scope and, consequently, would have been unlawful and unenforceable. As such, Dr. Lin has been deprived of employment and the right to work in her chosen profession for more than ten (10) years after the Agreements were negotiated and signed.  Rohm and Haas has been overly aggressive and assiduous in its pursuant to impose additional terms on the Agreement.

131.   As a result of Rohm and Haas's mission to expand the terms contemplated by the parties, Dr. Lin and EverNu have incurred substantial legal fees. Since the earliest harm date listed in the Fourth Charge, August 2003, Dr. Lin and EverNu have incurred over $2.2 million in legal fees.

132. Rohm and Haas's justification for its retaliatory conduct is transparent and pretextual.

133. Rohm and Haas has failed to provide a legitimate, non-retaliatory reason for its unlawful acts of retaliation directed toward Dr. Lin since she filed the Fourth Charge of Discrimination with the EEOC.

134. Rohm and Haas unlawfully retaliated against Dr. Lin by: (1) using the Montgomery County litigation to harm her; (2) interfering with her employment with EverNu; (3) interfering with her relationship with the DOE; (4) interfering with her relationship with Temple University; (5) interfering with her ability to publish her years of research with EverNu; (6) interfering with her ability to market the results of the MAA technology EverNu developed; (7) interfering with her ability to file patent applications to protect the technology developed by EverNu; (8) breaching the EEOC Settlement Agreement and Agreement and Release; and, (9) refusing to pay debt owed to Dr. Lin for services provided to Rohm and Haas on a contract basis.

135. Dr. Lin's opposition to Rohm and Haas's unlawful retaliation in violation of Title VII was a motivating and determinative factor in Rohm and Haas's retaliatory treatment of Dr. Lin.

136. Dr. Lin's participation in a Title VII proceeding was a motivating and determinative factor in Rohm and Haas's retaliatory treatment of Dr. Lin.

137. The retaliatory actions taken against Dr. Lin after she complained of Rohm and Haas's discriminatory and retaliatory conduct were materially adverse and would have discouraged a reasonable employee from making or support a charge of discrimination.

**F.     Damages Suffered by Plaintiff**

138.    EverNu's income through 2010 was solely a result of grant awards.  From 2002 through 2008, EverNu was awarded eight (8) SBIR grants totaling approximately $3,400,000. For each of the grants, Dr. Lin's salary was a budgeted component.

139.    As a direct and proximate result of Rohm and Haas's unlawful and retaliatory acts and practices, since 2008, EverNu has been precluded from applying for additional grant awards and, Dr. Lin has lost and continues to lose employment wages and other benefits of employment.

140.    As a direct and proximate result of Rohm and Haas's unlawful and retaliatory acts and practices, Dr. Lin has lost and continues to lose financial benefits from additional grant awards and other lost business opportunities.

141.    As a direct and proximate result of Rohm and Haas's unlawful and retaliatory acts and practices, between 2003 and 2011, EverNu has incurred legal fees in excess of $1,570,000.  EverNu's legal fees result in direct harm to Dr. Lin as the single member of EverNu

142.    As a direct and proximate result of Rohm and Haas's unlawful and retaliatory acts and practices, between 2003 and 2011, Dr. Lin has personally accumulated legal fees in excess of $700,000, and has accumulated receivables in excess of $250,000 for patent services provided to Rohm and Haas.

143.    As a direct and proximate result of Rohm and Haas's unlawful and retaliatory acts and practices, Dr. Lin has suffered and will suffer a loss of earnings, diminution of earning capacity, loss of employee benefits, pain and suffering, mental

anguish, emotional distress, embarrassment, humiliation, inconvenience, and loss of enjoyment of life, the full extent of which is not known at this time.

144.    Rohm and Haas's unlawful and retaliatory conduct was sufficiently outrageous and egregious to warrant an award of punitive damages in favor of Dr. Lin.

## COUNT I – TITLE VII

145.    Plaintiff incorporates herein by reference paragraphs 1 through 144 above, as if set forth herein in their entirety.

146.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

147.    Said violations were intentional and warrant the imposition of punitive damages.

148.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney fees and costs.

149.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliatory acts unless and until this Court grants the relief requested herein.

150.    No previous application has been made for the relief requested herein.

## COUNT II - PHRA

151.   Plaintiff incorporates herein by reference paragraphs 1 through 150 above, as if set forth herein in their entirety.

152.   Defendant, by the above improper, retaliatory acts, has violated the PHRA.

153.   Said violations were intentional and willful.

154.   As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

155.   Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

156.   No previous application has been made for the relief requested herein.

## COUNT III-
## Breach of Contract

157.   Plaintiff incorporates herein by reference paragraphs 1 through 156 above, as if set forth herein in their entirety.

158.   The Agreements constitute a valid and enforceable contract entered into between Rohm and Haas and Dr. Lin.

159.   As consideration for which Plaintiff settled her First EEOC Charge(No. 170990468) and entered into the Agreements,  the restriction on Dr. Lin's ability to

compete with Rohm and Haas was limited in duration to one (1) year and limited in scope to work on catalysts in relation to acrylic acid only.

160.    Rohm and Haas's efforts to unilaterally enlarge the terms of the non-complete is a breach of the Agreements.

161.    In further violation of the Agreements, Rohm and Haas failed to reimburse Dr. Lin for time and expenses incurred by her for post-employment services provided to Rohm and Haas by Plaintiff relating to their filing of patent applications.

162.    The conduct of Rohm and Haas as aforesaid, breached the terms and conditions of the EEOC Settlement Agreement and corresponding Agreement and Release.

163.    As a direct and proximate result of Rohm and Haas' breach and wrongful conduct, Plaintiff has sustained the damages, injuries and losses set forth herein.

## COUNT IV-
## Intentional Interference With Prospective Contractual Relations

164.    Plaintiff incorporates herein by reference paragraphs 1 through 163 above, as if set forth herein in their entirety.

165.    Plaintiff had and continues to have a reasonable expectation and probability of economic advantage and prospective contractual relationships with the DOE and others, including  potential employers, grant award doners, research collaborators, and interested chemical manufacturers concerning or involving the MAA project and other research projects.

166.   The unlawful conduct of Defendant alleged herein was, and continues to be, purposeful and specifically intended to interfere with prospective contractual relations between Plaintiff and such third parties, thereby depriving Plaintiff of lost opportunities and destroying Plaintiff's expectancy of economic gain.

167.   Defendant was and is not justified or privileged to engage in the conduct described herein.

168.   Plaintiff sustained actual damages as a result of Defendant's conduct.

169.   Plaintiff is entitled to a punitive award because the Defendant engaged and continues to engage in the conduct described herein out of malice toward Plaintiff, with the sole purpose and intention of depriving Plaintiff of business opportunities and gainful employment, with willful intent to injure Plaintiff.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)   declaring the acts and practices complained of herein to be in violation of Title VII;

(b)   declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)   enjoining and permanently restraining the violations alleged herein;

(d)   entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(e)      awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(f)      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(g)      awarding compensatory damages for the loss of business opportunity sustained as a result of Defendants improper conduct;

(h)      awarding compensatory damages for the foreseeable consequential injuries, including loss of employment income and loss of business opportunity, sustained as a result of Defendant's breach of contract;

(i)      awarding compensatory damages for unpaid services and expenses  incurred by Plaintiff and billed to Defendant for  reviewing patent applications for Dr. Lin's inventions , as requested by Defendant.

(j)      awarding compensatory damages to make Plaintiff whole for out-of-pocket expenses, including counsel fees and costs required to defend herself from Rohm and Haas's unlawful and retaliatory and discriminatory claims.

(k)      awarding punitive damages to Plaintiff under Title VII;

(l)      awarding punitive damages to Plaintiff under the PHRA;

(m)      awarding punitive damages to Plaintiff under Pennsylvania common law;

(n)     awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA and Pennsylvania common law;

(o)     awarding Plaintiff the costs of suit, expert fees and other disbursements, interest and reasonable attorney's fees; and,

(p)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

CONSOLE LAW OFFICES LLC

Dated: 5/13/11          BY: _____
                            Carol A. Mager (17548)
                            1525 Locust St., 9th Floor
                            Philadelphia, PA 19102
                            (215) 545-7676
                            (215) 545-8211 (fax)

                            Attorneys for Plaintiff,
                            Dr. Manhua Mandy Lin

# EXHIBIT A

| EEOC Form 5 (5/01) | | | | |
|---|---|---|---|---|
| **CHARGE OF DISCRIMINATION** | | Charge Presented To: | Agency(ies) Charge No(s): | |
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA ☐ EEOC | **170-2004-02346** | |

| **Pennsylvania Human Relations Commission** | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr, Ms, Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Ms. Manhua M. Lin** | **(215) 659-8574** | **04-09-1956** |

| Street Address | City, State and ZIP Code |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **ROHM AND HAAS COMPANY** | **>>500** | **(215) 592-3000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **100 Independence Mall West,  Philadelphia, PA 19106** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest | Latest |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.) | **08-20-2003** | **05-20-2004** |
| | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have filed the following charges against Respondent : 170-1999-00468; 170-2000-01422 and 170-2001-01719.  One charge was mediated successfully, one resulted in a finding of "a violation of Title VII" and the last was dismissed as "no cause".  As a result of the earliest, I resigned from my position and thereby activated a  "non-compete" clause in my contract that restricted me for one year (Dec. 1999 – Nov. 2000) from working in the field of research "related to the catalytic production of acrylic acid" that I was involved while working for Respondent .  I believe that after my resignation, Respondent acted to block my access to further employment, and I filed complaints and later charges to that effect.  Respondent then filed a lawsuit in PA state court claiming that I misappropriated its trade secrets when making a public presentation.

Since that time, I have become a principal in EverNu, a company that seeks government contracts for innovative research.  I am also the principal researcher and grant writer for the company.  Respondent has filed burdensome and unlawful requests for discovery and production of documents on EverNu, pursuant to the formal lawsuit filed by Respondent in June 2000 against me as an individual.  One of the requests was filed despite a PA Superior Court order "staying" the execution of an identical earlier request.  The ensuing legal costs incurred as EverNu seeks to protect its proprietary intellectual assets have prevented EverNu from employing me and/or paying my salary.

I believe that Respondent has interfered with my employment opportunity with EverNu by taking these legal actions, in retaliation against me for protected activity under Title VII of the 1964 Civil Rights Act, as amended (Title VII).

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements | |
|---|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT | |
| | | |
| Date | Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

## Statement for Complaint filed with the EEOC in May 20, 2004

I, Manhua Mandy Lin, a formal employee of Rohm and Haas Co., make this Statement in support of my formal filing of a complaint with the EEOC in May 2004 against Rohm and Haas's continuing unlawful retaliatory conduct against me, including its interference with my current employment with EverNu Technology LLC, a small business incorporated in the state of Pennsylvania.

1.      I filed a complaint with the EEOC in Jan. 1999 against retaliation by Rohm and Haas and the complaint led to an EEOC settlement in Nov. 1999 and a follow-up Separation Agreement, both of which provide me with rights to seek employment with other employers after leaving Rohm and Haas. To protect Rohm and Haas's interest, both parties agreed, and the follow-up Separation Agreement specified a non-compete area that I would not work in for one year after my separation with Rohm and Haas. The specified area was research on "catalysts in relation to **acrylic acid**" and the non-compete period was Dec. 1999 – Nov. 2000.

2.      Rohm and Haas (R&H) continued its unlawful retaliation against me since then by filing a groundless lawsuit against me with the PA state court in June 2000, which is still continuing to this day. The state court records have established, and is not even disputed by R&H, that R&H fabricated all of its allegations when filing the lawsuit and has used knowingly false testimony and perjury in all the points it has made to the Court and misled the Court into granting R&H a preliminary injunction in April 2001 against me. The injunction Order states "Dr. Lin is enjoyed from making, releasing or disclosing any proposed scientific presentation or publication unless, after 90-day trade secret review by [Rohm and Haas], the parties agree that such publication contains no Rohm and Haas trade secrets". This practically took away most of my rights negotiated in the 1999 EEOC settlement agreement. Using that Order, R&H has many times taken away my opportunities in publishing my accomplishment and interfered with my seeking new employments with other employers. I filed another EEOC complaint in June 2000 alleging continuing retaliation by R&H. The EEOC conducted a thorough investigation and concluded in March 2002 that there is reason to believe that R&H has violated Title VII by filing the retaliatory lawsuit against me.

3.      After two years of not being able to obtain any employment from other employers, due, in part, to the interference by R&H, I started in 2002 to conduct SBIR research on behalf of my new employer, EverNu Technology LLC (a Pennsylvania Limited Liability Company) as part of my efforts to explore various opportunities for myself. I am the President and Principal Scientist and one of EverNu's employees.

4.      EverNu is a start-up technology consulting company that, since 2002, has applied for and been awarded multiple research grants for the development of various chemical process research. EverNu's business depends on conducting Small Business Innovative Research (SBIR) funded entirely by federal government agencies. EverNu obtains federal funding by submitting grant applications to governmental agencies proposing original solutions to unsolved scientific problems that those agencies have posed to the public at large. Innovation, originality and starting-from-scratch are the requirements to successful proposals for SBIR funding from the federal government which funds only about 10 % of all SBIR proposals. The SBIR funding policies are simple and clear that a proposal that secures SBIR approval can not involve any prior research by anyone, or any party's trade secret because the federal SBIR guidelines reject SBIR proposals for research on subjects that have previously been successfully explored.

5.      In 2002, EverNu submitted a grant application to the U.S. Department of Energy in response to a solicitation from the D.O.E.  The EverNu grant application sought funding for an original research project titled "Metal Oxide Catalyst for Methacyrlic Acid (MAA) Preparation via One-step Oxidation of Isobutane", since that was a previously unexplored research area by anyone. **Methacrylic acid** is a substance that is chemically and structurally distinct from **acrylic acid**. None of the known chemical processes used to prepare the latter have been or could ever be used for the former and vice verse. Clearly, no one in the world could have had any trade secret(s) in the unexplored area of MAA research by 2002 and such research has absolutely nothing to do with anything I worked on while I was employed at Rohm and Haas before Nov. 1999. In fact, R&H unequivocally testified under oath in court in 2001 (one year before EverNu decided to work on SBIR research and actually applied for and later awarded a grant to do MAA research) that the catalyst research I conducted in R&H in relation to acrylic acid does not work for the preparation of methacrylic acid. Obviously, catalyst research on methacrylic acid is not and could have never been in any way within the area defined as the non-competing area by my separation agreement with

R&H and, at any rate, the term of the non-compete agreement on "Acrylic acid" (Nov. 1999 – Nov. 2000) had long expired by 2002.

6.      Based on EverNu's original cutting edge ideas in its proposal submitted to the D.O.E., EverNu was initially awarded One Hundred Thousand ($100,000, Grant No. ER83420) Dollars to conduct a feasibility study of the proposed research, since no one, including the DOE, knows for sure if EverNu's proposed ideas would be feasible. EverNu conducted the feasibility study in collaboration with chemists associated with Temple University. The research proposal and results for this project are clearly confidential and propriety intellectual properties as well as trade secrets belonging to EverNu Technology and further subject to confidentiality agreements with Temple University, the US government (D.O.E.) and the collaborating scientists, who are not technicians but are experienced Ph.D researchers having established scientific credentials in their own right prior to working on the MAA SBIR project.

7.      In April 2003, having completed the feasibility study, EverNu applied for and received, in July 2003, from the Department of Energy additional funds in the amount of Seven Hundred Fifty Thousand ($750,000, Contract No. ER83420) Dollars to continue the research on the MAA project. In addition, EverNu applied for and was awarded another grant ($ 100,000, Contract Number ER83652) from the Department of Energy to conduct a feasibility study for the catalytic preparation of yet another chemical, with which R&H has absolutely no business whatsoever.

8.      The D.O.E. publishes on its website abstracts of the various grants awarded under its SBIR program. Apparently, in March 2003, Rohm and Haas saw the abstract of EverNu's grant on the Internet as well as the information that I am the Principal Investigator working for EverNu on this MAA project. Ever since that time, Rohm and Haas has been trying to unlawfully interfere with EverNu's government contract research with the ultimate goal of destroying my employment with EverNu. Knowing that the sure way to affect my employment with EverNu is to destroy EverNu's business and government contract research and further to drain EverNu's limited resources and eventually shut down EverNu's operation, R&H misled the Court to violate the constitutional rights of both EverNu and mine by ordering me, as an individual, to produce to R&H all of EverNu's confidential documents concerning its trade secrets and proprietary research and proposals, communications, as well as EverNu's incorporation, structure, operation and activities of both revenue-generating and non-revenue-generating. At the same time, R&H further succeeded in forcing EverNu to spend an enormous amount of money out of its very limited resources, including the portion slated for my salary, to retain legal representation to defend itself against R&H's blatant violation of EverNu's constitutional rights and to protect EverNu's intellectual properties and business secrets from R&H's unlawful intrusion.

9.      Thus in April 2003, Rohm and Haas propounded a set of document requests upon me as an individual in the state court, to produce to R&H all grant applications filed by EverNu together with EverNu's communications with the D.O.E. and all consultants and collaborators concerning those grant applications as well as all other documents relating to those grant applications. In response, objections were filed on my behalf on the grounds, among others, that all of the requested materials were the property of EverNu and therefore were not documents belonging to me and for me to produce. Rohm and Haas later filed a Motion to Compel seeking an Order requiring me, as an individual, to produce the EverNu's documents. On August 11, 2003, the Court of Common Pleas was misled into entering an Order requiring me to turn over to Rohm and Haas all of EverNu's trade secrets, confidential and proprietary information concerning US government research contracts, as requested by Rohm and Haas.

10.     Furthermore, on August 25, 2003, Rohm and Haas served EverNu with a Deposition Notice and a Subpoena Duces Tecum that purported to require EverNu to disclose to R&H information pertaining to virtually all of its activities, internal organization, sources of revenue, scientific discoveries and research results, as well as its publications and the roles of each of its collaborators. Rohm and Haas outrageously claimed that the Preliminary Injunction Order gave it the right to such complete and unrestricted access to all of EverNu's proprietary information solely because I worked for EverNu and Rohm and Haas purportedly had the right to review any of my scientific work or the fruits of my scientific work conducted on behalf of any of my current or future employers.

11.     I was advised and believed that the Order requiring me to produce EverNu's proprietary documents concerning its US government contract research to one of its direct competitors, Rohm and Haas, not only was procedurally and substantively wrong, but also constituted a blatant violation of the Constitutional rights of both EverNu and mine and that EverNu needed to have its interests protected in court. Lacking any other resources, the

small business EverNu was forced into forgoing my budgeted salary so as to retain legal representation (Drinkle, Biddle & Reath, LLP) to protect its livelihood, it proprietary and intellectual documents against the attack by Rohm and Haas, EverNu's direct competitor in chemical process research.

12.     Throughout Rohm and Haas' relentless pursuit of EverNu's US government contracts, its intellectual properties and trade secrets as well as its business secrets in an attempt to drain EverNu's livelihood and resources and to ultimately shut it down so as to completely destroy the only employment that I am having, Rohm and Haas knows full well that I have the same right as anyone else to make a living by working on the cutting edge US government contract research projects, such as EverNu's MAA research, that have never before been successfully attempted by anyone and are outside the specific area of the by-then long-expired one-year non-compete agreement, entered into by R&H and me in 1999 with the help of the EEOC. This proves beyond any doubt that the real intention for Rohm and Haas' pursuing EverNu is to use every means possible to unlawfully force EverNu out of business so as to destroy my employment opportunity. Clearly, Rohm and Haas continues its unlawful retaliation to interfere with my current employment even after the EEOC made the determination in 2002 that there was reasons to believe that Rohm and Haas engaged in unlawful retaliation when it filed the lawsuit against me in June 2000.

13.     On December 16, 2003, the lower court denied EverNu's motions to vacate the Court's Aug 11, 2003 Order, which is clearly unconstitutional and unlawful. The lower court also ruled that EverNu could not appeal and refused to stay these orders pending the appellate review by the Pennsylvania Superior Court. The appellate court overruled the orders by the lower court and in March 2004 ruled that EverNu can certainly appeal the lower court's Orders and further granted EverNu's motion to stay these Orders pending appellate review.

14.     While the Pennsylvania Superior Court is reviewing the appeal by EverNu in protecting its right as a small business to keep its proprietary information from the hand of direct competitor Rohm and Haas, its operation and existence, Rohm and Haas continued in April 2004 to unlawfully interfere with EverNu's business operation, including interfering with EverNu's presentation to the public of its research, as requested by the DOE, the government agency funding EverNu's research. Such interference consumes EverNu significant amount of resources, of which EverNu has been forced to use the money budgeted for my salary, for lacking of other resources. It appears that Rohm and Haas will not stop unless EverNu is shut down and I am out of job again.

15.     Based on the two grants (totaling $850,000 for 2003 – 2005 period) received from and the corresponding budget approved by the DOE, EverNu is to pay me a monthly salary of $10,050 over the two years from August 2003 – July 2005 for my services as the Principal Investigator and grant administrator. However, as EverNu was forced by Rohm and Haas into spending money to retain legal representation to protect its livelihood, the legal bill incurred to EverNu from August 2003 to January 2004 has totaled $89,867, which has completely drained the salary portion of EverNu's budget to pay my salary. As the direct results of Rohm and Haas unlawful interference with EverNu's operation, I was not able to receive any compensation from EverNu from August 2003 to Jan. 2004. It is obvious that my losses in compensation will continue for as long as it will take money for EverNu to defend its US government contract research and its intellectual property interests. It is also obvious that by the time EverNu exhausts its resources and collapses under R&H's aggression, I will then lose my only employment (with EverNu) after my 1999 settlement with Rohm and Haas negotiated with the help of the EEOC.

_____
DR. MANHUA MANDY LIN


Date: _____


3

# EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Philadelphia Status Line: (866) 408-8075
Philadelphia Direct Dial: (215) 440-2602
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

CHARGE NUMBER:   170-2004-02346

Ms. Manhua M. Lin

<span style="background:black">████████████</span>

vs.

Rohm and Haas Company
100 Independence Mall West
Philadelphia, PA 19106

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge. All requirements for coverage have been met under Title VII of the Civil Rights Act of 1964, as amended (Title VII).

Charging Party alleges that in retaliation for having filed previous Title VII charges, Respondent has continued to file burdensome motions as part of an on-going lawsuit against her requesting the production of documents from her company, EverNu Technology, LLC. Charging Party contends the ensuing legal costs incurred as EverNu seeks to protect its proprietary intellectual assets have prevented EverNu from employing her and/ or paying her salary. In addition to being owner of EverNu, Charging Party is the principal researcher and grant writer who is responsible for obtaining government contracts for innovative research.

Prior to Charging Party having filed the instant charge, she filed three other charges with EEOC alleging Title VII violations. The first charge, filed in January 1999, was successfully mediated by EEOC on November 10, 1999. In June 2000, Respondent filed suit against Charging Party in State Court claiming that Charging Party violated certain trade secrets. The filing of the Respondent's lawsuit in State Court was the basis of Charging Party's second charge which resulted in an EEOC cause determination. On June 5, 2002, Charging Party filed a lawsuit in Federal District Court based on the second and third charges, alleging, among other claims, retaliation by Respondent.

Respondent claims that Charging Party violated trade secrets and its pursuit of EverNu's proprietary trade secret information is imperative in order to assess whether Charging Party/EverNu are using Respondent's trade secrets regarding methacryllic acid.

Evidence obtained during the EEOC investigation reveals that the U.S. Department of Energy ("DOE") awarded EverNu a grant under the Small Business Innovation Research Program (SBIR) for research on the production of methacryllic acid based on the documents DOE reviewed and considered as "different and unrelated to the content and research direction presented in [Respondent's] documents." The evidence of record clearly shows that despite DOE's assessment, Respondent has continuously filed burdensome motions without any relevant bases in an effort to gain access to Charging Party's research, to disrupt her business, and to ultimately impose an undue financial burden upon her.

Based on this analysis I have determined that the evidence obtained during the investigation establishes a violation of Title VII in that Charging Party was and continues to be subjected to retaliatory actions by Respondent.

Upon finding that there is reason to believe that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. In this regard, conciliation of this matter has now begun. Please be advised that upon receipt of this finding, any reasonable offer to resolve this matter will be considered. The Commission may seek an amount inclusive of the applicable cap to Respondent's organization for compensatory and punitive damages and actual monetary losses incurred by the Charging Party.

A Conciliation Agreement will be mailed with a demand to include actual and compensatory and/or punitive damages, if any; and, if appropriate attorney fees and costs which have accrued to date. Again, the Commission's is postured to consider any reasonable offer during this period. If an offer has not been previously submitted, Respondent is requested to accept, reject or submit a counteroffer within 15 days of its receipt of the conciliation proposal which will be forthcoming shortly under separate cover. The confidentiality provisions of the statute and Commission's Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On Behalf of the Commission

_2/1/11_

Date

Spencer H. Lewis
District Director

Cc: Carol Mager, Esquire
Counsel for Charging Party

Raymond A. Kresge, Esquire
Counsel for Respondent

# EXHIBIT C

EEOC Form 161-B (11/09)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To:  Dr. Manhua Mandy Lin | From: |
|---|---|
| ▇▇▇▇▇▇▇▇▇▇ | Equal Employment Opportunity Commission<br>Philadelphia District Office<br>801 Market Street, Suite 1300<br>Philadelphia, PA  19107-3127 |

☐  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170-2004-02346 | Legal Unit | (215) 440-2828 |

*(See also the additional information attached to this form.)*

**NOTICE TO THE PERSON AGGRIEVED :**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA) or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):**  You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____          3/8/11
Spencer H. Lewis, Jr.                          *(Date Mailed)*
District Director

Enclosure(s)

cc:  Rohm Haas
Carol A. Mager, Esquire (For Charging Party)
Raymond A. Kresge, Esquire  (For Respondent)