IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. MANHUA MANDY LIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-3158 |
| | : | |
| ROHM AND HAAS COMPANY | : | |
| d/b/a Dow Advanced Materials | : | |
| | : | |
| Defendant. | : | |

<u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>

Pursuant to F. R. Civ. P. 12(b)(6), Defendant Rohm and Haas Company moves to dismiss the Complaint.  Defendant presents an accompanying memorandum of law, which is incorporated herein. For any and all of the reasons in Defendant's memorandum of law, the Court should grant Defendant's motion and dismiss the Complaint with prejudice.

Respectfully submitted,

/s/  *Raymond A. Kresge*
RAYMOND A. KRESGE
ANDREW J. ROLFES
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508
215-665-2000

Attorneys for Defendant
Rohm and Haas Company

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. MANHUA MANDY LIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-3158 |
| | : | |
| ROHM AND HAAS COMPANY | : | |
| d/b/a Dow Advanced Materials | : | |
| | : | |
| Defendant. | : | |

DEFENDANT'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT</u>

RAYMOND A. KRESGE
ANDREW J. ROLFES
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508
215-665-2000

Attorneys for Defendant
Rohm and Haas Company

TABLE OF CONTENTS

Page

I.      INTRODUCTION............................................................................................. 1

II.     THE COMPLAINT ALLEGATIONS................................................................ 3

III.    BACKGROUND ............................................................................................. 5

        A.      The State Court IP Litigation ............................................................. 5

        B.      Lin I -- The First Federal Case ........................................................12

        C.      The EEOC Charge............................................................................16

IV.     ARGUMENT.................................................................................................17

        A.      The Decisions Of This Court In Lin I Are A Res Judicata Bar To Lin's Retaliation Claims.................................................................................17

        B.      Since The Factual Findings And Legal Holdings Of The Pennsylvania Courts In The IP Litigation Are To Be Accorded Collateral Estoppel Effect In This Case, Lin's Claims Fail As A Matter Of Law. ..............................................21

        C.      Rohm and Haas Has A First Amendment Right to Petition  The Government. Lin's Complaint Seeks To Abridge That  Constitutional Right, And Accordingly Should Be Dismissed..........................................................................26

        D.      Lin's Retaliation Claims Are Untimely..............................................32

        E.      Lin's Contract And Tort Claims Are Barred by The Statutes Of Limitations. .......32

        F.      Lin's Tortious Interference Claim Should Be Dismissed For Failure To Satisfy The Iqbal/Twombly Pleadings Standards. ........................................................34

V.      CONCLUSION .............................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Allen v. McCurry,
  449 U.S. 90 (1980) ........................................................................................................22

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009) ...........................................................................................34, 35

BE&K Construction Co.,
  351 NLRB 451 (2007) ...................................................................................................30

BE&K Construction Co. v. NLRB,
  536 U.S. 516 (2002) .................................................................................3, 26, 29, 30

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) ......................................................................................................35

Bill Johnson's Restaurants, Inc. v. NLRB,
  461 U.S. 731 (1983) .........................................................................................26, 27, 29

Borough of Lansdale v. PP&L,
  426 F. Supp.2d 264 (E.D.Pa. 2006) ...............................................................17, 18, 20

Briner v. Litwhiler,
  98 Fed. Appx. 75 (3d Cir. 2004) ...................................................................................22

Brownsville Golden Age Nursing Home, Inc. v. Wells,
  839 F.2d 155 (3d Cir. 1988) .........................................................................................31

Churchill v. Star Enterprises,
  183 F.3d 184 (3d Cir. 1999) .............................................................................17, 18, 19

Cloverleaf Development v. Horizon Financial F.A.,
  500 A.2d 163 (Pa. Super. Ct. 1985) .......................................................................31, 34

Day v. Volkswagenwerk Aktiengesell-Schaft,
  464 A.2d 1313 (Pa. Super. Ct. 1983) ...........................................................................22

In Re Burlington Coat Factory Securities Litigation,
  114 F.3d 1410 (3d Cir. 1997) ..........................................................................................1

Krouse v. American Sterilizer Co.,
  126 F.3d 494 (3d Cir. 1997) .........................................................................................24

Lubrizol Corp. v. Exxon Corp.,
  929 F.2d 960 (3d Cir. 1991) ...................................................................................17, 18

Martin v. Gingerbread House, Inc.,
   977 F.2d 1405 (10th Cir. 1992) ...................................................................................27

Morgan v. Covington Township,
   2011 WL 3276012 (3d Cir. 2011) ................................................................................21

Noel v. Boeing Co.,
   622 F.3d 266 (3d Cir. 2010) ........................................................................................32

O'Boyle v. Braverman,
   337 Fed. Appx. 162 (3d Cir. 2009) ...............................................................................1

Professional Real Estate Investors, Inc. v. Columbia Picture Industries, Inc.,
   508 U.S. 49 (1993) ................................................................................27, 28, 29, 31

Rohm and Haas Company v. Lin,
   992 A.2d 132 (Pa. Super. Ct. 2010) .....................................................................2, 6, 8, 9

Schuldiner v. KMart Corp.,
   450 F. Supp.2d 605 (E.D. Pa. 2006) ...........................................................................22

Shaffer v. Smith,
   673 A.2d 872 (Pa. 1996) ...............................................................................................22

Sharp Electronics Corp. v. Yoggev,
   1995 WL 263533 (E.D.Pa. May 1, 1995) .....................................................................35

Toscano v. Connecticut Gen. Life Ins. Co.,
   2008 WL 2909628 (3d Cir. July 30, 2008) .....................................................................1

## I.   INTRODUCTION

Plaintiff Dr. Manhua Mandy Lin ("Lin") is back in this Court a *second* time alleging that Defendant Rohm and Haas Company ("RH") has retaliated against her by pursuing the same intellectual property lawsuit in the Pennsylvania Courts (hereinafter referred to as "IP lawsuit" or "IP litigation") that was the subject of the first lawsuit.   Lin *lost* her first retaliation lawsuit in this Court when this Court (Judge Joyner) dismissed her retaliation claims in 2004.[1]   Lin also *lost* the IP lawsuit before the Montgomery County Court of Common Pleas (Judge Moore) and the Pennsylvania Superior Court -- first through an Injunction Order that was entered against Lin in 2001 and ultimately in a Default Judgment entered against Lin in 2008 in response to years of Lin's contemptuous non-compliance with the Pennsylvania Court's discovery Orders.   Unwilling to accept the decisions of this Court to dismiss her retaliation claims and unwilling to accept the findings and decisions of the Pennsylvania Courts, Lin has re-surfaced in this Court with the same retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") that she already litigated and lost, along with pendent breach of contract and tort claims.[2]

RH now moves under F. R. Civ. P. 12(b)(6) to dismiss this Complaint that fails to state a claim as a matter of law[3] for the following reasons:

---

[1] The instant case is clearly "related to" the first case litigated in this Court, but since this Complaint was filed more than one year after Judge Joyner decided the first case, the "related to" case assignment rule appears not to apply.  Local Rule 40.1(b)

[2] While Lin in her Complaint attempts to differentiate alleged "interferences" with relationships/research/ publication/marketing/patents from the IP lawsuit, a review of the Complaint shows that all of those alleged "interferences" were either part of the IP litigation or were just consequences of the Default Judgment entered in the IP lawsuit.

[3] RH's use in this brief of documents referenced in the Complaint does not convert this motion into a summary judgment motion.  See, e.g., In Re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997).  Also, in considering a motion to dismiss, "a court may take judicial notice of the record from a previous court proceeding between the parties."  Toscano v. Connecticut Gen. Life Ins. Co., 2008 WL 2909628 at *1 (3d Cir. July 30, 2008) (citations omitted); see also, O'Boyle v. Braverman, 337 Fed. Appx. 162, 164 (3d Cir. 2009).  To the extent that this Court views any argument herein as based on matters outside the Complaint, RH requests that its motion be converted to a Rule 56 motion to the extent needed.

1.      Lin's claims of retaliation are barred by res judicata.[4]  As in the instant case, the IP lawsuit was at the core of Lin's first case in this Court alleging retaliation (Lin v. Rohm and Haas Company, Civ. No. 02-3612) ("Lin I") -- which retaliation claims were dismissed by the Court in a series of 2004 decisions.  The IP lawsuit events that are the basis of the current Complaint ("Lin II") all revolve around discovery in the IP lawsuit directed at EverNu Technology, LLC ("EverNu"), a company that Lin formed in 2000.  (Dkt. 1 at ¶ 50).[5]  The IP litigation regarding the EverNu discovery began before the 2004 decisions in Lin I, and the EverNu discovery was presented repeatedly by Lin to this Court in Lin I in support of her retaliation claims.   Since this Court rejected the EverNu discovery litigation as a basis for retaliation in Lin I (e.g., "This Court does not believe that Defendant's lawful use of the state judicial system and its discovery process can be the basis of Plaintiff's claims of unlawful retaliation under Title VII"), the retaliation claims in Lin II are barred by res judicata.

2.      All of Lin's claims are barred by collateral estoppel.   In Rohm and Haas Company v. Lin, 992 A.2d 132 (Pa. Super. Ct. 2010), the Pennsylvania Superior Court affirmed the ultimate findings of the Montgomery County Court of Common Pleas ("CCP") that the EverNu discovery was relevant and affirmed a judgment that had been entered against Lin and in favor of RH.[6]  Those State Court findings (e.g., "the requested [EverNu] discovery was important because it was directly related

---

[4] Some Courts use "claim preclusion" and "issue preclusion," while other Courts still use res judicata (for claim preclusion) and collateral estopped (for issue preclusion).  Since this Court uses "res judicata" and "collateral estoppel," RH uses those terms.

[5] The discovery directed at EverNu included:   (a) written discovery served on Lin in April 2003 for grant applications submitted by EverNu and related documents; and (b) a deposition notice and subpoena duces tecum served on EverNu on August 20, 2003.  This discovery served on Lin and later on EverNu is collectively referred to herein as "EverNu discovery."

[6] The Superior Court vacated paragraph 2 of the permanent injunction that enjoined Lin from proceeding with all methacrylic acid research and paragraph 3 that enjoined Lin from consulting or performing research under EverNu's contracts with the DOE or under any research contract involving methacrylic acid.  Id. at 148-149.  The Superior Court explained that the record needed to become more well-developed for the relief under paragraphs 2 and 3 relief and so remanded to the Trial Court for that evidentiary development.  Id. at 149.  RH had *not* sought paragraph 2 or 3 in its motion for default judgment or in its proposed Order or brief accompanying its motion.

to Rohm and Haas' claims for misappropriation of trade secrets, breach of contract, and breach of fiduciary duty") cannot be re-litigated here by Lin and preclude Lin from establishing her claims.

   3.  All of Lin's claims fail on constitutional grounds.  RH has a First Amendment right to petition all branches of the government, including the courts.  Lin cannot advance a retaliation claim based on a lawsuit unless it is first determined that the lawsuit is "objectively baseless."  BE&K Construction Co. v. NLRB, 536 U.S. 516 (2002).  Since RH prevailed in the IP lawsuit and on the EverNu discovery issues, the IP lawsuit was not "objectively baseless" as a matter of law, and so, the First Amendment dictates dismissal of Lin's retaliation claims.  This First Amendment right to petition also precludes Lin's claims of breach of contract and tortious interference.

   4.  Lin's retaliation claims are untimely, because Lin did not file a retaliation charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly retaliatory discovery and did not file a retaliation charge with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of that allegedly retaliatory discovery.

   5.  Lin's claims for breach of contract and for tortious interference are barred by the Pennsylvania four-year statute of limitations ("SOL") for contracts and two-year SOL for torts.

   6.  Count IV (i.e., the tortious interference claim) fails, because it does not satisfy the pleading requirements set forth by the Supreme Court.  Lin does not identify any tortious conduct within the two-year limitations period, nor does she identify any prospective contract for her within the two-year limitations period with which RH allegedly interfered.  Since sufficient factual matter has not been pled for a plausible tortious interference claim, Count IV should be dismissed.

## II.  THE COMPLAINT ALLEGATIONS

   The first part of Lin's Complaint is directed to events in the IP lawsuit that occurred before this Court entered its Orders in 2004 dismissing Lin's claim of retaliation (with the last Order being a July 27, 2004 Order denying Lin's second motion for reconsideration).  In paragraphs 23-48 of the Complaint, Lin presents the background to the filing of the IP lawsuit in 2000.  Lin refers to her first

charge of discrimination that resulted in EEOC-mediated settlement agreements executed in November 1999, i.e., a standard EEOC Agreement and a separate Agreement and Release, which she then collectively refers to in the Complaint as "the Agreements." (Dkt. 1 at ¶¶25-26, 29-30).[7] Lin also refers to her second EEOC charge filed in June 2000, which was limited to a retaliation claim based on the IP lawsuit. (Dkt. 1 at ¶15).

On June 2, 2000, RH sued Lin in the Montgomery County CCP for trade secret violations. (Dkt. 1 at ¶46). Lin acknowledges that in the IP litigation, the Pennsylvania Court entered a Preliminary Injunction against her in April 2001 (Dkt. 1 at ¶¶70, 73) and entered a Default Judgment against her with permanent injunctive relief in May 2008. (Dkt. 1 at ¶99).

Lin iformed EverNu in June 2000, and EverNu began activity in 2002 under a research grant from the U.S. Department of Energy ("DOE"). (Dkt. 1 at ¶¶50, 66). All of Lin's legal theories are based on the EverNu discovery in the IP litigation. In other words, Lin's Complaint focuses on EverNu. (Dkt. 1 at ¶¶50-69, 85-131). Lin contends that since 2003, RH has used the IP litigation "as a tactical weapon against Dr. Lin to obtain EverNu's research and eliminate EverNu as a competitor, in continued retaliation against Dr. Lin." (Dkt. 1 at ¶86). Lin refers to an August 20, 2003 third-party subpoena for deposition/documents directed to EverNu, with EverNu responding with a motion for protective order that the Montgomery County CCP denied on December 16, 2003. (Dkt. 1 at ¶¶87-88). Lin admits that despite the Pennsylvania Court's Order, EverNu was "unwilling" to comply. (Dkt. 1 at ¶91). Lin also pleads that RH "caused a subpoena to be served upon EverNu's collaborator, Temple University," and that the Court ordered compliance with that subpoena. (Dkt. 1 at ¶93).

The remainder of the Complaint presents the consequences of the unwillingness of Lin and of EverNu to comply with the 2003 discovery and with the 2003 discovery Orders of the Montgomery County CCP, i.e., a Default Judgment entered against Lin and the alleged consequences of that

---

[7] Citations to the instant Complaint before this Court are in the form "Dkt. 1 at ¶__."

Default Judgment on EverNu's ability to operate.  (Dkt. 1 at ¶¶99-128).  Lin also characterizes the EverNu discovery and related litigation as being beyond the EEOC-mediated settlement agreements. (Dkt. 1 at ¶¶120-122, 129).[8]

Lin then presents a conclusory, one-sentence allegation of causal connection between "participation in a Title VII proceeding" and "retaliatory treatment" (Dkt. at ¶136) followed by claims of retaliation under Title VII (Count I) and the PHRA (Count II).  In Count III, Lin alleges breach of contract, with the "contract" being the EEOC-mediated settlement agreements and with the breach occurring in RH's effort to "unilaterally enlarge" the non-compete terms.  (Dkt. 1 a ¶¶158-160).  Lin also alleges that this contract has been breached by RH not reimbursing Lin for "post-employment services," such as assistance in prosecuting RH patent applications.  (Dkt. 31, 142, 161).  Finally, in Count IV, Lin alleges "intentional interference with prospective contractual relations" without identifying any specific conduct by RH that so interfered and without identifying any prospective contractual relationship that was lost.  (Dkt. 1 at ¶¶165-166).

## III.   BACKGROUND

### A.   The State Court IP Litigation

On June 2, 2000, RH sued Lin for misappropriation of RH trade secrets.  (Dkt. 1 at ¶46).  On June 5, 2000, RH applied for a preliminary injunction against Lin.  Shortly thereafter in 2000, the

---

[8] While Lin pleads nine acts of retaliatory conduct (Dkt. 1 at ¶134), a review of those "acts" in the context of the Complaint show that they all derive from the EverNu discovery.  The alleged interference with Temple is based on the subpoena to Temple for EverNu-related information.  (Dkt. 1 at ¶93).  The alleged interference with the DOE is based on RH's provision of the Default Judgment to the DOE and the consequences of that Judgment on EverNu's ability to work with the DOE.  (Dkt. 1 at ¶¶103-108).  The alleged interference with publication and marketing are because of the Preliminary Injunction and/or "because of the Default Judgment."  (Dkt. 1 at ¶¶71, 112).  Lin's allegations of interference with EverNu's patent applications are in the context of the Default Judgment litigation (Dkt. 1 at ¶114) and are in any event rendered meritless by Lin's allegations that "Rohm and Haas never challenged the patent," which was granted.  (Dkt. 1 at ¶¶115, 177).  Lin alleges that the EEOC-mediated settlement agreements have been breached by the Preliminary Injunction and Default Judgment entered by the Pennsylvania Courts.  (Dkt. 1 at ¶¶75, 121).  Finally, Lin's allegation of "refusal to pay debt … for services" is insufficiently pled in that the specific "services" and "debt" are not identified in the Complaint. Moreover, as true with other of Lin's allegations, the alleged discrete act of "refusal to pay debt" is outside the scope of Lin's 2004 EEOC charge.

Montgomery County CCP ordered that the records be sealed, which seal was maintained in subsequent Orders.[9]  The Montgomery County CCP held ten days of hearings on RH's application for a preliminary injunction.  Finding that Lin had breached her obligations to protect RH's confidential information and trade secrets, the Court entered the following Injunction:

1.      Dr. Lin is enjoined from using, disclosing or divulging, directly or indirectly, any information that Rohm and Haas considered confidential or trade secret;

2.      Dr. Lin is enjoined from making, releasing or disclosing any proposed scientific presentation or publication unless, after a 90-day trade secret review by Dr. Scott Han and/or Dr. Charles Tatum, the parties agree that such presentation or publication contains no Rohm and Haas trade secrets.

(Exh. Aat p.6).  As the Superior Court summarized succinctly in affirming the Injunction Order against Lin:  "Dr. Lin promised to protect the confidential and trade secret information she learned at Rohm and Haas.  But she did not do so, thereby demonstrating the need for action on the part of the trial court."  Id. at p. 20.

In assessing whether an Injunction Order should be issued against Lin, the Pennsylvania Courts evaluated Lin's "unambiguous" contractual obligations.  Id. at pp. 2-4, 14-17.  Those contracts included a Confidentiality and Employment Agreement that Lin executed in 1989 at the beginning of her RH employment, as well as the above-referenced EEOC-mediated settlement agreements that Lin executed in 1999 at the end of her RH employment.  Id.  Under the 1989 Agreement, Lin contractually committed not to divulge RH trade secret "information to outsiders or other unauthorized persons while employed by Rohm and Haas or afterwards" and further committed to return all RH documents/property upon the termination of her employment.  Id. at pp. 2-3.  In the 1999 Agreements,

---

[9] As a result of the seal, RH cannot attach hereto any of the filings in the Montgomery County CCP.  However, the Pennsylvania Superior Court issued an Opinion on February 20, 2003 that affirmed the entry of a preliminary injunction against Lin.  Rohm and Haas Co. v. Lin, 1246 EDA 2001 (Pa. Super. Feb. 20, 2003) (attached as Exhibit A).  The Superior Court also issued an Opinion on March 1, 2010 that affirmed the entry of a default judgment against Lin.  Rohm and Haas Co. v. Lin, 992 A.2d 132 (Pa. Super. Ct. 2010).  Those Opinions, which are not under seal because they do not contain trade secrets, describe well the proceedings in State Court, and so, will be cited and quoted herein.  Should this Court determine that access to parts of the State Court sealed record would assist in the determination of this motion, RH will seek the necessary approvals.

Lin agreed that "she could not reveal trade secrets"; conditioned her right to publish "to review concerning trade secrets by…  Rohm and Haas"; committed not to disclose RH "confidential information retained in memory as well as in recorded data" (with "confidential information" defined as "any non-public information, which could be used for a competitive advantage that [Lin] acquired during any tenure at Rohm and Haas"); and agreed that RH would retain all documents and tangible property prepared or worked on by Lin.  Id. at pp. 3, 15-17.

The Pennsylvania Courts then evaluated the record evidence of Lin's conduct:

[D]espite the requirements of the various confidentiality agreements, prior to her departure from Rohm and Haas, Dr. Lin copied hundreds of confidential documents onto high-storage computer disks, which she took with her.
…
On March 28, 2000, Dr. Lin gave a presentation using post-1996 trade secret information…  [T]he certified record amply documents the specific confidential data concerning catalysts disclosed by Dr. Lin at the March 2000 ACS meeting.

Id. at pp. 4-5.  "Conclud[ing] that the record supports the trial court's factual determinations," the Superior Court affirmed the findings that Lin had disclosed RH trade secrets and intended to continue to do so in the future.  Id. at pp. 11-12.

On appeal, Lin unsuccessfully argued that the Injunction Order "improperly alters the status quo between the parties" by depriving her of "the benefit of her [EEOC-mediated] bargain by the phrasing of the preliminary injunction."  Id. at pp. 13-14.[10]  After a review of the EEOC-mediated settlement agreements, the Superior Court rejected Lin's argument, seeing "no indication that the preliminary injunction has altered the status quo … or that the scope of the preliminary injunction improperly modified the terms of the negotiated relationship between the parties."  Id. at p. 19.

In the end, the Superior Court affirmed the Montgomery County CCP as follows:

We have scrutinized the record in conjunction with our careful consideration of the parties' arguments and the trial court's response.  Contrary to Dr. Lin's assertions,

---

[10] Lin presents the same argument in the instant Complaint when she alleges that "[t]he Injunctive Action pursued by Rohm and Haas deprived Dr. Lin of the substantive benefits to which she was entitled to under agreements."  (Dkt. 1 at ¶75).

we find the trial court's order to be neither inartfully drawn nor illegally broad.  Rather, we conclude that the preliminary injunction entered in this case represents a balanced response to the evidence of record.

Id. at p. 21.

In April 2003, RH served Lin with discovery regarding EverNu's grant application to the DOE. Rohm and Haas Co. v. Lin, 992 A.2d 132, 139 (Pa. Super. Ct. 2010).  In discovery responses in 2000, Lin stated that "EverNu had ceased all business operations."  Id.  When RH learned in March 2003 that EverNu had received a DOE grant, RH served the EverNu discovery in April 2003.  Id. at 139. When Lin did not provide any information or documents in response to RH's discovery, RH filed a motion to compel the discovery, which the Montgomery County CCP granted on August 11, 2003.  Id. at 140.  Lin never complied with that Order and never provided the discovery despite sanctions Orders entered by the Montgomery County CCP on January 10, 2005 and June 2, 2005.  Id.  On August 20, 2003, RH issued a subpoena to EverNu for testimony and production of documents given Lin's position that Lin had no EverNu documents to produce as the documents belonged to EverNu. (Dkt. 1 at ¶87).  In serving that subpoena on EverNu, RH agreed in writing that any deposition testimony and any documents provided would be subject to the Confidentiality Stipulation entered by the parties at the beginning of the IP litigation to protect confidential and trade secret information produced in discovery.  Id. at 144.  In response to the subpoena, EverNu filed a motion for protective order to quash the subpoena, which the Montgomery County CCP denied on December 16, 2003. (Dkt. 1 at ¶88).

While there was a five-year period from June 2003-May 2008 of activity in the IP litigation focused on the EverNu discovery, the two discovery decisions of the Montgomery County CCP that ordered the EverNu discovery were issued in 2003, i.e., the August 11, 2003 Order granting RH's motion to compel and the December 16, 2003 Order denying EverNu's motion for protective order. As shown by the docket-like, non-exhaustive listing of 2003-2007 activity in the IP litigation attached as Exhibit B, the activity in the IP litigation following service of the EverNu discovery centered around

the EverNu discovery, with contempt by Lin of the August 11, 2003 Order and by EverNu of the December 16, 2003 Order; with sanctions entered by the Montgomery County CCP in response to the contempt and in an effort to obtain compliance with the discovery orders; and with motion after motion filed by Lin and by EverNu in opposition to and seeking reconsideration of the Court's discovery and related Orders.  Throughout this same time period, EverNu and/or Lin filed six interlocutory appeals of the discovery and sanctions orders -- all of which were quashed by the Superior Court.

After four years of contempt by Lin and by EverNu of the State Court's discovery Orders, RH moved on December 28, 2007 for entry of a default judgment under the Pennsylvania Rules of Civil Procedure.   RH's proposed Order accompanying RH's motion for entry of a default judgment contained a provision for entry of a default judgment against Lin and contained a provision that Lin would not disclose RH trade secrets with a 90-day trade secret review period if there was any question as to what is a RH trade secret.

On May 5, 2008, the Montgomery County CCP granted RH's motion and entered a default judgment against Lin.   Id. at 141.   The Court also awarded RH injunctive relief in the form of permanently enjoining Lin from disclosing any information that RH "considers confidential or a trade secret" (paragraph 1 of the Default Judgment Order)[11] and in the form of a 90-day trade secret review by RH (in effect for three years) before Lin could present, publish or apply "for research grant whether said presentation or submission for publication or application for a research grant is made on her own behalf, or any other entity she owns or is associated with or on which she will be working as a principal scientist, collaborator, employee or otherwise" (paragraph 4 of the Default Judgment Order). Id.[12]   The Montgomery County CCP also enjoined Lin from proceeding with methacrylic acid research

---

[11] This first paragraph of the 2008 Default Judgment Order is the same as the first paragraph of the 2001 Preliminary Injunction Order.

[12] A 90-day trade secret review period for Lin's presentations and publications had already been part of the 2001 Preliminary Injunction Order.

(paragraph 2 of the Default Judgment Order) and from consulting or performing research under EverNu's contracts with the DOE or under any other research contracts involving methacrylic acid (paragraph 3 of the Default Judgment Order).  Id.  RH's proposed Order for default judgment did *not* contain paragraphs 2 and 3 of the Montgomery County CCP's Default Judgment Order.

On July 17, 2008, the Montgomery County CCP issued its Opinion in support of its Default Judgment Order in which (as quoted in the Superior Court Opinion), the Montgomery County CCP made clear that the Default Judgment flowed from the 2003 discovery Orders and five years of non-compliance by Lin:

> Despite the findings of the trial court and the Superior Court that Dr. Lin had engaged in wrongdoing with regard to her use of Rohm and Haas [sic] trade secrets, [Dr. Lin] will not respond to discovery requests and claims that the courts [sic] decisions were incorrect.  Furthermore, [Dr. Lin] advances the unpersuasive argument that [Rohm and Haas'] claims are a total fabrication and were made solely as a pretext to obtain the alleged trade secrets of [Dr. Lin] and her company, EverNu Technologies.
> …
> Over the past five years [Dr. Lin] has failed to comply with any order of this Court compelling discovery and has not paid the fines or counsel fees imposed by this Court.  All previous sanctions imposed did not obtain [Dr. Lin's] compliance. Accordingly, when presented with [Rohm and Haas'] Motion for Default Judgment as a discovery sanction pursuant to Pa. R. Civ. P. 4019(c)(3), this Court granted the Motion.

Id. at 140-141.

The Pennsylvania Superior Court affirmed the entry of a default judgment against Lin.  In so holding, the Superior Court affirmed the following findings as support for the default judgment:

1.  "[T]he requested discovery was important because it was directly related to Rohm and Haas' claims for misappropriation of trade secrets, breach of contract, and breach of fiduciary duty."  Id. at 143.

2.  "The parties' agreements [including the EEOC-mediated settlement agreements] did not limit protection only to trade secrets and confidential information related to the area Dr. Lin worked in at Rohm and Haas, but to "'any non-public information which could be used for a competitive advantage that [Dr. Lin] acquired during [her] tenure at Rohm and Haas.'"  Id. at 144.

3.  "Dr. Lin's contractual obligations encompassed all of Rohm and Haas' confidential information and continued beyond the termination of her employment in 1999."  Id.

4.    "Rohm and Haas' claims against Dr. Lin for past conduct and its need to protect against future conduct gave rise to the requested discovery." Id.

5.    "[T]he requested discovery was related to Rohm and Haas' underlying equity action and to enforcement of the preliminary injunction….   We also find adequate support for the trial court's corresponding determination that the information requested was "reasonably related to the underlying litigation.'" Id. at 144-145.

6.    "[T]he precluded evidence was important to the protection of Rohm and Haas' confidential information and trade secrets." Id. at 144.

7.    "Lin was the driving force behind violation of the discovery orders.  In violation of her contractual obligation, she misappropriated sensitive Rohm and Haas information essential to its business and used this information in furtherance of her own business to the detriment of Rohm and Haas." Id.

8.    "Dr. Lin's actions demonstrated a willful defiance of the court's discovery orders…  Dr. Lin's discovery abuses were willful, numerous, continuing, and in complete disregard of the trial court's orders." Id. at 144, 147.

Given these findings, the Superior Court affirmed the entry of default judgment against Lin and in favor of RH and affirmed the permanent injunctive relief that enjoined Lin from disclosing any information that RH considered confidential or a trade secret and that required a 90-day trade secret review in advance of presentation, publication or grant proposal.  Id. at 147-148.[13]  Finding such relief to "comport[ ] with the parties' existing non-compete and confidentiality agreements" and not to be impermissibly broad, the Superior Court affirmed that permanent injunction.  Id.[14]  At the end of its Opinion, the Superior Court commented that "Lin's tactics cause concern."  Id. at 151.  On May 7, 2010, the Superior Court denied Lin's petition for reargument.  The Pennsylvania Supreme Court denied Lin's petition for allowance of appeal on  April 6, 2011.  19 A.3d 1052 (Table) (Pa. 2011), and denied Lin's application for reconsideration of denial of allowance of appeal on May 16, 2011.

---

[13] As noted above, while the Superior Court vacated paragraphs 2 (enjoining Lin from proceeding with all methacrylic acid research) and 3 (enjoining Lin from consulting or performing research under EverNu's contract) and remanded for further evidentiary proceedings for those two paragraphs, RH had *not* sought paragraphs 2 or 3 in its motion for default judgment or accompanying brief or proposed Order.

[14] While the Superior Court quashed non-party EverNu's appeal for lack of standing, the Court also stated that "to the extent EverNu raises any appealable issues … we believe that those issues are accurately and adequately addressed within the context of our determination of Dr. Lin's appeal." Id. at 150 n.5.

**B.      Lin I -- The First Federal Case**

As acknowledged in the instant Complaint, Lin sued RH in 2002 in this Court for retaliation under Title VII and the PHRA (Civ. No. 02-3612), and in 2004, this Court entered judgment against Lin on her retaliation claims.   (Dkt. 1 at ¶¶79-81). [15]   In the Lin I Amended Complaint, Lin referred (at ¶¶13-16) to her first charge filed with the EEOC that was resolved under EEOC-mediated settlement agreements.   In the Lin I Amended Complaint (at ¶¶18-19), Lin referred to specific provisions of the EEOC-mediated settlement agreements.   The Lin I Amended Complaint focused on the IP lawsuit, with allegations related to the IP lawsuit that are the same as appear now in the Lin II Complaint.   For example, the Lin I Amended Complaint alleges:

> The injunctive relief pursued by Rohm and Haas was intended to and did effectively deprive Dr. Lin of substantive benefits to which she was entitled under the EEOC Settlement Agreement and the Agreement and Release.
> (Lin I at ¶63, compare to Lin II, Dkt. 1 at ¶¶71, 75, 76, 129, 130).
> …
> Rohm and Haas aggressively litigated the matter and at its insistence obtained a Preliminary Injunction whose terms are punitive and more restrictive than the obligations imposed on any present or former employee.   (Lin I at ¶64, compare to Lin II, Dkt. 1 at ¶¶72, 74).
>
> Rohm and Haas's pursuit of Dr. Lin by filing the Injunction Action and the aggressive, tenacious, and wrongful subsequent pursuit of the claim served no substantive purpose and was a continuation of the discrimination and retaliation.
> (Lin I at ¶89, compare to Lin II, Dkt. 1 at ¶130).

In Lin I, Lin pled claims of retaliation under Title VII and the PHRA based on the allegedly "aggressive, tenacious and wrongful subsequent pursuit" of the IP lawsuit (Lin I at ¶¶86-97), just as she pleads in Lin II.   In Lin I, Lin also pled a breach of contract claim based on the EEOC-mediated settlement agreements (Lin I at ¶¶ 135-138), which this Court described in a November 13, 2003

---

[15] Much of Lin I remains under seal as a result of a Protective Order entered by this Court on February 19, 2003. Therefore, RH does not attach the filings from Lin I.  Rather, RH just summarizes and/or quotes relevant parts of those filings without disclosing any trade secret information.  Should this Court determine that access to the Lin I sealed record would assist in the determination of this motion, counsel could proceed to develop a Protective Order that would allow sealed Lin I documents to be presented here under seal.

Opinion as a claim for uncompensated services, just as Lin pleads in this case.  (Lin II, Dkt. 1 at ¶161).

After this Court dismissed all of Lin's claims on summary judgment other than the retaliation claims based on the IP lawsuit,[16] RH and Lin submitted briefs at the end of 2003 on RH's renewed motion for summary judgment on the retaliation claims.  In her December 2003 brief in support of her retaliation claim, Lin focused on the EverNu discovery sought by RH in the IP lawsuit and submitted an Affidavit that solely addressed that EverNu discovery and that attached RH's subpoena directed at EverNu, along with RH's motion to compel the EverNu documents that had been filed in the IP litigation.  In her December 2003 brief in support of her retaliation claims, Lin argued that "Rohm and Haas is aggressively pursuing efforts to obtain access to all of EverNu's confidential, proprietary intellectual property" and that this "course of action [was] aimed solely at undermining Dr. Lin's professional opportunity."  (Br. at 8).[17]

In a January 22, 2004 Opinion/Order, this Court dismissed Lin's retaliation claims based on the IP lawsuit, rejecting Lin's argument that the EverNu discovery could support the retaliation claim:

> Plaintiff contends that the state lawsuit is an "adverse employment action" because Defendant has made discovery requests for confidential and proprietary information of plaintiff's new employer, EverNu.  Plaintiff contends that submission of this information will require EverNu to terminate all of its business operations.  As stated above, speculation as to the effect of an employer's allegedly retaliatory conduct on an employment relationship is insufficient to establish an 'adverse employment action.'  Furthermore, Plaintiff and/or EverNu has resisted the discovery requests with a Motion for a Protective Order and a Motion to Quash.  See Plf.'s Affidavit.  We find that the discovery requests are insufficient to establish an "adverse employment action."

Lin then moved for reconsideration of the dismissal of her retaliation claims and in support of her motion filed in February 2004, Lin submitted a 9-page/21-paragraph Affidavit that focused on the

---

[16] In a March 23, 2004 Order, this Court granted Lin's motion for reconsideration of summary judgment on Lin's breach of contract claim to the extent that the claim was for compensation for post-employment services. However, the Court declined to exercise jurisdiction under 28 U.S.C. §1367(c)(3).  Lin never pursued this breach of contract claim in State Court.

[17] Citations to pages of Lin's briefs in Lin I are in the form "Br. at ___".

EverNu discovery.  In that Affidavit, Lin presented the Court with the history of the EverNu discovery

in the IP lawsuit, including the April 2003 document request to Lin for EverNu-related documents; the

August 2003 subpoena directed to EverNu; RH's motion to compel documents and EverNu's motion

to quash the subpoena and for a protective order; and the State Court's Orders that granted RH's

motion to compel and that denied EverNu's motion.  In that Affidavit, Lin described EverNu's work in

general terms and then characterized RH's litigation conduct as a "relentless pursuit of EverNu's

proprietary information"; as a "tenacious[ ] pursu[it] of … access to EverNu proprietary documents and

data"; as "vigorously attack[ing]" EverNu; as "aggressively attack[ing] EverNu's effort to protect its

proprietary information"; and as a "tenacious effort" to shut down EverNu as a "functioning entity."

Lin's February 2004 brief in Lin I mirrored these Affidavit statements, with arguments such as:

> Rohm and Haas has remained relentless in its pursuit of litigation against Dr. Lin.  That litigation has now been expanded to include her current employer, EverNu.
> …
> These legal services [for EverNu] were required by EverNu as a direct product of RH's retaliatory conduct….
> …
> Rohm and Haas continues its unjustified pursuit of EverNu….

(Br. at 8-9).[18]

In her March 2, 2004 reply brief in support of her motion for reconsideration, Lin continued her

reliance on the EverNu discovery as support for her Title VII/PHRA retaliation claims based on the IP

lawsuit.  In that reply brief, Lin argued:

> [In] August 2003 when Rohm and Haas initiated its direct assault on EverNu….  The record now demonstrates that EverNu has been forced, by reason of Rohm and Haas' predatory and retaliatory tactics, to sacrifice Dr. Lin's compensation…  [EverNu is] faced with substantial costs to protect its intellectual property based on retaliatory litigation that is aimed at her personally.

---

[18] Lin's December 2003 and February 2004 briefs are not under seal for any of the above-quoted parts, but rather remain under seal because of other parts/exhibits.  For example, Lin's December 2003 brief contains an exhibit of an inventory list "concerning R&H trade secrets" and an exhibit of testimony in the IP lawsuit; and the February 2004 brief, for example, has as an exhibit a 29-page brief filed by EverNu in the IP lawsuit that discusses trade secrets.  In contrast, Lin's March 2004 reply brief in support of her motion for reconsideration has been unsealed by this Court because it did not contain trade secret information and instead just contains arguments and statements like these quoted above from the December 2003 and February 2004 briefs.

> …
> EverNu's right to protect its own intellectual property interests from the persistent attacks by Rohm and Haas….
> …
> The expenses incurred by EverNu are a direct product of Rohm and Haas' unrelenting retaliatory pursuit of Dr. Lin in which it now seeks unrestricted access to any and all of the propriety and confidential information of Dr. Lin's current employer.

(Br. at 3-5).

On May 5, 2004, this Court denied Lin's motion for reconsideration, and held that the EverNu discovery was not a basis for claiming retaliation under Title VII.  The Court stated that it would not disregard the State Courts' Opinions/Orders, such as the denial of EverNu's Motion to Quash Subpoena and for Protective Order.  In rejecting the EverNu discovery as retaliatory, this Court held:

> This Court does not believe that Defendant's lawful use of the state judicial system and its discovery process can be the basis of Plaintiff's claim of unlawful retaliation under Title VII.

On May 20, 2004, Lin filed a second motion for reconsideration that challenged the above-quoted holding as "fundamentally flawed" and as clear error of law.  (Br. at 3).  Lin also argued in her second motion for reconsideration that the decisions of the Montgomery CCP that validated the EverNu discovery as relevant should not be deemed "conclusive and binding precedent" for the Federal Court since the State Court decisions had been appealed.  While "recogniz[ing] and acknowledg[ing] that this Court does not sit in review of the orders and proceedings in the state court", Lin argued that because the IP litigation "disputes have not yet been fully and finally determined" and because all of the State Court Orders as of that time were "subject to further proceedings", this Court should treat the findings of the Montgomery County CCP as "unresolved issues of fact".  (Br. at 5).  Invoking principles of collateral estoppel, Lin argued that "[t]he proceedings in the state court simply are not sufficiently firm to warrant giving them any effect in this proceeding."  (Br. at 6).  Finally, Lin argued that her retaliation claims should not be dismissed until the IP litigation was resolved on appeal, and so, she argued for a stay of her retaliation claims.  On July 27, 2004, this Court entered an Order that denied Lin's second motion for reconsideration.

**C.      The EEOC Charge**

While the Lin I motion for reconsideration challenging this Court's holding that the EverNu discovery cannot be the basis for Title VII retaliation was still pending before this Court, Lin filed her fourth and final EEOC charge on June 21, 2004 in which she alleged only retaliation.  (Dkt. 1 at ¶17 and exh. A).[19]   In this charge that was dual-filed with the PHRC, Lin focused exclusively on the EverNu discovery as the basis for her retaliation claim:   "Respondent has filed burdensome and unlawful requests for discovery and production of documents on EverNu, pursuant to the formal lawsuit filed by Respondent in June 2000 against me as an individual."  (Dkt. 1 at exh. A).   In this charge, Lin identified August 20, 2003 (i.e., the date of the subpoena served on EverNu in the IP litigation) as the date that the alleged retaliation began.  Id.  Lin never amended this charge and never filed any charge after it.   In her accompanying statement, Lin focused exclusively on EverNu and identified the following key dates for her charge -- April 2003 and August 2003 when RH served Lin and later EverNu with the EverNu discovery; August 11, 2003 when the Montgomery County CCP ordered that the discovery be provided; and December 16, 2003 when the Court denied EverNu's motion for protective order.  (Dkt. 1 at exh. A).   Using the same language from her Lin I briefs, Lin referred to RH's "relentless pursuit of EverNu" in her EEOC charge statement.  (Dkt. 1 at exh. A).

In response to RH's position that the charge was barred by res judicata and/or collateral estoppel, the EEOC dismissed Lin's charge for "lack of jurisdiction" on December 14, 2004 (attached as Exhibit C).   The EEOC reconsidered and on April 5, 2007, issued a determination that it had jurisdiction without any explanation.   The EEOC agreed to consider RH's written request for reconsideration of that jurisdiction determination.   Without ever advising RH of its decision on RH's written request for reconsideration; without inviting a position statement from RH concerning any aspect of the charge other than jurisdiction; and without advising RH that a determination was

---

[19] The signed charge that the EEOC sent RH had Lin's handwritten date of June 30, 2004.  For this motion, the June 21, 2004 filing date pled in the Complaint will be used.

forthcoming, the EEOC issued its determination on February 1, 2011 -- a determination that makes no reference at all to the decisions in Lin I or to the decisions of the Pennsylvania Courts.[20]

## IV.   ARGUMENT

### A.   The Decisions Of This Court In Lin I Are A Res Judicata Bar To Lin's Retaliation Claims.

In Astoria Federal Savings and Loan Association v. Solimino, the Supreme Court summarized the importance of the doctrines of res judicata and collateral estoppel as follows:

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) … Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.  To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution.

501 U.S. 104, 107-108 (1991) (citation omitted).

A res judicata bar applies when there has been:  "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action."  Churchill v. Star Enterprises, 183 F.3d 184, 194 (3d Cir. 1999) (citation omitted); see also, Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991).  "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Churchill, 183 F.3d at 194 (citation and internal quotation marks omitted).  "Summary judgment is a 'final judgment on the merits' for the purposes of res judicata."  Borough of Lansdale v. PP&L, 426 F. Supp.2d 264, 307 (E.D.Pa. 2006) (citation omitted). "A determination of whether two lawsuits are based on the same cause of action turns on the essential similarity of the underlying events giving rise to the various legal claims."  Churchill, 183 F.3d at 195

---

[20] An EEOC document dated September 17, 2009 that was addressed to EEOC investigator Novella West and EEOC Enforcement Manager William Cook referred to "our sympathies" for Lin; acknowledged that the EEOC "lack[ed] a real understanding of intellectual property"; and advised -- "You will see language that the lawsuit must be baseless, frivolous, etc. to be retaliatory.  This is problematic for CP [Lin]."  RH could not agree more, as shown in the following arguments.

(citations and quotation marks omitted); see also, Lubrizol, 929 F.2d at 963. The Third Circuit has directed that a "broad view" of "underlying events" be taken in evaluating whether there is a "same cause of action." Churchill, 183 F.3d at 194. Advancement of a different legal theory for the newly-filed claim (when compared to the earlier claim) does not preclude application of res judicata. Churchill, 183 F.3d at 195; Lubrizol, 929 F.2d at 963. This Court summarized the doctrine of res judicata as follows:

> When a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only *as to every matter which was offered and received to sustain or defeat the claim* on demand, but as to any other admissible matter which might have been offered for that purpose.

Bor. of Lansdale, 426 F. Supp.2d at 306 (emphasis added) (citations and quotation marks omitted).

The breadth of the Third Circuit view of the "same cause of action" for res judicata is reflected in Churchill. The plaintiff in Churchill litigated in this Court a claim that her termination violated the Family and Medical Leave Act ("FMLA"). During that first case, the plaintiff's charge of disability discrimination was pending before the EEOC and PHRC, with the EEOC not issuing a right-to-sue notice until months after a judgment was entered in the FMLA case in favor of the plaintiff. The plaintiff then filed a second action for disability discrimination. Despite the fact that the second action presented different claims with different elements and proof requirements, and despite the plaintiff's argument that she had to wait for administrative exhaustion to conclude, the Third Circuit held that res judicata barred the second action, because the underlying events for the FMLA claim and the disability discrimination claim were essentially similar.

In so holding, the Third Circuit rejected any policy argument that civil rights claims should be treated differently in a res judicata analysis: "courts have rejected favoring the language and policy of Title VII as against application of well-settled claim preclusion principles." Churchill, 183 F.3d at 193 (citation and internal quotation marks omitted). The Court also rejected the plaintiff's argument that she had pled "additional allegations" and different damages in her second lawsuit when compared to

the first lawsuit.  While acknowledging that new facts had been alleged in the second lawsuit, the Court still viewed both lawsuits as stemming from the same "course of wrongful conduct."  Id. at 195. The Court noted that "artful pleading" of new allegations in a second complaint would not defeat application of res judicata.  Id. at 195 n.10.

Under the doctrine of res judicata, the retaliation claims in Lin II (Counts I and II) are barred by the decisions of this Court in Lin I.  Lin I involved the same parties as Lin II, and Lin I concluded with a final judgment on the merits of Lin's retaliation claims in the form of a summary judgment dismissal and subsequent denial of two motions for reconsideration.   Lin I and Lin II are under the same statutes -- Title VII and the PHRA -- and present the same claim of retaliation.  Most importantly, Lin II is the same cause of action as Lin I, not only because of  the same legal theories being advanced, but also because of the "essential similarity" of the underlying events in Lin I and Lin II.  In both Lin I and Lin II, RH is alleged to have retaliated against Lin through the IP lawsuit.  In both Lin I and Lin II, RH is also alleged to have retaliated against Lin more specifically through RH's efforts to obtain discovery from EverNu.  As shown above, Lin argued in brief after brief in Lin I that RH's pursuit of EverNu discovery amounted to unlawful retaliation -- and she presents the *same* argument in the Lin II Complaint.  Since all of the core events regarding the EverNu discovery occurred in 2003 (i.e., the service of discovery on Lin; the service of the subpoena on EverNu; and the Pennsylvania Court Orders directing that the discovery be provided),[21] Lin argued in Lin I that RH has been "relentless" in its pursuit of Lin and EverNu; argued in Lin I that the EverNu discovery efforts are part of RH's "retaliatory tactics"; and argued in Lin I that the EverNu discovery demands amounted to "retaliatory litigation that is aimed at [Lin] personally."   Having *lost* in Lin I, Lin now improperly attempts to re-plead the same IP lawsuit/EverNu discovery-based claim of retaliation in Lin II with those same Lin I

---

[21] Lin herself pleads that all of the RH conduct about which she complains is part of one course of conduct that began in 2003 when she alleges that "[s]ince 2003, Rohm and Haas has continuously and deliberately used the Montgomery County Litigation … to obtain EverNu research and eliminate EverNu as a competitor in continued retaliation against Dr. Lin."  (Dkt. 1 at ¶86).

arguments -- something Lin cannot do under the doctrine of res judicata.  See Borough of Lansdale, 426 F. Supp.2d at 306 (parties are bound to earlier final judgment and "as to every matter which was offered and received to sustain or defeat the claim").

Perhaps most telling, the EEOC charge of retaliation (focusing exclusively on EverNu discovery) that underlies Lin II was filed in June 2004 while Lin I was still pending and while Lin's reconsideration argument challenging this Court's holding that the EverNu discovery was not retaliatory was still before the Court.  That timing conclusively establishes that the events underlying Lin II are the same as the events underlying Lin I.  In sum, since Lin I and Lin II have the same underlying events, the Lin I and Lin II retaliation claims are the "same cause of action" for res judicata.

While the Lin II Complaint refers to IP litigation events after 2004, a review of the Lin II Complaint shows that the post-2004 events are part of the "same course of wrongful conduct" that was alleged, argued, and lost in Lin I.[22]  The IP litigation events after 2004 as pled in the Complaint -- Orders to compel EverNu discovery; sanctions for non-compliance with the Court's Orders; Default Judgment for non-compliance with EverNu discovery -- all flowed directly from the IP litigation events in 2003 (i.e., service of the EverNu discovery and the two Montgomery CCP Orders directing that the discovery be provided) and are just the normal continuation of the 2003 litigation events and the normal consequences for non-compliance by Lin and by EverNu with the 2003 Orders.  Similarly, the alleged "interferences" by RH after 2004 are all part of the EverNu discovery efforts and/or are just consequences of the Pennsylvania Court Orders related to EverNu discovery.   The alleged interference with the DOE arose in RH providing the DOE with the Default Judgment and the related restrictions on Lin under that Default Judgment.  The alleged interference with Temple was through a

---

[22] This conclusion is supported by the fact that Lin never filed another EEOC charge after June 2004 and never amended her June 2004 EEOC charge.  As shown in the Complaint, Lin was experienced in filing new EEOC charges for "additional acts of retaliation."  (Dkt. 1 at ¶¶15-17).  If the post-2004 events were somehow part of a "different course of wrongful conduct," then they should be stricken from the Complaint on the grounds that they are outside the scope of the EEOC charge.  RH preserves all positions that it may take regarding the "scope of the charge."

subpoena for EverNu-related documents and information, i.e., EverNu discovery.   The alleged interference with publication and marketing are all consequences of the Default Judgment entered for non-compliance with EverNu discovery.   The alleged interference with a patent application arose in RH's opposition to a motion for a stay of the Default Judgment.   The alleged breach of the EEOC-mediated settlement agreements arose as a result of the 2001 Injunction Order that Lin unsuccessfully contended to be retaliatory in Lin I.   Thus, the Lin II retaliation claims involve the same alleged course of wrongful conduct as in Lin I and are the same cause of action as Lin I.[23]

With the elements for res judicata having been satisfied here, this Court's decisions in Lin I bar the Lin II retaliation claims.   Given this Court's summary judgment dismissal of the retaliation claims in Lin I and given this Court's related holdings (i.e., "This Court does not believe that Defendant's lawful use of the state judicial system and its discovery process can be the basis of Plaintiff's claim of unlawful retaliation under Title VII"), the Lin II retaliation claims are barred by res judicata.   Therefore, the Court should dismiss Counts I and II.

**B.    Since The Factual Findings And Legal Holdings Of The Pennsylvania Courts In The IP Litigation Are To Be Accorded Collateral Estoppel Effect In This Case, Lin's Claims Fail As A Matter Of Law.**

"The doctrine of collateral estoppel is a broader concept than res judicata.   It operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a

---

[23] RH notes that in Morgan v. Covington Township, 2011 WL 3276012 (3d Cir. 2011), the Court held that res judicata did not apply to a second lawsuit based on an employment termination that occurred after the filing of the first lawsuit.  However, Morgan is materially distinguishable from Lin II in many ways.  First, the Morgan plaintiff's employment termination was not before the District Court in the first lawsuit.  In contrast, the EverNu discovery efforts alleged to be retaliatory in Lin II were before this Court in Lin I.  Second, the events underlying the first lawsuit in Morgan (i.e., alleged procedural due process violation in not affording the plaintiff a hearing before a suspension and alleged unlawful referral of the plaintiff for prosecution) were different from the events underlying the second lawsuit (i.e., an employment termination after a hearing).  Even the defendant in Morgan could only argue that there was "factual overlap" between the two lawsuits.  In contrast, there is an "essential similarity of the underlying events" giving rise to both the Lin I and the Lin II retaliation claims (i.e., EverNu discovery in the IP litigation).  Third, the District Court denied the Morgan plaintiff's attempt to amend his complaint to add his employment termination claim before there was a trial of the surviving claim from his first lawsuit -- thereby presenting an equitable appeal to the Morgan plaintiff's position that is absent from this case. Finally, it should be noted that the Morgan Court stated that on remand, the District Court was free to explore the applicability of issue preclusion/collateral estoppel.  Id. at *5 n.3.

court of competent jurisdiction from being relitigated in a subsequent suit." Day v. Volkswagenwerk Aktiengesell-Schaft, 464 A.2d 1313, 1318 (Pa. Super. Ct. 1983) (citations omitted).   Collateral estoppel will apply if:   "1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action." Shaffer v. Smith, 673 A.2d 872 (Pa. 1996) (citation omitted).[24]

Federal courts have "consistently accorded preclusive effect to issues decided by state courts … [which] promote[s] the comity between state and federal courts." Allen v. McCurry, 449 U.S. 90, 95-96 (1980).   Moreover, under 28 U.S.C. §1738, "judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States … as they may have by law or usage in the courts of such State."

As a matter of Pennsylvania law, collateral estoppel applies to the factual findings and legal holdings of the Pennsylvania Courts as are presented in the 2003 and 2010 Opinions of the Pennsylvania Superior Court.   Lin was a party in the Pennsylvania Court proceedings and as reflected in the extensive Trial Court docket and in the two appeals, Lin had a full and fair opportunity to litigate her trade secrets violations and the relevance and appropriateness of the EverNu discovery in the IP litigation.   The affirmed Injunction Order and the affirmed Default Judgment Order are certainly final for purposes of collateral estoppel effect that applies even before appellate decisions are issued. Schuldiner v. KMart Corp., 450 F. Supp.2d 605, 609 (E.D. Pa. 2006) (under Pennsylvania law, appellate review not required in first action for res judicata or collateral estoppel to apply).

Consequently, Lin cannot relitigate the following findings/holdings of the Pennsylvania Courts:

_____

[24] Since collateral estoppel is to be accorded the IP litigation findings and holdings of the Pennsylvania Courts, Pennsylvania law on collateral estoppel standards applies.  See, e.g., Briner v. Litwhiler, 98 Fed. Appx. 75, 77 (3d Cir. 2004).

1.      Lin's unambiguous contractual promises and obligations under the EEOC-mediated settlement agreements and other contracts encompassed a commitment not to divulge or disclose RH's trade secrets or any of RH's confidential information -- a commitment that continued beyond the termination of her RH employment in 1999.

2.      Lin's contractual agreements with RH (including the EEOC-mediated settlement agreements) "did not limit protection only to trade secrets and confidential information related to the area Dr. Lin worked in at Rohm and Haas," but included protection for "any non-public information which could be used for a competitive advantage that [Dr. Lin] acquired during [her] tenure at Rohm and Haas."

3.      Lin breached her promise "to protect the confidential and trade secret information she learned at Rohm and Haas."  Upon her departure from RH, "Lin copied hundreds of confidential documents onto high storage computer disks, which she took with her," and "on March 28, 2000, Dr. Lin gave a presentation using post-1996 trade secret information."

4.      The Injunction Order did not alter the EEOC-mediated settlement agreements; did not deprive Lin of the benefit of the EEOC-mediated settlement; and did not "improperly modif[y] the terms of the negotiated relationship between the parties."

5.      RH's requested discovery of EverNu was "important because it was directly related to Rohm and Haas' claim for misappropriation of trade secrets, breach of contract and breach of fiduciary duty"; was "important to the protection of Rohm and Haas' confidential information and trade secrets";  and was "related to Rohm and Haas' underlying equity action and to enforcement of the preliminary injunction."

6.      Lin's conduct and RH's "need to protect against future conduct gave rise to the requested [EverNu] discovery."

7.      RH's articulated interests in the EverNu discovery were not a fabrication and were not a "pretext to obtain the alleged trade secrets of [Dr. Lin] and her company, EverNu Technologies."

8.      "Lin was the driving force behind the violation of the discovery orders.  In violation of her contractual obligations, she misappropriated sensitive Rohm and Haas information essential to its business and used this information in furtherance of her own business to the detriment of Rohm and Haas."

9.      "Lin's actions demonstrated a willful defiance of the court's discovery orders …  Lin's discovery abuses were willful, numerous, continuing and in complete disregard of the trial courts' orders."

Since Lin cannot relitigate these findings and holdings from the Pennsylvania  Courts under the doctrine of collateral estoppel, she is precluded from proceeding with her retaliation, contract and tortious interference claims.  For her retaliation claims, Lin must prove that unlawful retaliatory animus was the determining factor in RH's pursuit of EverNu discovery.  See, e.g., Krouse v. American Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997).  Lin summarized her retaliation allegation in her Complaint in ¶86 as follows:  "Since 2003, Rohm and Haas has continuously and deliberately used the Montgomery Litigation as a tactical weapon against Dr. Lin to obtain EverNu's research and eliminate EverNu as a competitor, in continued retaliation against Dr. Lin for complaining about and opposing Rohm and Haas's discriminatory and retaliatory acts and practices."[25]  Lin cannot advance her retaliation claim given the Pennsylvania Court's findings that the Lin's unlawful conduct and RH's need to protect against future unlawful conduct by Lin are what gave rise to the EverNu discovery -- discovery that the Pennsylvania Courts found to be important and relevant to the IP lawsuit claims. Lin also cannot advance her retaliation claim given the Pennsylvania Court's rejection of Lin's argument that RH's articulated interests in the EverNu discovery were a fabricated pretext to obtain trade secrets of Lin and EverNu.  Simply put, the Pennsylvania Court's findings and holdings

---

[25] RH refers the Court to its Arguments A and C in which it establishes that all of the conduct about which Lin complains flows from RH's pursuit of the EverNu discovery and from the consequences of the Default Judgment Order that was entered because of years of Lin's willful contempt of discovery Orders.

conclusively establish the legitimate, non-retaliatory basis for RH's pursuit of the EverNu discovery, which cannot be challenged in this case.  Moreover, the Pennsylvania Court's findings and holdings that the Default Judgment was caused by Lin's "willful defiance of the court's discovery orders" and "numerous discovery abuses" precludes a retaliation challenge here to the Default Judgment or to any of the consequences from the Default Judgment.

In Lin I, this Court held that "[t]his Court does not believe that Defendant's lawful use of the state judicial system and its discovery process can be the basis of Plaintiff's claim of unlawful retaliation under Title VII."  Even if, arguendo, that holding is not a res judicata bar to the Lin II retaliation claims, it is a correct statement of law that should be applied in Lin II.  The Pennsylvania Court's findings and holdings establish the "lawful use of the state judicial system and its discovery process" by RH in the IP litigation, which leaves Lin without any basis for her retaliation claim.

Similarly, Lin's contract and tort claims are precluded by the Pennsylvania Courts' findings and holdings.  Lin's contract claim that RH breached the EEOC-mediated settlement agreements through the IP litigation[26] is precluded by the Pennsylvania Courts' findings/holdings that the Injunction Order did not alter the contractual status quo between Lin and RH and did not improperly modify the parties' negotiated terms.  The Pennsylvania Courts found that it was Lin, not RH, who breached the EEOC-mediated settlement agreements, and Lin cannot relitigate that finding here.

Lin's claim of tortious interference that requires proof, inter alia, of some improper conduct by RH that was "not justified or privileged" (see Dkt. 1 at ¶167) also cannot be advanced in light of the binding findings/holdings of the Pennsylvania Courts.  The Pennsylvania Courts found that RH's pursuit of an injunction was justified because an Injunction Order was entered and affirmed; that RH's pursuit of EverNu discovery was justified because it was ordered; and that the Default Judgment Order terms that RH requested were justified because they were entered and affirmed.  Therefore,

---

[26] Lin does not explain how Court Orders can constitute a breach by RH of a contract.

any consequences from that Default Judgment on Lin's prospective contractual relations cannot be an actionable tort.

In sum, according collateral estoppel effect to the Pennsylvania Courts' findings and holdings in the IP litigation precludes Lin from advancing her retaliation, contract and tort claims.

### C.   Rohm and Haas Has A First Amendment Right to Petition  The Government. Lin's Complaint Seeks To Abridge That  Constitutional Right, And Accordingly Should Be Dismissed.

"The First Amendment provides, in relevant part, that Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances.  We have recognized this right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights."  BE&K Construction Co. v. NLRB, 536 U.S. 516, 524 (2002) (quotation marks and citation omitted).  This First Amendment right to petition extends to all branches of the government -- the legislature, the executive and the courts.  Id. at 525.

Through three cases, the Supreme Court has developed the principles by which claims challenging lawsuits as unlawful under federal laws (e.g., under employment laws; antitrust law), are to be evaluated under the First Amendment.  In Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731 (1983), the Court confronted whether the National Labor Relations Board ("Board") could find that a State Court lawsuit filed by an employer was retaliatory and hence constituted an unfair labor practice ("ULP") under the National Labor Relations Act ("NLRA").  After the restaurant employer terminated Myrland Helton ("Helton"), an employee believed to have been engaged in protected union organizing activities, Helton filed a ULP charge.  Helton also organized picketing at the restaurant, and after the employer sued Helton for mass picketing, harassment, and libel, Helton filed a second ULP charge, claiming that the employer sued her in retaliation for her protected activities.  The Board agreed and held that the employer's prosecution of the State Court lawsuit was retaliatory in violation of §§8(a)(1) and (4) of the NLRA, 29 U.S.C. §§158(a)(1) and (4).  Much like Title VII's anti-retaliation provision, §8(a)(4) of the NLRA makes it a ULP for "an employer to discharge or otherwise

discriminate against an employee because he has filed charges or given testimony under this subchapter."  As part of its remedial measures, the Board issued a cease-and-desist order to stop the State Court lawsuit.

The Supreme Court vacated that Board order under the First Amendment.  Given that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances," the Court held:

> Considering the First Amendment right of access to the courts … [t]he filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendants for exercising rights protected by the Act.

Id. at 742-743.  In reaching that holding, the Supreme Court also stressed the important State interests in adjudicating the rights of its citizens -- rights such as property rights and the right to be protected from tortious conduct, and the Court criticized the Board for making factual determinations as to the merit of the State Court claims, which instead had to be decided by the State Court.

The Supreme Court then presented its standard for a First Amendment analysis of a claim of retaliation based on a lawsuit:

> [W]e hold that the Board may not halt the prosecution of a state court lawsuit regardless of the plaintiff's motive, unless the suit lacks a reasonable basis in fact or in law.  Retaliatory motive *and* lack of reasonable basis are *both essential prerequisites* to the issuance of a cease-and-desist order against a state suit.

Id. at 748-749 (emphasis added).  In other words, under Bill Johnson's, the First Amendment bars a claim of retaliation that is based on a lawsuit that has a "reasonable basis."  See, e.g., Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1408 (10th Cir. 1992) (applying Bill Johnson's to dismiss a Fair Labor Standards Act retaliation claim, because the unsuccessful litigation brought by the employer was "not baseless as a matter of law or fact").

In Professional Real Estate Investors, Inc. v. Columbia Picture Industries, Inc., 508 U.S. 49 (1993), the Supreme Court addressed when litigation is "a mere sham [under antitrust law] to cover … an attempt to interfere directly with the business relationships of a competitor."  Id. at 50.  While

27

Professional Real Estate involved First Amendment analysis in an antitrust case, the Court acknowledged that the analysis is the same as in employment cases:  "Indeed, by analogy to Noerr's sham exception, we held that even an 'improperly motivated' lawsuit may not be enjoined under the National Labor Relations Act as an unfair labor practice unless such litigation is 'baseless.'"  Id. at 59, citing Bill Johnson's.

In Professional Real Estate, Columbia Pictures ("Columbia") sued Professional Real Estate Investors ("PRE") for copyright infringement.  PRE counterclaimed under the Sherman Act, alleging that Columbia's lawsuit was a mere sham.  The District Court dismissed Columbia's lawsuit.  PRE then sought "discovery on Columbia's intent in bringing the copyright action," which the District Court denied.  Id. at 53.  The District Court dismissed PRE's counterclaim, reasoning that the lawsuit was legitimate and not a sham.  PRE unsuccessfully argued before the Supreme Court that it should be allowed to engage in discovery of Columbia's subjective motive for bringing the lawsuit and that it should prevail in its "sham litigation" claim if it could prove an unlawful subjective motivation for the lawsuit.  Holding that "an objectively reasonable effort to litigate cannot be a sham regardless of subjective intent," id. at 57, the Court presented a two-part definition of "sham litigation" that could be reconciled with the First Amendment right to petition the courts:

> First, the lawsuit must be *objectively baseless* in the sense that no reasonable litigant could realistically expect success on the merits….  Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.

Id. at 60 (emphasis added).  Since Columbia's lawsuit satisfied F. R. Civ. P. 11 standards, it was not "objectively baseless," and Columbia's allegedly unlawful economic motivations for suing PRE "were rendered irrelevant by the objective legal reasonableness of the litigation."  Id. at 65-66.  Significantly, in evaluating whether a lawsuit is "objectively baseless," the Court stated that "[a] *winning lawsuit is by definition a reasonable effort at petitioning* for redress and therefore not a sham."  Id. at 60 n.5 (emphasis added).

28

In BE&K Construction Co. v. NLRB, 536 U.S. 516 (2002), the Supreme Court combined its holdings in Bill Johnson's and in Professional Real Estate in evaluating a claim that a lawsuit was retaliatory under the NLRA.  In BE&K, a non-union contractor, frustrated by picketing by unions that delayed a construction project, sued the unions.  The District Court dismissed the  lawsuit.  The Board held that the lawsuit was pursued because of retaliatory motive and was a ULP because it was both unsuccessful and retaliatory.  The Court in BE&K summarized its prior holdings as follows:

> [I]n cases like Bill Johnson's and Professional Real Estate Investors, our holdings limited regulation to suits that were both objectively baseless *and* subjectively motivated by an unlawful purpose.

Id. at 532 (emphasis in original).  After commenting that even objectively baseless litigation might be entitled to some "breathing protection" under the  First Amendment, id. at 531, the Court then focused on unsuccessful lawsuits that were reasonably based.  The Court stated that the First Amendment protects the right to petition the Government, not just successful petitions, and that "prior cases … have protected petitioning whenever it is genuine, not simply when it triumphs."  Id. at 532 (citations omitted).  The Court also emphasized that First Amendment interests are advanced by unsuccessful, reasonably based lawsuits, such as the public airing of disputes and matters of public concern and such as the strengthening of the "legitimacy to the court system as a designated alternative to force." Id. at 532.  Clearly then, given the Supreme Court's interest in BE&K in  providing some First Amendment protection from retaliation claims for *un*successful, but reasonably based lawsuits, successful lawsuits are entitled to First Amendment protection from retaliation claims.

Ultimately, the Supreme Court reversed the Board's decision in BE&K on narrower statutory interpretation grounds, thereby avoiding a decision on the constitutional question.  Yet, the Court strongly suggested that the Board could not constitutionally burden a reasonably based, but unsuccessful lawsuit by finding it to be retaliatory when it referenced its Professional Real Estate holding that prohibited such an unconstitutional burden in the antitrust context, id. at 535 -- so much so that Justice Scalia spoke for six Justices in concurring opinions when he wrote:

> I agree with Justice Breyer that the implications of our decision today is that in a future appropriate case, we will construe the National Labor Relations Act (NLRA) in the same way we have already construed the Sherman Act: to prohibit only lawsuits that are *both* objectively baseless *and* subjectively intended to abuse process.

Id. at 537 (emphasis in original) (citation omitted).  Indeed, on remand, the Board adopted that very standard in limiting lawsuit-based retaliation claims to those lawsuits that are both objectively baseless and subjectively motivated by an intent to retaliate against the exercise of protected rights. BE&K Construction Co., 351 NLRB 451, 456 (2007) ("a reasonably based lawsuit does not violate the Act, regardless of whether the lawsuit is ongoing or completed, and regardless of the motive for initiating the lawsuit").  The Board concluded that this standard was necessary "to avoid chilling the fundamental First Amendment right to petition."  Id. at 458.

Thus, under the Supreme Court's First Amendment analysis, all of Lin's claims amount to an unconstitutional burden on RH's First Amendment rights to petition the Government and so should be dismissed.  Lin claims that RH's pursuit of EverNu discovery in the IP litigation was motivated by a subjective intent to retaliate against her for engaging in activity protected by Title VII and the PHRA. Yet, RH was *successful* before both the Montgomery CCP and the Pennsylvania Superior Court in the pursuit of that discovery and in all other aspects of the IP litigation.  The Montgomery CCP granted RH's motion to compel the discovery from Lin and denied EverNu's motion for protective order -- decisions that were affirmed by the Superior Court in its review of the Default Judgment.  RH not only *won* the EverNu discovery disputes, but it also *won* the IP lawsuit through the entry of a Preliminary Injunction (following ten days of State Court hearing) and the entry of a Default Judgment that essentially made the Preliminary Injunction permanent.[27]  Therefore, as a matter of law, neither the IP lawsuit nor the efforts to obtain EverNu discovery in the IP lawsuit were "objectively baseless."  See,

---

[27] As noted above, while the Superior Court vacated paragraphs 2 and 3 of the Default Judgment Order with a remand for further evidentiary proceedings (i.e., not a reversal), RH had not sought the relief in paragraphs 2 and 3.  RH sought and successfully obtained the entry of a default judgment and continuation of trade secret review, with both of those provisions being affirmed by the Superior Court.

e.g., Professional Real Estate, 508 U.S. at 60 n.5 ("winning lawsuit is by definition a reasonable effort at petitioning for redress"). Consequently, under the Supreme Court's First Amendment analysis, the existence or absence of a retaliatory motive[28] becomes irrelevant, as RH's successful lawsuit is constitutionally protected. Under the First Amendment, Lin cannot proceed with her retaliation claims.[29]

Just as Lin cannot challenge RH's constitutionally protected IP lawsuit as retaliatory, Lin cannot challenge the IP lawsuit under contract and tort theories. Lin's claim of tortious interference requires proof of a subjective improper intent by RH to harm her by preventing prospective contractual relations[30] -- akin to a subjective retaliatory motivation for the retaliation claims. Since neither the IP lawsuit nor the EverNu discovery were "objectively baseless," the Court should not advance into any inquiry of the existence of a subjective tortious intent under the First Amendment analysis. Just as Lin's retaliation claims would amount to an unconstitutional burden on RH's First Amendment rights if allowed to proceed, Lin's tortious interference would amount to an unconstitutional burden if allowed to proceed. Similarly, Lin cannot attempt to invalidate RH's constitutionally protected IP lawsuit as a breach of contract. Again, RH had a First Amendment right to petition the courts through its IP

---

[28] RH vigorously denies any retaliatory motive behind the IP lawsuit or the EverNu discovery requests.

[29] As noted above, while Lin purports to list a number of alleged retaliatory "interferences" and acts in her Complaint, all of those acts are intertwined with the constitutionally protected IP lawsuit and/or the consequences of the Default Judgment entered in the IP lawsuit -- as is clearly shown in the Complaint. RH's alleged interference with Lin's DOE relationship arose in RH providing the DOE with the Default Judgment and related inquiries. In any event, RH's contacts with the DOE are independently protected under the First Amendment right to petition all branches of Government. See, e.g., Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 160 (3d Cir. 1988). RH's alleged interference with Lin's relationship with Temple was through a subpoena to Temple for EverNu-related discovery since Temple was involved in EverNu research. Lin's objections to the Temple subpoena were stricken by the Montgomery County CCP, which ordered the discovery, i.e., the discovery served on Temple was not objectively baseless. RH's alleged interference with publication and marketing of EverNu's research arose as a consequence of the Default Judgment. RH's alleged interference with EverNu patent applications was done through statements made in the IP lawsuit, although RH did nothing to challenge the patent application(s). RH's alleged breach of the EEOC-mediated settlement agreements arose as a result of the IP litigation. The First Amendment bars all of these claims.

[30] See, e.g., Cloverleaf Development v. Horizon Financial F.A., 500 A.2d 163, 167 (Pa. Super. 1985).

lawsuit, which right cannot be abridged by Lins' claim that the lawsuit is unlawful under a contract theory.

### D.     Lin's Retaliation Claims Are Untimely.

Under Title VII, a plaintiff must file a charge of retaliation with the EEOC within 300 days of the alleged retaliatory act.  42 U.S.C. §2000e-2(a)(1)-2.  Under the PHRA, a plaintiff must file a charge with the PHRC within 180 days of the alleged retaliatory act.  43 Pa. C.S.A. §959(h).  Failure to file a charge within the applicable filing period bars a plaintiff from filing that claim in court.  See, e.g. Noel v. Boeing Co., 622 F.3d 266, 270 (3d Cir. 2010).

Lin allegedly filed her EEOC charge on June 21, 2004.  (Dkt. 1 at ¶17).  Lin based her charge exclusively on the allegedly "burdensome and unlawful requests for discovery and production of documents on EverNu," and in her charge statement, Lin identified April 2003 (RH's service of discovery on Lin for EverNu grant applications) and August 20, 2003 (the service of the deposition notice and subpoena duces tecum on EverNu) as the key dates of RH's alleged retaliatory conduct, along with August 11, 2003 (the Montgomery County CCP's Order directing discovery be provided).  Since Lin did not file a charge within 300 days of any of these dates, her Title VII and PHRA claims are untimely.[31]

### E.     Lin's Contract And Tort Claims Are Barred by The Statutes Of Limitations.

The SOL for a Pennsylvania breach of contract claim is four years.  42 Pa. C.S.A. §5525.  Lin's breach of contract claim (Count III) has not been filed within the four-year SOL.  The EEOC-mediated settlement agreements constitute the "contract" that has been allegedly breached.  In the Lin I Amended Complaint filed in July 2002, Lin alleged that RH breached the EEOC-mediated settlement agreements.  Obviously, if the breach occurred by July 2002, it is an untimely claim in a

---

[31] Even if the Court Order of December 16, 2003 that denied the EverNu motion for protective order is somehow interpreted to be an act of RH, Lin did not file a PHRA charge within 180 days of December 16, 2003, and so, her PHRA claim would still be untimely.

May 2011 Complaint.  Moreover, to the extent that Lin's contract claim is based on RH's efforts to alter the EEOC-mediated settlement agreements through the IP litigation (Dkt. 1 at ¶¶158-160), she made that argument to the Pennsylvania Superior Court in 2002 (i.e., the Injunction alters the status quo and deprives Lin of the EEOC-mediated settlement terms), and the Superior Court rejected it in its February 2003 Opinion.  Even if Lin could overcome res judicata/collateral estoppel, the claim is untimely in a 2011 Complaint.

To the extent that Lin's breach of contract claim is for post-employment services provided in assistance to RH in patent applications (Dkt. 1 at ¶161), Lin presented that same claim in Lin I.  When this Court decided in its March 23, 2004 Order not to exercise jurisdiction over the claim, Lin did not re-file the claim in State Court.  A contract claim from 2004 and before is not timely in a 2011 Complaint.  In the May 13, 2011 Complaint, Lin did not identify any uncompensated post-employment services in the four years preceding the Complaint, nor can she in light of an April 22, 2011 letter (attached as Exhibit D) that she sent to the current RH President.[32]  In that letter, Lin identified 72.5 hours of alleged uncompensated services performed during March 14, 2003 - June 7, 2005 with no services identified after June 7, 2005.  (Exh. D).  Lin's claim for $250,237 for uncompensated services in this April 22, 2011 letter (with only $14,500 being charges for her time and with $235,737 representing Lin's unilaterally-imposed interest and penalties not provided for in any contract) aligns with her current Complaint allegation that she "has accumulated receivables in excess of $250,000 for patent services provided to Rohm and Haas."  (Dkt. 1 at ¶142).  Since Lin does not and cannot identify any uncompensated services performed during the four-year limitations period of May 13, 2007 - May 13, 2011, this contract claim is time-barred.

The SOL for a Pennsylvania tort claim is two years.  42 Pa. C.S.A. §5524.  Lin does not identify any conduct by RH within this two-year SOL of May 13, 2009 - May 13, 2011 that would

---

[32] To the extent that this letter converts this motion into a summary judgment motion on the breach of contract claim for unpaid services, RH requests that the motion be so converted for that claim.

amount to (if proven) tortious interference with a prospective contractual relationship.  Therefore, Lin's

tortious interference (Count IV) claim is time-barred.

### F.    Lin's Tortious Interference Claim Should Be Dismissed For Failure To Satisfy The Iqbal/Twombly Pleadings Standards.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court held that a pleading offering

"'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' …

Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

Id. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555).  In Iqbal, the Supreme Court

set forth the following pleading standard:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." … A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 556-57, 570).  Moreover, under Iqbal, "the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id.

For her claim of tortious interference with prospective contractual relations, Lin must establish

the following elements under Pennsylvania law:  "(1) a prospective contractual relationship between

the plaintiff and third parties, (2) a purpose or intent to harm the plaintiff by preventing the relationship

from accruing, (3) the absence of privilege or justification on the part of the plaintiff, and (4) the

occurrence of actual harm or damage to the plaintiff as a result of the defendant's conduct."

Cloverleaf Development v. Horizon Financial F.A., 500 A.2d 163, 167 (Pa. Super. 1985).  In the

Complaint, Lin does not identify any specific prospective contractual relationship within the two-year

SOL (i.e., May 13, 2009-May 13, 2011) that was allegedly interfered with by RH[33] and does not

---

[33] Lin makes only a passing reference to the DOE in Count IV (Dkt. 1 at ¶165), but there is no specific prospective contractual relationship between Lin and the DOE within the two-year SOL that is identified in the
*Continued…*

identify any particular conduct by RH that amounted to a tortious interference with a specific prospective contractual relationship.  The Complaint not only does not identify the prospective contractual partners, but it also does not identify the work to be performed under prospective contracts or the expected value of prospective contracts.  As such, the Count IV pleading is deficient under Iqbal and Twombly in that there are not sufficient facts pled to make out a plausible claim for tortious interference with prospective contractual relations.

## V.      CONCLUSION

For any and all of the reasons presented herein, the Court should grant RH's motion and dismiss the Complaint.

Respectfully submitted,

/s/  *Raymond A. Kresge*
RAYMOND A. KRESGE
ANDREW J. ROLFES
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508
215-665-2000

Attorneys for Defendant
Rohm and Haas Company

---

Complaint.  Moreover, the reference to the DOE for Lin's tortious interference claim would appear to be misleading, given Lin's allegations that the past DOE grants were with EverNu.  An individual shareholder or employee does not have standing to bring a claim for interference with the corporate entity's business relations even if that interference causes some derivative harm to the individual.  See Sharp Electronics Corp. v. Yoggev, 1995 WL 263533 at *2-3 (E.D.Pa. May 1, 1995).

<u>CERTIFICATE OF SERVICE</u>

I certify that on this 2nd day of September 2011, I caused to be served a true and correct copy of Defendant's Motion To Dismiss and Supporting Memorandum Of Law via ECF upon Plaintiff's counsel:

> Carol A. Mager, Esquire
> Marjory Albee, Esquire
> Console Law Offices, LLC
> 1525 Locust Street, 9th Floor
> Philadelphia, PA  19102

/s/  *Raymond A. Kresge*
RAYMOND A. KRESGE