IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

:
DR. MANHUA MANDY LIN,                        :
:
        Plaintiff,                           :
:
        v.                                   :        CIVIL ACTION NO. 11-3158
:
ROHM AND HAAS COMPANY                        :
d/b/a DOW ADVANCED MATERIALS,                :
:
        Defendant.                           :
:

**MEMORANDUM**

YOHN, J.                                                    March 26, 2012

        Dr. Manhua Mandy Lin brings this action against Rohm and Haas Company d/b/a Dow

Advanced Materials ("Rohm and Haas"), alleging retaliation in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Pennsylvania Human Relations Act (the

"PHRA"), 43 Pa. Stat. Ann. §§ 951 *et seq.*, as well as breach of contract and intentional

interference with prospective contractual relations.

        This is the latest in a series of lawsuits between the parties. Dr. Lin's claims in this action

stem largely from Rohm and Haas's conduct in a prior lawsuit brought by the company in state

court on June 2, 2000, and not yet finally resolved. In a federal lawsuit filed on June 5, 2002, Dr.

Lin unsuccessfully challenged the initiation of that state lawsuit and certain other conduct by

Rohm and Haas. The federal lawsuit was finally resolved on October 28, 2004, when the Third

Circuit dismissed Dr. Lin's appeal as untimely.

        Currently before me is Rohm and Haas's motion to dismiss Dr. Lin's complaint. Rohm

and Haas contends that the prior federal and state lawsuits bar Dr. Lin's claims in this action, and

makes several other arguments for dismissal. Because I agree that some of Dr. Lin's retaliation claims are barred by *res judicata*, I will grant Rohm and Haas's motion to dismiss those claims. But I will deny the motion with respect to Dr. Lin's other claims.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Dr. Lin was hired by Rohm and Haas as a research scientist on January 3, 1989. (Compl. ¶ 23.) After she filed a discrimination charge with the Equal Employment Opportunity Commission (the "EEOC") in January 1999, Dr. Lin and Rohm and Haas entered into a settlement agreement in November 1999, in which she agreed to resign. (*Id.* ¶¶ 25–26.) The parties also entered into a companion agreement that contained a non-compete provision and addressed certain confidentiality issues. (*Id.* ¶¶ 27, 29.) The agreements authorized Dr. Lin to publish papers and make presentations regarding her research, subject to trade-secret review by Rohm and Haas. (*Id.* ¶¶ 28–29.)

On June 2, 2000, Rohm and Haas filed a lawsuit in the Court of Common Pleas of Montgomery County, alleging that Dr. Lin had taken confidential information from Rohm and Haas without its permission and had disclosed its trade secrets in a presentation to the American

---

[1] The following summary is based on the allegations in Dr. Lin's complaint, which I assume to be true for purposes of Rohm and Haas's motion to dismiss, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), as well as exhibits attached to her complaint pertaining to her EEOC charge and prior judicial opinions issued in connection with the prior litigation between these two parties. It is well established that, when deciding a motion to dismiss, a court "can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (citation omitted); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (explaining that where defendant moved for dismissal on the basis of the preclusive effect of a prior bankruptcy proceeding, the court had to examine the record of the prior bankruptcy proceeding and was entitled to take judicial notice of the record in rendering its decision).

Chemical Society. (*Id.* ¶¶ 43, 46.) The trial court granted a preliminary injunction against Dr. Lin on April 17, 2001,[2] which the Pennsylvania Superior Court affirmed on February 20, 2003. *See Rohm & Haas Co. v. Lin*, No. 1246 EDA 2001 (Pa. Super. Ct. Feb. 20, 2003) (attached as Exhibit A to Def.'s Mot. to Dismiss).

Dr. Lin alleges that in March 2003, after the Pennsylvania Superior Court affirmed the trial court's preliminary injunction, Rohm and Haas learned that EverNu Technology, LLC ("EverNu"), a company founded by Dr. Lin in June 2000 to conduct chemical research (Compl. ¶¶ 50–55), had been awarded a grant by the Small Business Innovative Research (the "SBIR") program of the U.S. Department of Energy (the "DOE"), and that Rohm and Haas "began to improperly use the [state lawsuit] in an attempt to obtain EverNu's intellectual property" (*id.* ¶ 85).

In April 2003, for example, Rohm and Haas served Dr. Lin with a document request seeking all grant applications filed by EverNu, as well as EverNu's communications with the DOE. Notwithstanding Dr. Lin's objections, the trial court granted Rohm and Haas's motion to compel discovery. (*Id.* Ex. A, Statement of Complaint Filed with the EEOC on May 20, 2004 ("EEOC Statement") ¶ 9.)

Similarly, on August 20, 2003, Rohm and Haas served a subpoena on EverNu allegedly demanding that EverNu produce documents containing confidential business information, trade secrets, and intellectual property. (*Id.* ¶ 87.) EverNu filed a motion for a protective order, but the trial court denied the motion and later granted a motion by Rohm and Haas seeking to compel

---

[2] According to Dr. Lin's complaint, the Court of Common Pleas issued a preliminary injunction on July 11, 2000, and then revised the injunction on April 17, 2001. (Compl. ¶¶ 70, 73.)

EverNu to provide the requested information. (*Id.* ¶¶ 88–90.) After EverNu and Dr. Lin failed to

comply with the orders, the court imposed monetary sanctions against Dr. Lin and EverNu. (*Id.*

¶ 91.) EverNu appealed this order, but it was quashed as interlocutory. (*Id.*)

Meanwhile, on June 5, 2002, while her appeal of the preliminary injunction was pending

before the Pennsylvania Superior Court, Dr. Lin filed a federal lawsuit in this district ("*Lin I*"),

alleging, among other things, that Rohm and Haas had filed the state lawsuit as retaliation against

her for her informal complaints to the EEOC, in violation of Title VII and the PHRA.[3] The

district court initially denied Rohm and Haas's motion for summary judgment as to that claim,

concluding, in a memorandum and order dated November 13, 2003, that Dr. Lin had cast

sufficient doubt on Rohm and Haas's proffered nonretaliatory reason for initiating the state

lawsuit to defeat summary judgment. *See Lin v. Rohm & Haas Co.*, 293 F. Supp. 2d 505 (E.D.

Pa. 2003). Upon Rohm and Haas's motion for reconsideration or, in the alternative, renewed

motion for summary judgment, however, the district court concluded that the state lawsuit was

not an "adverse employment action" under Title VII, and in a memorandum and order dated

January 22, 2004, granted Rohm and Haas's motion for summary judgment. *See Lin v. Rohm &

Haas Co.*, 301 F. Supp. 2d 403 (E.D. Pa. 2004).

Dr. Lin filed a motion seeking reconsideration of the district court's conclusion that the

state lawsuit was not an "adverse employment action." In an order dated May 6, 2004, the district

court denied Dr. Lin's motion for reconsideration, asserting that "[t]his Court does not believe

---

[3] Dr. Lin had made an informal complaint to the EEOC on April 2, 2000 about threats allegedly made by Rohm and Haas. (Compl. ¶ 39.) Dr. Lin subsequently filed formal EEOC charges on June 16, 2000, and August 21, 2001, alleging that Rohm and Haas had filed the state lawsuit and had refused to provide timely trade-secret review of her proposed publications and presentations in retaliation for her informal complaint to the EEOC; these latter two charges formed the basis for her 2002 federal lawsuit. (Compl. ¶¶ 49, 77.)

that Defendant's lawful use of the state judicial system and its discovery process can be the basis of Plaintiff's claim of unlawful retaliation under Title VII." Order at n.1, *Lin v. Rohm & Haas Co.*, No. 02-3612 (E.D. Pa. May 6, 2004). Noting that, in her motion for reconsideration, Dr. Lin had "largely predicate[d] the 'adverse employment action' prong of her retaliation claim on the discovery requests propounded on EverNu," and that the state court had denied Dr. Lin's and EverNu's challenges to such discovery requests, the district court asserted, "We do not believe that discovery sanctioned by the state court can constitute an adverse employment action simply because the correlating legal fees have affected Plaintiff's salary." *Id.*

Dr. Lin filed a second motion for reconsideration, which the district court denied in an order dated July 27, 2004. Dr. Lin then filed a notice of appeal on August 18, 2004, but on October 28, 2004, the Third Circuit dismissed her appeal for lack of jurisdiction because it was untimely.

Meanwhile, on June 21, 2004, Dr. Lin filed an EEOC charge—her fourth such charge—alleging that Rohm and Haas had retaliated against her by filing "burdensome and unlawful requests for discovery and production of documents" in the state lawsuit.[4] (Compl. Ex. A, Charge of Discrimination; *see also* Compl. ¶ 17.) She alleged that the wrongful conduct occurred between August 20, 2003, and May 20, 2004. (Compl. Ex. A, Charge of Discrimination.)

With respect to the ongoing state litigation, Dr. Lin alleges that in June 2006, "Rohm and Haas caused a $32,200 judgment to be entered against . . . EverNu . . . and caused writs of

---

[4] Before filing this charge, Dr. Lin submitted a signed intake charge questionnaire to the EEOC on May 14, 2004. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br.") Ex. A, Decl. of Dr. Manhua Mandy Lin.)

execution to be served upon EverNu's banks, which froze EverNu's accounts." (Compl. ¶ 92.) In June 2007, however, the trial court ordered that the judgment be struck. (*Id.*) In or around June 2006, Rohm and Haas also served a subpoena on Temple University, EverNu's research collaborator, seeking EverNu's "confidential and proprietary research information." (*Id.* ¶ 93.) According to Dr. Lin, the court "forced Temple University to produce 750 pages of research documents that belonged to EverNu." (*Id.*)

In March 2007, after Rohm and Haas had received the research documents from Temple University, Rohm and Haas allegedly "approached Dr. Lin and made a 'settlement proposal.'" (*Id.* ¶ 94.) According to Dr. Lin, Rohm and Haas offered to settle the lawsuit if EverNu "grant[ed] Rohm and Haas a non-exclusive license for the technology underpinning [its methacrylic acid research project] for no consideration." (*Id.* ¶ 95.) Dr. Lin further alleges that Rohm and Haas "threatened to destroy EverNu's relationship with the DOE if EverNu did not agree to the 'settlement proposal' and provide Rohm and Haas with its technology for free." (*Id.* ¶ 96.) Nonetheless, Dr. Lin and EverNu rejected the settlement proposal. (*Id.* ¶ 97.)

Meanwhile, Dr. Lin failed to comply with the state court's discovery orders, and in December 2007, Rohm and Haas moved for a default judgment against Dr. Lin as a discovery sanction. (*Id.* ¶ 98.) On May 5, 2008, the trial court entered a default judgment against Dr. Lin and issued a permanent injunction as a discovery sanction. (*Id.* ¶ 99.) The injunction provided:

> 1. The Defendant Dr. Lin is permanently enjoined from using, disclosing or divulging directly or indirectly any information that Plaintiff Rohm and Haas Company considers confidential or a trade secret.
> 2. The Defendant Dr. Lin and any other entity or individual associated with Dr. Lin or acting on her behalf are permanently enjoined from proceeding with methacrylic acid research and making other disclosures and uses of Rohm and Haas['s] trade secrets.
> 3. The Defendant Dr. Lin shall cease and desist from consulting, performing any research or engaging in other activities pursuant to the outstanding EverNu

Technologies LLC's contracts with the Department of Energy or any other research contracts concerning or involving methacrylic acid.

4. Defendant, Dr. Lin, for the next three (3) years shall not make, contribute [to] or participate in any (a) presentation or proposal; (b) publication; (c) application or proposal for research grant whether said presentation or submission for publication or application for a research grant is made on her own behalf, or any other entity she owns or is associated with or on which she will be working as a principal scientist, collaborator, employee or otherwise, without submitting the same to Rohm and Haas ninety (90) days in advance for a trade secret review and obtaining agreement of the Plaintiff Rohm and Haas, that the presentation, publication or research grant application or proposal contains no Rohm and Haas trade secrets.

*Rohm & Haas Co. v. Lin*, 992 A.2d 132, 146–47 (Pa. Super. Ct. 2010).

Dr. Lin further alleges that in July 2008, at the request of Rohm and Haas, the court entered four separate monetary judgments against EverNu, including the $32,200 judgment that the court had struck in June 2007, as well as four monetary judgments against Dr. Lin. Rohm and Haas also allegedly caused writs of execution to be served on EverNu's and Dr. Lin's banks, which resulted in the freezing of their accounts. In November 2008, however, the trial court ordered that each of these judgments be struck. (*Id.* ¶ 99.)

Dr. Lin appealed the May 5, 2008, default judgment and injunction. In an opinion dated March 1, 2010, the Pennsylvania Superior Court affirmed the entry of a default judgment against Dr. Lin, concluding that "the trial court did not abuse its discretion or commit an error of law in entering a default judgment in favor of Rohm and Haas as a sanction for Dr. Lin's willful violation of the trial court's numerous discovery orders." *Rohm & Haas Co. v. Lin*, 992 A.2d at 144. The Superior Court similarly affirmed portions of the permanent injunction (paragraphs 1 and 4), but it vacated other portions (paragraphs 2 and 3), which it concluded were "overly broad and not supported by the record," and remanded the matter "to the trial court to enable Rohm and Haas to produce evidence in support of the relief granted by the trial court in paragraphs 2 and 3." *Id.* at 148–49.

7

Meanwhile, on May 13, 2008, while Dr. Lin's appeal of the default judgment and injunction was pending, Rohm and Haas allegedly "wrote to the DOE and demanded that the DOE cease doing business with EverNu." (Compl. ¶ 102.) Dr. Lin alleges that Rohm and Haas provided a copy of the default judgment to the DOE and "demanded that the DOE inform it as to what actions the DOE planned to take against EverNu." (*Id.* ¶ 103.) On June 23, 2008, Rohm and Haas allegedly sent an e-mail to the DOE "demand[ing] to know whether 'all work and funding' of EverNu's [methacrylic acid research project] had stopped." (*Id.* ¶ 104.) Dr. Lin further alleges that "Rohm and Haas also insinuated that EverNu may have misused the SBIR grants." (*Id.*) According to Dr. Lin, over the next two months, Rohm and Haas continued to "barrage" the DOE with e-mails about EverNu. (*Id.* ¶ 105.)

Dr. Lin alleges that the DOE had previously "determined that Dr. Lin was not copying Rohm and Haas research" with respect to the methacrylic acid research project for which she had been awarded a grant. (*Id.* ¶ 109.) According to Dr. Lin, in response to a request by the DOE's general counsel, a DOE official reviewed EverNu's research proposals and concluded that they were "different and unrelated to the content and research direction presented in the Rohm and Haas documents" that had been provided to the DOE. (*Id.*)

On February 1, 2011, the EEOC issued a determination letter regarding her fourth charge, which she had filed in 2004. (*Id.* ¶ 18; *see also id.* Ex. B, Letter from Spencer H. Lewis to Manhua M. Lin (Feb. 1, 2011) ("EEOC Determination").) After investigating Dr. Lin's allegation, the district director of the EEOC concluded that "the evidence obtained during the investigation establishes . . . that [Dr. Lin] was and continues to be subjected to retaliatory actions by [Rohm and Haas]." (EEOC Determination at 2.) The district director asserted that "[t]he evidence of record clearly shows that . . . [Rohm and Haas] has continuously filed

burdensome motions without any relevant bases in an effort to gain access to [Dr. Lin's] research, to disrupt her business, and to ultimately impose an undue financial burden upon her." (*Id.*) The EEOC sent Dr. Lin a right-to-sue notice on March 8, 2011. (Compl. Ex. C.)

Dr. Lin then filed this action against Rohm and Haas on May 13, 2011, alleging retaliation in violation of Title VII (count I) and the PHRA (count II), as well as breach of contract (count III) and intentional interference with prospective contractual relations (count IV).

Rohm and Haas has now filed a motion to dismiss Dr. Lin's complaint.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "that are 'merely consistent with' a defendant's liability," or that permit the court to infer no more than "the mere possibility of misconduct" are not enough. *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 557). Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. When a court evaluates a motion to dismiss, "the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11; *see also Iqbal*, 129 S. Ct. at 1950 (asserting that a court should assume the veracity of well-pleaded factual allegations, but legal conclusions "are not entitled to the assumption of truth"). And the court must draw all reasonable inferences in favor of the plaintiff. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

### III.    DISCUSSION

#### A.    Retaliation (Counts I and II)

Dr. Lin claims that Rohm and Haas retaliated against her for complaining about Rohm and Haas's discriminatory and retaliatory acts and practices, in violation of Title VII and the PHRA.[5] In particular, Dr. Lin alleges that "[s]ince 2003, Rohm and Haas has continuously and deliberately used the [state lawsuit] as a tactical weapon against [her] to obtain EverNu's research and eliminate EverNu as a competitor, in continued retaliation against [her]." (Compl. ¶ 86.) She bases her retaliation claims on numerous actions taken by Rohm and Haas, including serving a subpoena on EverNu, in August 2003, demanding that EverNu produce documents containing confidential business information, trade secrets, and intellectual property (*id.* ¶ 87); causing a $32,200 judgment to be entered against EverNu in June 2006 and causing writs of execution to be served upon EverNu's banks, which resulted in the freezing of its accounts (*id.* ¶ 92); serving a subpoena on EverNu's collaborator, Temple University, seeking EverNu's confidential and proprietary research information in or around June 2006 (*id.* ¶ 93); threatening "to destroy EverNu's relationship with the DOE" if EverNu did not agree to Rohm and Haas's 2007 settlement proposal (*id.* ¶ 96); causing four separate judgments totaling approximately $117,000, including a $32,200 judgment that had previously been struck by the court, to be entered against EverNu in July 2008 (*id.* ¶ 99); causing writs of execution and garnishment to be

---

[5] The Third Circuit "has stated that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Slagle v. County of Clarion*, 435 F.3d 262, 265 n.5 (3d Cir. 2006) (internal quotation marks omitted). Because there are no relevant differences at issue here, I will treat the Title VII and PHRA claims collectively and refer only to Title VII in this discussion.

served upon Dr. Lin's and EverNu's banks in July 2008, which resulted in the freezing of their accounts (*id.*); demanding, beginning in May 2008, that the DOE cease doing business with EverNu and insinuating that EverNu may have misused the SBIR grants it received (*id.* ¶¶ 102–105); and, between May 2008 and March 2010, preventing Dr. Lin and EverNu from submitting applications for DOE grants to further their methacrylic acid research and from pursuing other opportunities with the DOE and other entities regarding their methacrylic acid research (*id.* ¶¶ 106, 123–128).

Rohm and Haas asserts several reasons for dismissing Dr. Lin's retaliation claims. While I agree with Rohm and Haas that Dr. Lin's claims arising out of the August 2003 discovery requests are barred by *res judicata*, I find Rohm and Haas's reasons for dismissing the claims arising out of subsequent events unpersuasive.

### 1.    *Res Judicata*

Rohm and Haas first argues that Dr. Lin's retaliation claims are barred by the doctrine of *res judicata*, or claim preclusion, and must therefore be dismissed. In particular, Rohm and Haas argues that the district court's final judgment on the merits in *Lin I* precludes the retaliation claims asserted by Dr. Lin in this case because both actions are based on Rohm and Haas's conduct in the state lawsuit.

Although Rohm and Haas's August 2003 discovery requests were made after Dr. Lin had filed her complaint in *Lin I*, I agree that in *Lin I* she ultimately asserted claims of unlawful retaliation based on those discovery requests and thus that *res judicata* bars such claims in this suit. But to the extent that Dr. Lin's claims are based on subsequent events, *res judicata* does not apply.

11

"*Res judicata* promotes judicial economy and protects defendants from having to defend multiple identical or nearly identical lawsuits." *Morgan v. Covington Township*, 648 F.3d 172, 177 (3d Cir. 2011) (internal quotation marks and brackets omitted). Under the doctrine, a final judgment on the merits of an action precludes the parties or their privies from relitigating not only claims that were brought in [that] action, but also claims that could have been brought" in that action. *Id.* (internal quotation marks omitted). But the Third Circuit, like several other circuits, has held that "*res judicata* does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Morgan*, 648 F.3d at 178.

Here, the events giving rise to Dr. Lin's current lawsuit, beginning with Rohm and Haas's discovery requests in August 2003, occurred well after Dr. Lin filed and amended her complaint in *Lin I* on June 5, 2002, and July 30, 2002, respectively—and indeed (except for the August 2003 discovery requests), occurred well after the court in that case issued its order denying Dr. Lin's second motion for reconsideration and reaffirming its grant of summary judgment in favor of Rohm and Haas as to her retaliation claims on July 27, 2004. Nonetheless, Rohm and Haas argues that *res judicata* bars Dr. Lin's current claims in their entirety.

Rohm and Haas contends that Dr. Lin asserted claims based on the 2003 discovery requests in *Lin I* and argues that *res judicata* therefore precludes her from asserting any claims based on those discovery requests in this subsequent action. In support of its contention, Rohm and Haas points to Dr. Lin's briefs opposing its motion for reconsideration or renewed motion for summary judgment and supporting her subsequent motion for reconsideration, in which Dr. Lin relied on the 2003 discovery requests in support of her retaliation claims.

Although Rohm and Haas acknowledges that Dr. Lin's complaint in this case also alleges events or acts of retaliation that took place after 2004—after the court in *Lin I* denied her motions

12

for reconsideration and reaffirmed its grant of summary judgment in favor of Rohm and Haas as to her retaliation claims—Rohm and Haas argues that these later events (I refer to them as the "post-2004 events") "all flowed directly from the [state-court] litigation events in 2003 [i.e., the challenged discovery requests] . . . and are just the normal continuation of the 2003 litigation events and the normal consequences for non-compliance by [Dr. Lin] and by EverNu with the 2003 [discovery] Orders." (Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Br.") at 20.) And Rohm and Haas thus argues that *res judicata* similarly bars any claims based on these later events.

The first question, then, is whether, by discussing Rohm and Haas's 2003 discovery requests in her briefs in *Lin I*, Dr. Lin effectively asserted a retaliation claim based on those discovery requests.

In her brief opposing Rohm and Haas's motion for reconsideration or renewed motion for summary judgment, Dr. Lin argued that "the state lawsuit [was] an 'adverse employment action' because [Rohm and Haas] . . . made discovery requests for confidential and proprietary information of . . . EverNu." *Lin*, 301 F.2d at 406.[6] Similarly, in her brief accompanying her subsequent motion for reconsideration, she pointed to the 2003 discovery requests as evidence that "Rohm and Haas'[s] retaliatory conduct has directly caused an alteration of [her] compensation from her employer," which evidence, she argued, required that the court "reconsider and vacate its decision that [she] has not suffered an 'adverse employment action.'" Mem. of Law in Supp. of Dr. Lin's Mot. for Reconsideration at 5, *Lin v. Rohm & Haas Co.*, No.

---

[6] The parties have not provided Rohm and Haas's briefs supporting, or Dr. Lin's briefs opposing, Rohm and Haas's motion for reconsideration or renewed motion for summary judgment, which were filed under seal. I rely here on the court's discussion of Dr. Lin's arguments.

02-3612 (E.D. Pa. Feb. 9, 2004).

The Eleventh Circuit was presented with a similar situation in *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354 (11th Cir. 1998). After suffering a back injury, the plaintiff, who worked as a laborer for the defendant, applied for a less physically demanding clerical position with the defendant, but did not receive the job. *Pleming*, 142 F.3d at 1355. She then filed a lawsuit alleging that the defendant had discriminated against her on the basis of her race and disability. *Id.* About two months later, two additional clerical positions became available, but the plaintiff did not apply for either of them and the defendant hired others for the positions. *Id.* Indeed, the plaintiff did not learn about these other positions until about six months later, during the course of discovery. *Id.* Although she never amended or supplemented her complaint to include allegations of discrimination regarding the failure to hire her for either of these two positions, she discussed the two positions in her brief opposing the defendant's motion for summary judgment. *Id.* at 1355–56. In particular, she argued that these subsequent hiring decisions demonstrated that the defendant's proffered reason for its earlier decision not to hire her was merely a pretext for discrimination.[7] *Id.* at 1356. After the district court granted summary judgment for the defendant, the plaintiff filed a second lawsuit alleging discrimination with respect to the two subsequent hiring decisions. *Id.* The defendant moved to dismiss this second action on the ground that *res judicata* barred any claims arising from these subsequent hiring

---

[7] The defendant asserted that it had not hired the plaintiff for the clerical position because of a company policy against allowing employees to transfer to lower-paying jobs. The plaintiff attempted to demonstrate that this reason was merely a pretext by showing that although the defendant knew by the time these two other positions became available that she could not handle the physical demands of her higher-paying position and therefore could not demand that she be returned to that position, the defendant still refused to hire her in a clerical position. *Pleming*, 142 F.3d at 1355, 1360.

decisions, and the district court granted the motion. *Id.*

The Eleventh Circuit rejected the defendant's argument, reasoning that because the plaintiff's discussion of these subsequent hiring decisions in her briefs was "insufficient to put her claims . . . arising out of [these two] incidents before the district court pursuant to the Federal Rules of Civil Procedure," the discussion in her briefs was "insufficient to actually assert these claims in the prior litigation" for purposes of *res judicata*. *Id.* at 1359. The court also noted that the district court's opinion granting the defendant's motion for summary judgment made no mention of the subsequent hiring decisions. *Id.* The court thus concluded that the district court had erred in concluding that *res judicata* barred the plaintiff's claims arising from the subsequent hiring decisions. *Id.*

While I find the Eleventh Circuit's reasoning persuasive, I must reach a different conclusion here.

The Eleventh Circuit based its conclusion in large part on a prior case in which that court "held that a district court had not abused its discretion by refusing to consider a plaintiff's unpled claims even though the plaintiff had included the claims in her briefs and discovery requests." *Pleming*, 142 F.3d at 1358 (discussing *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563 (11th Cir. 1987)). The Third Circuit, on the other hand, has held that a district court erred by not considering the claims raised by the plaintiff in her brief opposing the defendant's motion for summary judgment and at oral argument as a motion to amend her complaint. *See Sola v. Lafayette College*, 804 F.2d 40, 45 (3d Cir. 1986). *But see Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) (not precedential) (asserting that, generally, "[a] plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment'" (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996))).

Moreover, whereas the district court in *Pleming* made no mention of the subsequent hiring decisions in its opinion granting the defendant's motion for summary judgment, the court in *Lin I* expressly addressed the 2003 discovery requests both in granting Rohm and Haas's renewed motion for summary judgment and in denying Dr. Lin's subsequent motion for reconsideration. Indeed, in its order denying Dr. Lin's motion for reconsideration, the court noted that Dr. Lin "now largely predicates the 'adverse employment action' prong of her retaliation claim on the discovery requests propounded on EverNu," and asserted that it did "not believe that discovery sanctioned by the state court can constitute an adverse employment action simply because the correlating legal fees have affected [her] salary." Order at n.1, *Lin v. Rohm & Haas Co.*, No. 02-3612 (E.D. Pa. May 6, 2004).

Because the court in *Lin I* construed Dr. Lin's briefs as asserting claims arising out of the 2003 discovery requests—and clearly addressed those claims—I conclude that *res judicata* precludes Dr. Lin from asserting claims based on the 2003 discovery requests in this action.[8]

The next question, then, is whether claims arising out of the post-2004 events alleged by Dr. Lin (events that occurred after the court denied her second and final motion for reconsideration on July 27, 2004) are similarly precluded. Rohm and Haas contends that these events "involve, at most, merely the effects of the non-compliance with the 2003 EverNu discovery Orders" and thus "do not represent a new retaliation claim." (Def.'s Reply Br. in Supp.

---

[8] In determining whether Dr. Lin had suffered an "adverse employment action," the *Lin I* court employed the standard set forth in *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997). *See Lin*, 301 F. Supp. 2d at 405. Although that standard has since been abrogated by the Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), *res judicata* applies. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.").

of Mot. to Dismiss ("Def.'s Reply Br.") at 3). I disagree.

Contrary to Rohm and Haas's contention, these events give rise to new claims separate and distinct from any claims arising from the 2003 discovery requests. Indeed, there is nothing in Dr. Lin's complaint compelling the conclusion that these events "all flowed directly from" (Def.'s Br. at 20) the 2003 discovery requests and Dr. Lin's failure to comply with those requests. I see no basis for concluding here, for example, that Rohm and Haas's alleged threats to "destroy EverNu['s] relationship with the DOE" unless EverNu agreed to Rohm and Haas's settlement proposal (Compl. ¶ 96) was a normal consequence of Dr. Lin's failure to comply with the discovery requests. Similarly, given that Dr. Lin alleges that the state court struck certain judgments that Rohm and Haas had caused to be entered against her and EverNu, there is a reasonable basis for concluding that these judgments were not merely the "normal consequence[]" (Def.'s Br. at 20) of Dr. Lin's failure to comply with the court's discovery orders.

Moreover, although the permanent injunction prohibiting Dr. Lin from pursuing opportunities with respect to her methacrylic acid research was ultimately issued as a sanction for her failure to comply with the court's discovery orders, I see no reason why the injunction cannot give rise to an independent claim separate from her claims arising from the 2003 discovery requests. Dr. Lin is not challenging the discovery requests here. Rather, she is challenging Rohm and Haas's decision to seek the injunction as a discovery sanction.

Thus, while *res judicata* bars Dr. Lin's retaliation claims based on the 2003 discovery requests, it does not preclude any claims based on subsequent events.

17

### 2.    Failure to Exhaust Administrative Remedies

Rohm and Haas argues in the alternative that, to the extent that Dr. Lin's claims arising

from the post-2004 events are not barred by *res judicata*, those claims must be dismissed on the

ground that Dr. Lin failed to exhaust administrative remedies with respect to those claims.

Before bringing suit under Title VII, a plaintiff must first file a charge with the EEOC.

*See* 42 U.S.C. § 2000e-5(e)(1), (f)(1); *see also Webb v. City of Philadelphia*, 562 F.3d 256, 262

(3d Cir. 2009). (Similarly, before filing a PHRA claim in court, a plaintiff must file a complaint

with the Pennsylvania Human Relations Commission. *See* 43 Pa. Stat. Ann. § 959(h); *see also*

*Burgh v. Borough Council*, 251 F.3d 465, 471 (3d Cir. 2001).) As the Third Circuit has

explained,"[t]he purpose of this administrative exhaustion requirement is to put the EEOC on

notice of the plaintiff's claims and afford it the opportunity to settle disputes through conference,

conciliation, and persuasion," and thereby avoid "unnecessary action in court." *Webb*, 562 F.3d at

262 (internal quotation marks omitted).

Here, Rohm and Haas asserts that the EEOC charge filed by Dr. Lin on June 21, 2004,

was based only on the 2003 discovery requests and argues that she has not satisfied the

administrative-exhaustion requirement because she did not file a new charge with respect to the

subsequent, post-2004, events.

But where, as here, additional acts of retaliation occur after the filing of an EEOC

complaint, while the EEOC's investigation is pending, a plaintiff need not file a new

administrative charge if the new acts are "within the scope of [the] EEOC complaint or the

investigation growing out of that complaint." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.

1984) (asserting that the court has "permitt[ed] suits based on new acts that occur during the

pendency of the case which are fairly within the scope of an EEOC complaint or the investigation

18

growing out of that complaint, without requiring the victim to file additional EEOC complaints"); *see also Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir. 1976) (asserting that the permissible scope of a suit is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission" (citations omitted)).

In *Waiters*, the plaintiff filed a complaint with the EEOC alleging that she was retaliated against for complaining of sex discrimination. 729 F.2d at 235. Just over two years later, the plaintiff was discharged. *Id.* at 236. She did not file a new EEOC complaint with respect to her discharge, but filed suit in federal court alleging that she had been discharged in retaliation for exercising her rights under Title VII. *Id.* The district court dismissed her complaint on the ground that she had failed to exhaust her administrative remedies. *Id.* The Third Circuit reversed, concluding that the plaintiff's allegations of retaliatory discharge fell within the scope of the EEOC's investigation of her earlier complaint. *Id.* at 238. Because the plaintiff alleged that her discharge was the product of the same retaliatory intent behind the pattern of retaliatory acts identified by the EEOC's earlier investigation, the Third Circuit held that the plaintiff was not required to exhaust administrative remedies with respect to her retaliatory-discharge claim. *Id.*

Similarly, here, the post-2004 events may fairly be said to be within the scope of the investigation arising from Dr. Lin's 2004 EEOC charge. Contrary to Rohm and Haas's contentions, the EEOC's cause determination was not based solely on the 2003 discovery requests. The EEOC's conclusion in its February 1, 2011, determination letter that Dr. Lin "*continues to be* subjected to retaliatory actions by [Rohm and Haas]" (EEOC Determination at 2 (emphasis added)) strongly suggests that the EEOC's investigation went beyond the 2003 discovery requests that formed the initial basis for Dr. Lin's 2004 EEOC charge. Although the

determination letter did not specifically identify those continuing retaliatory actions, Dr. Lin alleges that the post-2004 events are the product of the same retaliatory intent identified by the EEOC's investigation—namely, "an effort to gain access to [Dr. Lin's] research, to disrupt her business, and to ultimately impose an undue financial burden upon her." (*Id.*)

Because the post-2004 events are within the scope of the investigation arising from Dr. Lin's 2004 EEOC charge, Dr. Lin was not required to file a new EEOC charge before bringing suit with respect to these events, and the administrative-exhaustion requirement thus poses no bar to her claims.

### 3.     Collateral Estoppel

Rohm and Haas next argues that the doctrine of collateral estoppel, or issue preclusion, bars Dr. Lin's retaliation claims. Rohm and Haas contends that because of the preclusive effect of the decisions of the Superior Court in the state lawsuit, Dr. Lin's retaliation claims fail as a matter of law. In particular, Rohm and Haas argues that the state court's decisions preclude a finding of the retaliatory animus needed to sustain Dr. Lin's claims.

As a preliminary matter, I note that I have already determined that *res judicata* bars Dr. Lin's claims arising out of the 2003 discovery requests. Thus the only question I must address here is whether the state-court judgments preclude a finding of retaliation with respect to the post-2004 events on which Dr. Lin predicates her remaining retaliation claims. And I conclude that the answer is no.

"Collateral estoppel operates to bar 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination.'" *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (quoting *New Hampshire v. Maine*,

532 U.S. 742, 748–49 (2001)). The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that state-court decisions be given the same preclusive effect in federal court as they would be given in courts of the rendering state. Under Pennsylvania law, collateral estoppel applies if (1) the issue decided in the prior action is identical to the one presented in the later action; (2) there was a final judgment on the merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party to, or is in privity with a party to, the prior action; and (4) the party against whom the collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.[9] *See Nationwide Mut. Fire Ins.*, 571 F.3d at 310 (citing *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998)).

Here, Rohm and Haas asserts that the Superior Court's decisions establish not only that Rohm and Haas had a legitimate, nonretaliatory reason for the state lawsuit and for its 2003 discovery requests, but also that the entry of the default judgment and injunction against Dr. Lin "was caused by [her] 'willful defiance of the [trial] court's discovery orders' and numerous 'discovery abuses.'" (Def.'s Br. at 25 (quoting *Rohm & Haas Co. v. Lin*, 992 A.2d at 144, 147).) Rohm and Haas argues that the Superior Court's decisions thus preclude Dr. Lin's retaliation claims, because they preclude a finding here that retaliation was a determinative factor in any of its actions, including any consequences of the permanent injunction.[10] I disagree.

---

[9] As the Third Circuit has noted, "Pennsylvania courts will occasionally frame the test as a five-factor test, adding the requirement that 'the determination in the prior proceeding was essential to the judgment.'" *Nationwide Mut. Fire Ins.*, 571 F.3d at 310 n.12 (quoting *Yamulla Trucking & Excavating Co. v. Justofin*, 771 A.2d 782, 786 (Pa. Super. Ct. 2001)).

[10] Courts generally analyze Title VII retaliation claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). A plaintiff must first establish a prima facie case of retaliation. *See id.* at 342. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for its conduct, and if it does so, the plaintiff must convince the fact-finder both that the defendant's proffered

First, putting aside the permanent injunction that was issued as a discovery sanction against Dr. Lin, Rohm and Haas points to no final judgment of the state courts expressly addressing the post-2004 events. And I see nothing in the Superior Court's decision addressing the 2003 discovery requests and the permanent injunction that has any bearing on the question whether retaliation was a determinative cause of the (non-injunction-related) post-2004 events.[11]

Of course, some of the post-2004 events were, as Rohm and Haas suggests, consequences of the permanent injunction. It was the injunction, for example, that prohibited Dr. Lin and EverNu from submitting applications for DOE grants, or pursuing other opportunities, with respect to her methacrylic acid research. And as Rohm and Haas asserts, the Superior Court concluded that the trial court had not erred in entering a permanent injunction as a discovery sanction. But the Superior Court vacated paragraphs 2 and 3 of the injunction—the provisions that enjoined Dr. Lin from engaging in methacrylic acid research or engaging in other activities involving methacrylic acid—because the court concluded that those two paragraphs were "overly

---

explanation was false and that retaliation was the real reason for its conduct. *See id.* The plaintiff "need not prove that retaliation was the *sole* reason" for the challenged actions, but must prove that "it was a *determinative factor*," meaning that the defendant would not have taken those actions but for the plaintiff's protected activity. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 n.8 (3d Cir. 2007).

Dr. Lin suggests that the mixed-motive framework could potentially be applied here instead. (Under that framework, a plaintiff must demonstrate that retaliation was a motivating factor in the challenged conduct; the defendant then bears the burden of proving that it would have taken the same actions absent consideration of the plaintiff's protected activity. *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 182 (3d Cir. 2009).) Rohm and Haas disagrees with Dr. Lin, arguing that the mixed-motive framework does not apply to Title VII retaliation cases. I need not determine now which framework applies here; regardless of the standard, I conclude that Dr. Lin's claims are not barred by collateral estoppel.

[11] I note that Dr. Lin alleges that the trial court struck certain monetary judgments that Rohm and Haas had previously caused to entered against her and EverNu—judgments that Dr. Lin alleges were entered by Rohm and Haas in retaliation against her. Far from precluding a finding of retaliation here, the trial court's actions raise the question whether Rohm and Haas had a legitimate reason for causing those judgments to be entered.

broad and not supported by the record." *Rohm & Haas Co. v. Lin*, 992 A.2d at 148.[12] And there is nothing in the court's opinion otherwise suggesting that Rohm and Haas had a legitimate reason for seeking to enjoin Dr. Lin and EverNu from engaging in methacrylic acid research—let alone precluding a finding in this case that retaliation was a determinative factor in Rohm and Haas's decision to pursue such an injunction.[13]

I thus conclude that collateral estoppel does not apply to Dr. Lin's retaliation claims arising out of the post-2004 events.

### 4.    The First Amendment

Finally, Rohm and Haas argues that its First Amendment right of access to the courts precludes Dr. Lin's retaliation claims. Citing *Professional Real Estate Investors, Inc. v. Columbia Picture Industries, Inc.*, 508 U.S. 49 (1993), Rohm and Haas asserts that its filing and prosecution of the state lawsuit—including its discovery requests and other conduct during the course of litigation—cannot form the basis of a Title VII retaliation claim unless its actions were objectively baseless. And, noting that the trial court granted its motion to compel discovery and

---

[12] Moreover, there is no evidence that the trial court or the Superior Court expressly considered whether retaliatory animus was a factor either in Rohm and Haas's decision to initiate the state lawsuit or in its conduct during the prosecution of the lawsuit. Rohm and Haas notes that the trial court rejected Dr. Lin's contention that Rohm and Haas's claims were "a total fabrication and were made solely as a pretext to obtain" EverNu's trade secrets, but there is nothing in the court's opinion that suggests that the court expressly considered the question whether Rohm and Haas's decision to initiate the lawsuit or its conduct during the course of litigation and other decisions with respect to the prosecution of the suit were based on a retaliatory motive.

[13] Rohm and Haas initially asserted that it had not sought, in either its brief to the state court supporting its motion for a default judgment against Dr. Lin or in its proposed order accompanying the motion, the relief contained in paragraphs 2 and 3 of the injunction. But in its submission in response to my October 13, 2011, order requesting that it file the proposed order that accompanied its motion for a default judgment, Rohm and Haas conceded that it did in fact propose what essentially became paragraph 3 of the permanent injunction.

denied EverNu's motion for a protective order and that the Superior Court affirmed both the trial

court's issuance of a preliminary injunction against Dr. Lin and the trial court's subsequent entry

of a default judgment against Dr. Lin as a sanction for her violation of the trial court's discovery

orders, Rohm and Haas contends that its lawsuit and its conduct during the litigation were not

objectively baseless and are therefore protected by the First Amendment.

Because I have already determined that *res judicata* bars Dr. Lin's claims arising out of

the 2003 discovery requests, the only question I must address here is whether Rohm and Haas's

First Amendment right of access to the courts requires dismissal of Dr. Lin's retaliation claims

arising out of the post-2004 events. And I conclude that it does not.

The Supreme Court has long recognized the First Amendment right to petition "as one of

'the most precious of the liberties safeguarded by the Bill of Rights,'" *BE & K Constr. Co. v.

NLRB*, 536 U.S. 516, 524 (2002) (quoting *United Mine Workers v. Illinois Bar Ass'n*, 389 U.S.

217, 222 (1967)), and has further "recognized that the right of access to the courts is an aspect of

the First Amendment right to petition," *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731,

741 (1983) (citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510

(1972)). But the Court has also made it clear that not all petitioning activity is protected by the

First Amendment. Thus in the antitrust context, for example, the Supreme Court has held that

litigation is immune from liability under the Sherman Act unless the litigation is a "sham." *See

Professional Real Estate Investors*, 508 U.S. 49. In *Professional Real Estate Investors*, the

Supreme Court "outline[d] a two-part definition of 'sham' litigation," under which only a lawsuit

that is both objectively baseless and subjectively intended to abuse process constitutes "sham"

litigation that is not protected from antitrust liability by the First Amendment. *Id.* at 60–61.

Assuming, for purposes of this motion to dismiss, that this "objectively baseless"

24

standard applies here,[14] I cannot conclude, at this stage of the proceedings, that Rohm and Haas's

First Amendment right of access to the courts bars Dr. Lin's retaliation claims. Drawing all

reasonable inferences in favor of Dr. Lin, as I must in connection with Rohm and Haas's motion

to dismiss, I cannot conclude as a matter of law that Rohm and Haas's post-2004 actions were

_____

[14] This standard was developed in the antitrust context and was based not only on the First Amendment but also on the Supreme Court's interpretation of the Sherman Act. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 888–89 (10th Cir. 2000) (asserting that the Court has referred to the basis for the immunity doctrine as '[i]nterpreting the Sherman Act in the light of the First Amendment's Petition Clause'" (quoting *Federal Trade Comm'n v. Superior Ct. Trial Law. Ass'n*, 493 U.S. 411, 424 (1990))). Rohm and Haas cites no authority for applying this standard in the Title VII context.

In addition to *Professional Real Estate Investors*, Rohm and Haas cites *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983), and *BE & K Construction Co. v. NLRB*, 536 U.S. 516 (2002), in which the Court considered the circumstances under which a retaliatory lawsuit could constitute an unfair labor practice under the National Labor Relations Act (the "NLRA"). In *Bill Johnson's*, the Court had suggested a different standard than the "objectively baseless" standard it later adopted in *Professional Real Estate Investors*, *see* 461 U.S. at 743–49, and in *BE & K*, the Court expressly left open the question whether the *Professional Real Estate Investors* standard applies in the labor-law context, *see* 536 U.S. at 536–37. Citing Justice Scalia's concurrence in *BE & K*, however, *see id.* at 537 (Scalia, J., concurring) (asserting that "the implication of our decision today is that, in a future appropriate case, we will construe the [NLRA] in the same way we have already construed the Sherman Act: to prohibit only lawsuits that are *both* objectively baseless *and* subjectively intended to abuse process"), Rohm and Haas asserts that the Court strongly suggested that the "objectively baseless" standard applies in the labor-law context and contends that this standard applies here as well. But Rohm and Haas cites no authority for applying the "objectively baseless" standard in the Title VII context and does not explain why Title VII should be construed in the same way as the Sherman Act. *Cf. Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 1999) (noting that the reasoning of *Bill Johnson's*, which "construed a specific, ambiguous provision of the NLRA defining unfair labor practices," had "not been extended to Title VII, in part because the prohibition on retaliation is so explicit and the public policy behind the retaliation provision so compelling," but finding it unnecessary to decide when a retaliatory lawsuit may be declared unlawful under Title VII). *But see Nazir v. United Air Lines*, No. 09-1819, 2009 WL 2912518 (N.D. Cal. Sept. 9, 2009) (applying "objectively baseless" standard in context of Title VII).

Nonetheless, I assume, without deciding, that the "objectively baseless" standard set forth in *Professional Real Estate Investors* applies here. I similarly assume that the acts on which Dr. Lin bases her retaliation claims constitute litigation conduct or other petitioning activity that is potentially within the scope of the First Amendment. But these issues may ultimately need to be addressed.

not objectively baseless. As discussed above, for example, the Superior Court vacated paragraphs 2 and 3 of the permanent injunction because the court concluded that those paragraphs were "overly broad and not supported by the record." *Rohm & Haas Co. v. Lin*, 992 A.2d at 148. At the very least, that raises a question as to whether Rohm and Haas's decision to pursue the injunction was reasonably based. And Rohm and Haas points to nothing in the current record compelling the conclusion, as a matter of law, that any of its other actions were reasonably based. Rather, the question whether there was an objectively reasonable basis for the post-2004 events on which Dr. Lin bases her retaliation claims presents factual issues that cannot be resolved at this motion-to-dismiss stage.

Accordingly, I conclude that, at this stage of the proceedings, Rohm and Haas's First Amendment right of access to the courts does not require dismissal of Dr. Lin's retaliation claims.

In sum, while I agree with Rohm and Haas that Dr. Lin's claims arising out of the August 2003 discovery requests are barred by *res judicata*, I find Rohm and Haas's reasons for dismissing the claims arising out of subsequent events unconvincing at this stage of the proceedings.[15] Accordingly, I will grant Rohm and Haas's motion to dismiss Dr. Lin's retaliation claims insofar as those claims are based on the 2003 discovery requests, but I will deny Rohm and Haas's motion to dismiss the retaliation claims arising out of the post-2004 events.

---

[15] Rohm and Haas also challenged the timeliness of Dr. Lin's retaliation claims in its brief supporting its motion to dismiss. But Rohm and Haas seems to have abandoned this argument in its reply brief. In any event, because I conclude that the retaliation claims based on the 2003 discovery requests are barred by *res judicata*, I need not address the issue. It is clear that the claims based on the post-2004 events are timely.

### B.      Breach of Contract

Dr. Lin next alleges that Rohm and Haas breached the EEOC-mediated settlement agreements by seeking to prevent her from engaging in methacrylic acid research.[16] Dr. Lin bases her claim on the proposed order accompanying Rohm and Haas's motion for a default judgment in the state lawsuit, which sought to enjoin Dr. Lin from "performing any research or engaging in any other activities pursuant to the outstanding EverNu contracts with the DOE or any other research contacts, respecting methacrylic acid."[17] (Pl.'s Br. at 32.)

In seeking dismissal of this claim, Rohm and Haas again relies on collateral estoppel and the First Amendment. Neither argument, however, has any merit.

### 1.      Collateral Estoppel

Rohm and Haas argues that Dr. Lin's claim is precluded by the Superior Court's finding that the injunction "did not alter the contractual status quo between [Dr. Lin and Rohm and Haas] and did not improperly modify the parties' negotiated terms." (Def.'s Br. at 25.) I disagree.

It is true that, in its February 20, 2003, opinion, the Superior Court concluded that the *preliminary* injunction issued by the trial court in 2001 neither "altered the *status quo*" nor "improperly modified the terms of the negotiated relationship between the parties." *Rohm & Haas Co. v. Lin*, No. 1246 EDA 2001, at 19 (Pa. Super. Ct. Feb. 20, 2003) (attached as Exhibit A

---

[16] In her complaint, Dr. Lin also alleged that "Rohm and Haas failed to reimburse [her] for time and expenses incurred by her for post-employment services provided to Rohm and Haas . . . relating to their filing of patent applications." (Compl. ¶ 161.) She does not allege any specific dates. But, perhaps agreeing with Rohm and Haas's contention that this claim is time-barred, Dr. Lin has not addressed it in her brief. Accordingly, I do not address it here.

[17] Dr. Lin is referring to paragraph 11 of the proposed order that Rohm and Haas submitted to the state court on February 28, 2008. This provision is substantially similar to paragraph 3 of the permanent injunction later issued by the trial court, which, along with paragraph 2, was vacated by the Superior Court.

to Def.'s Mot. to Dismiss). But the Superior Court was unable to reach the same conclusion with respect to the permanent injunction issued by the trial court as a discovery sanction against Dr. Lin in 2008. Indeed, noting that "Dr. Lin's non-compete agreement imposed a one-year restriction on acrylic acid research," the Superior Court, in its opinion dated March 1, 2010, concluded that paragraphs 2 and 3 of the permanent injunction "extend[ed] such restriction indefinitely to a different subject, *i.e.*, methacrylic acid research, without sufficient indication in the record at hand that methacrylic acid research implicates Rohm and Haas'[s] confidential information or trade secrets almost ten years after the termination of Dr. Lin's employment." *Rohm & Haas Co. v. Lin*, 992 A.2d at 148 (concluding that paragraphs 2 and 3 "are overly broad and not supported by the record"). In short, there is nothing in the Superior Court's opinion that precludes a finding in this case that Rohm and Haas's attempt to enjoin Dr. Lin from engaging in methacrylic acid research constituted a breach of the settlement agreement.[18]

### 2.     The First Amendment

Rohm and Haas also contends that its First Amendment right of access to the courts precludes Dr. Lin's breach-of-contract claim. Rohm and Haas contends that because neither the state lawsuit nor its conduct during the course of litigation was objectively baseless, Dr. Lin's breach-of-contract claim constitutes "an unconstitutional burden on [its] First Amendment rights." (Def.'s Br. at 30.)

But, as suggested above, there is no basis for concluding here, as a matter of law, that

---

[18] Rohm and Haas suggests that a proposed order accompanying a motion in a lawsuit cannot constitute a breach of contract. But Rohm and Haas cites no authority and offers no other support for its contention. And given that the parties have not submitted a copy of the settlement agreement, I will not decide the issue now.

there was an objectively reasonable basis for Rohm and Haas's attempt to enjoin Dr. Lin from engaging in methacrylic acid research.[19] Indeed, that question presents factual issues that have not been resolved in the state lawsuit and that cannot be resolved at this motion-to-dismiss stage.

Accordingly, I cannot conclude here that Rohm and Haas's attempt to enjoin Dr. Lin from engaging in methacrylic acid research was protected by the First Amendment.

Because neither collateral estoppel nor the First Amendment requires dismissal of Dr. Lin's breach-of-contract claim at this stage of the proceedings, I will deny Rohm and Haas's motion to dismiss this claim.

## C.    Intentional Interference with Prospective Contractual Relations

Finally, Dr. Lin alleges that Rohm and Haas improperly and intentionally interfered with her prospective contractual relationships with the DOE and other third parties. She alleges, for example, that between May 5, 2008, when the trial court entered a default judgment against her and issued the permanent injunction as a discovery sanction, and March 1, 2010, when the Superior Court vacated paragraphs 2 and 3 of the injunction, she and EverNu were precluded from submitting two applications to the DOE's Industrial Technology grant program to further develop her methacrylic acid research project. (Compl. ¶ 123.)

To sustain a claim of intentional, or tortious, interference with prospective contractual relations under Pennsylvania law, a plaintiff must demonstrate (1) "a prospective contractual relation"; (2) the "purpose or intent," on the part of the defendant, "to harm the plaintiff by preventing the relation from occurring"; (3) "the absence of privilege or justification on the part

---

[19] I assume, without deciding, that the "objectively baseless" standard that Rohm and Haas relies on applies here. But this issue may ultimately need to be addressed.

of the defendant"; and (4) "the occasioning of actual damage resulting from the defendant's conduct." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir. 1997).

Rohm and Haas argues that Dr. Lin's tortious-interference claim must be dismissed because her claim is time-barred, because Dr. Lin cannot demonstrate that Rohm and Haas's conduct was not justified or privileged, and because Dr. Lin has not sufficiently alleged a "prospective contractual relation." I disagree.

### 1.    Statute of Limitations

Rohm and Haas argues first that Dr. Lin's tortious-interference claim is time-barred.

The Third Circuit has held that a statute-of-limitations defense may be raised in a motion to dismiss under Rule 12(b)(6), "but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal quotation marks omitted). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (internal quotation marks omitted).

The statute of limitations for tortious-interference claims is two years. *See* 42 Pa. Cons. Stat. § 5524(3); *see also CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004) (explaining that Pennsylvania courts apply the two-year statute of limitations set forth in 42 Pa. Cons. Stat. § 5524(3) to claims for tortious interference with contractual relations).

Here, Rohm and Haas contends that Dr. Lin has not identified any interfering conduct by Rohm and Haas within this two-year limitations period, that is, in the two years before she filed this action on May 13, 2011.

But the Third Circuit has held that a tortious-interference claim "does not accrue until, at least, the plaintiff suffers injury (i.e., 'actual legal damage') as a result of the defendant's conduct." *CGB*, 347 F.3d at 384. In the context of a claim for tortious-interference with an existing contract, the Third Circuit held that the plaintiff did not suffer "actual legal damage"—and thus its cause of action did not accrue—until its contract with a third party was terminated, even though the allegedly interfering acts occurred before then. *Id.* Similarly, in a nonprecedential case involving a claim for tortious interference with prospective contractual relations, the Third Circuit found that the plaintiff's claim accrued when he was told that he did not receive a faculty appointment (the prospective contract). *See Kant v. Seton Hall Univ.*, 422 F. App'x 186, 190 (3d Cir. 2011) (not precedential).

Here, the alleged interference with Dr. Lin's prospective contractual relations resulted from the May 5, 2008, injunction. But, for purposes of her tortious-interference claim, Dr. Lin did not suffer an actual legal damage until there was a specific grant that Dr. Lin was unable to apply for. To the extent that Dr. Lin was precluded from applying for a grant within two years of the time she filed her complaint (May 13, 2011), her tortious-interference claim is timely. But while Dr. Lin alleges that she was precluded from submitting applications for DOE grants between May 2008 and March 2010, she does not allege the application deadlines for these grants.[20] It is thus not clear from the face of her complaint whether her claim is time-barred, and accordingly, I cannot dismiss her claim on statute-of-limitations grounds.

---

[20] Dr. Lin does refer in her complaint to an SBIR solicitation announced in September 2008, with a deadline in November 2008. (Compl. ¶ 114.) A tortious-interference claim arising out of that grant would appear to be untimely.

### 2.        Privilege or Justification

Next, relying again on collateral estoppel and the First Amendment, Rohm and Haas argues that Dr. Lin's claim must fail because Dr. Lin cannot demonstrate that its conduct was not justified or privileged. Noting that Dr. Lin's "alleged acts of tortious interference" are merely "the alleged effects of paragraphs 2 and 3" of the permanent injunction (Def.'s Reply Br. at 10), Rohm and Haas argues that the consequences of the injunction cannot form the basis for Dr. Lin's claim because the Superior Court not only found that Rohm and Haas's initiation of the lawsuit and its discovery requests were justified but also found that the issuance of the permanent injunction as a discovery sanction was justified.

But Rohm and Haas overlooks the fact that the Superior Court vacated paragraphs 2 and 3 of the injunction because it concluded that these two paragraphs were "overly broad and not supported by the record." *Rohm & Haas Co. v. Lin*, 992 A.2d at 148. And Rohm and Haas points to no subsequent state-court judgment establishing the reasonableness of either of these two paragraphs or otherwise justifying Rohm and Haas's conduct in seeking to enjoin Dr. Lin from engaging in methacrylic acid research. Thus, the question whether there was an objectively reasonable basis for Rohm and Haas's pursuit of the injunction as a discovery sanction—and therefore whether Rohm and Haas's conduct may be said to be privileged under the First Amendment or otherwise justified—presents factual issues, the resolution of which is not appropriate at this motion-to-dismiss stage.[21]

---

[21] Rohm and Haas initially asserted that it had not sought the relief contained in paragraphs 2 and 3 of the injunction, apparently in an attempt to argue that *its* conduct did not cause the interference with prospective contractual relations that Dr. Lin complains of here. But other than this assertion, Rohm and Haas did not make a causation argument. Moreover, Rohm and Haas has conceded that it did in fact propose what essentially became paragraph 3 of the permanent injunction.

### 3.      Identification of Prospective Contractual Relations

Finally, Rohm and Haas argues that Dr. Lin's claim must be dismissed because Dr. Lin has failed to identify any specific prospective contractual relationship that was interfered with. I disagree.

"A prospective contractual relation 'is something less than a contractual right, something more than a mere hope.'" *Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 140 (3d Cir. 2005) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (1979)). "In determining whether there is a prospective contractual relationship in a tortious interference case, Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively 'reasonable likelihood or probability' that the contemplated contract would have materialized absent the defendant's interference." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 213 (3d Cir. 2009).

Here, Dr. Lin has sufficiently alleged prospective contracts with the DOE to state a claim for tortious interference with prospective contractual relations. Dr. Lin alleges that Rohm and Haas interfered with her prospective contractual relations with the DOE—in particular, DOE's Industrial Technology grant program and "a DOE SBIR Phase III opportunity for commercialized funding of completed DOE SBIR Phase II projects." (Compl. ¶¶ 123, 128.) Dr. Lin further alleges that "[f]rom 2002 until April 2008 she and EverNu received eight SBIR grants from the DOE." (*Id.* ¶ 113.) Of course, to prevail on her claim Dr. Lin must ultimately establish that it is reasonably probable that she would have received the subsequent DOE grants but for Rohm and Haas's alleged interference. But determining whether Dr. Lin has established such a reasonable probability requires a factual analysis that is not appropriate at the motion-to-dismiss stage, when the factual record has not yet been developed. I thus conclude that her allegations are sufficient to

33

state a claim for tortious interference with prospective contractual relations. I do agree with Rohm and Haas, however, that Dr. Lin's reference to other "potential employers, grant award donors, research collaborators, and interested chemical manufacturers" (Compl. ¶ 165) is too vague to identify other prospective contractual relations with which Rohm and Haas may have interfered.

Because I find Rohm and Haas's arguments for dismissing Dr. Lin's tortious-interference claim unconvincing at this stage of the proceedings, I will deny its motion to dismiss this claim.

## IV.    CONCLUSION

For the reasons set forth above, I will grant in part and deny in part Rohm and Haas's motion to dismiss Dr. Lin's complaint. I will grant Rohm and Haas's motion to dismiss Dr. Lin's retaliation claims insofar as they are based on the 2003 discovery requests, but I will deny Rohm and Haas's motion to dismiss the retaliation claims arising out of the post-2004 events. I will also deny Rohm and Haas's motion to dismiss Dr. Lin's breach-of-contract and tortious-interference claims.

An appropriate order accompanies this memorandum.