J. A33010/02

ROHM AND HAAS COMPANY,        :        IN THE SUPERIOR COURT OF
                Appellee      :             PENNSYLVANIA
                              :
         v.                   :
                              :
DR. MANHUA MANDY LIN,         :
                Appellant     :        No. 1246 EDA 2001

Appeal from the Order entered April 26, 2001, in the
Court of Common Pleas of Montgomery County, Civil,
at No. 00-10035.

BEFORE:    HUDOCK, FORD ELLIOTT and OLSZEWSKI, JJ.

MEMORANDUM:                            **FILED FEBRUARY 20, 2003**

This is an appeal from an order granting a preliminary injunction,
appealable as of right pursuant to Pennsylvania Rule of Appellate Procedure
311(a)(4).  We affirm.

Before discussing the factual and procedural history of the case, we
note that the grant of a preliminary injunction is an extraordinary remedy.
***A.M. Skier Agency, Inc. v. Gold***, 747 A.2d 936, 939 (Pa. Super. 2000).
Nevertheless, our review is very narrow.  ***Id.***  We are limited to examining
the record to determine whether the trial court's decision has any apparently
reasonable basis.  ***Id.***  We may not inquire into the merits of the underlying
controversy.  ***Id.***  We understand that the parties place different
constructions on the same events and that they dispute the existence and
significance of certain facts.  However, it is not the role of a Pennsylvania
appellate court to pass on the credibility of witnesses or to act as the trier of
fact.  ***L.B. Foster Company v. Charles Caracciolo Steel & Metal Yard,***

MLIN004211

*Inc.*, 777 A.2d 1090, 1092-93 (Pa. Super. 2001).  Credibility determinations are left to the trial court.  *Id.* at 1093.  Rather, we address the record for the purpose of ascertaining whether it supports the trial court's ruling.

In the present case, the record indicates that Appellant Manhua Mandy Lin, Ph.D. (Dr. Lin) was employed as a research scientist by Appellee Rohm and Haas Company (Rohm and Haas) from 1989 until November of 1999. Rohm and Haas is a manufacturer of specialty chemicals.  Its line includes polymers comprising coatings and adhesives.  Acrylic acid is a central component and starting material in over 50% of its products.

The specialty chemicals market is intensively competitive.  Rohm and Haas contends with many commercial rivals who are seeking to develop new methods for producing acrylic acid.  Rohm and Haas, therefore, has funded a costly and continuing research project charged with analyzing and developing methods for synthesizing acrylic acid more cheaply and efficiently.  Should one of its competitors develop a less expensive process for synthesizing high quality acrylic acid, Rohm and Haas would be at a serious commercial disadvantage.

Dr. Lin was hired by Rohm and Haas in 1989.  On January 3, 1989, Dr. Lin executed a confidentiality agreement that precluded her from disclosing any trade secret information she learned through her work for the company. Specifically, she promised that she would "not divulge such information to outsiders or other unauthorized persons either while employed by Rohm and

MLIN004212

J. A33010/02

Haas or afterwards." Confidentiality and Employment Agreement, 1/3/89, at 1, ¶ II. Dr. Lin also promised that, "upon termination of [her] employment," she would "return to Rohm and Haas all papers, notes, books, or other documents or property belonging to Rohm and Haas or relating to its business." *Id.* at ¶ VI.

Dr. Lin was promoted in 1995 to a position that gave her access to confidential and trade secret information, including information relating to the catalytic synthesis of acrylic acid. She was one of seven senior scientists in the monomer technology group performing research related to catalytic alkane oxidation. Dr. Lin believed that she was not given proper recognition by her superiors for her work and that this was caused by disparagement of her gender and national origin. She therefore initiated a complaint with the federal Equal Employment Opportunity Commission (EEOC). As a result of an EEOC mediation, Dr. Lin agreed to leave Rohm and Haas in exchange for certain emoluments and termination benefits.

On November 10, 1999, Dr. Lin signed an agreement that specifically stated she could publish scientific papers, but that she could not reveal trade secrets. Her right to publish was subject to review concerning trade secrets by Dr. Scott Han, an employee of Rohm and Haas. In the event of a disagreement between Drs. Lin and Han, Dr. Charles Tatum, the Chief Technology Officer for Rohm and Haas, was authorized to review the disputed matter. EEOC Settlement Agreement, 11/10/99, at ¶ 7.I.

- 3 -

MLIN004213

Anticipating Dr. Lin's separation, Rohm and Haas issued a document captioned "Departing Employee Notice and Acknowledgement of Continuing Obligations." This document delineated the manner in which confidential information was to be handled upon termination of Dr. Lin's employment. The parties executed an additional agreement which specifically acknowledged that Dr. Lin remained bound by the confidentiality agreement she signed on January 3, 1989, and that she also was bound by the confidentiality requirements of the "Departing Employee Notice and Acknowledgement of Continuing Obligations." Agreement and Release, 11/15/99, at 3, ¶ 13.[1] The trial court found that, despite the requirements of the various confidentiality agreements, prior to her departure from Rohm and Haas Dr. Lin copied hundreds of confidential documents onto high-storage-capacity computer disks, which she took with her. She also removed reference books belonging to Rohm and Haas.

Dr. Lin had committed to delivering a scientific paper to the American Chemical Society (ACS) in March of 2000. Dr. Lin submitted an outline of her intended presentation to Dr. Han a few days before the meeting.

---

[1] The Agreement and Release is dated November 15, 1999. It was not executed until November 17, 1999, by Dr. Lin. A representative of Rohm and Haas executed the agreement the following day. Dr. Lin alleges that Dr. Tatum was removed from the reviewing process by agreement via a revision in the Agreement and Release. Dr. Lin's Brief at 9. However, neither the certified record nor Dr. Lin's reproduced record supports this assertion. *See* Agreement and Release, 11/15/99, at 2, ¶ C.5.h) and Dr. Lin's Reproduced Record, Volume V, at 2238 (reproducing the Agreement and Release).

MLIN004214

However, Dr. Han did not have enough time to do a complete trade secret review. He therefore authorized presentation of the paper subject to the caveat that only 1996 or previous data could be used. This proviso was required because post-1996 data included critical documentation that constituted confidential trade secret information.

Dr. Han and another Rohm and Haas employee (Dr. Anne Gaffney) attended the 2000 ACS meeting. On March 28, 2000, Dr. Lin gave a presentation using post-1996 trade secret information concerning the catalytic synthesis of acrylic acid. It is customary in the scientific community to publish a paper conveying the substance of a presentation following the meeting at which the presentation was given. Rohm and Haas scientists were concerned that Dr. Lin would disclose additional trade secrets in her follow-up paper in order to better substantiate her oral presentation.

Although the certified record amply documents the specific confidential data concerning catalysts disclosed by Dr. Lin at the March 2000 ACS meeting, it would be inappropriate to detail that information in a judicial memorandum that is a matter of public record. Suffice it to state that we have scrutinized the record carefully and have found evidence of record that supports the trial court's determinations. *See, **inter alia***, N.T., 2/26/01, at 10-67 (comprising the testimony of the Chairman of the Department of Chemical Engineering at the Pennsylvania State University to the effect that the information at issue in this case constitutes non-public data which is not

- 5 -

MLIN004215

J. A33010/02

generally known in the relevant scientific community that would be of value to a competitor of Rohm and Haas).  We note additionally that the record indicates Dr. Lin did place additional trade secret information in her proposed paper.  *See* N.T., 2/6/01 (Volume II), at 11-12 (comprising the testimony of Dr. Han concerning the draft of Dr. Lin's paper that he approved and the additions incorporated by the subsequent draft that Dr. Lin did not submit for Rohm and Haas approval).

Scientists at Rohm and Haas received notice that Dr. Lin was scheduled to present at an international symposium on oxidation catalysis in September of 2001.  Rohm and Haas applied for a preliminary injunction to prevent Dr. Lin from disclosing further trade secret information and to require her to abide by the agreed upon trade secret review process pending a final ruling.  The trial court conducted ten days of hearings.  On April 17, 2001, the trial court entered an order granting a preliminary injunction in favor of Rohm and Haas.  The order specifically included the following:

> 1. Dr. Lin is enjoined from using, disclosing or divulging, directly or indirectly, any information that Rohm and Haas considered confidential or trade secret;
>
> 2. Dr. Lin is enjoined from making, releasing or disclosing any proposed scientific presentation or publication unless, after a 90-day trade secret review by Dr. Scott Han and/or Dr. Charles Tatum, the parties agree that such presentation or publication contains no Rohm and Haas trade secrets[.]

Order, 4/17/91, at 2.  The trial court also directed that the preliminary injunction would remain in effect until the final hearing of the case.  *Id.*

MLIN004216

J. A33010/02

Dr. Lin filed a motion to dissolve the preliminary injunction, which the trial court denied on April 26, 2001.    Dr. Lin's timely notice of appeal followed on May 7, 2001.    The trial court directed a Rule 1925(b) statement to be filed, and Dr. Lin complied.    This appeal presents four issues:

> A.    Did the Trial Court commit an abuse of its discretion and/or commit an error of law when it entered injunctive relief on the grounds that Rohm [and] Haas would sustain irreparable harm because Dr. Lin disclosed trade secrets where her disclosures were limited to the objective characteristics of catalysts reported in a published patent application or were otherwise specifically authorized by Rohm [and] Haas?

> B.    Did the [Trial] Court abuse its discretion and/or commit an error of law when it issued injunctive relief that altered the status quo?

> C.    Did the [Trial] Court abuse its discretion and/or commit an error of law when it issued injunctive relief that effectively rewrote the terms of a negotiated relationship between the parties?

> D.    Did the [Trial] Court abuse its discretion and/or commit an error of law when it issued injunctive relief that was substantially broader [than] necessary to maintain the status quo and which imposed substantial, burdensome and unwarranted obligations on Dr. Lin, including an unconstitutional prior restraint on Dr. Lin's right of free speech to comment on public information?

Dr. Lin's Brief at 5.

As already noted, a preliminary injunction is an extraordinary remedy. *A.M. Skier Agency, Inc.*, 747 A.2d at 939.    Nevertheless, our review is limited to determining whether there were any apparently reasonable grounds for the action of the trial court.    *Id.*    We reiterate and stress the

MLIN004217

fact that our review of a decision regarding a preliminary injunction does not reach the merits of the controversy. *Santoro v. Morse*, 781 A.2d 1220, 1225 (Pa. Super. 2001) (*en banc*). The court which is to exercise discretion in the matter of issuing an injunction is the trial court, not the appellate court. *Id.* (citing *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277, 1286 (1992)). The trial court's action may be reversed on appeal only in the event of a clear abuse of discretion. *Id.* In this context, we will find a clear abuse of discretion if no apparently reasonable grounds exist of record to support the trial court's decision or if the trial judge relied on a palpably erroneous rule of law. *Id.*

The purpose of a preliminary injunction is to preserve the *status quo* as it exists or previously existed before the acts complained of, thereby preventing irreparable injury or gross injustice. *Santoro*, 781 A.2d at 1229. To establish the right to a preliminary injunction, the moving party carries the burden of showing:

> (1) that relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages; (2) that greater injury will occur from refusing the injunction than from granting it; (3) that the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct; (4) that the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and (5) that the plaintiff's right to relief is clear.

*Santoro*, 781 A.2d at 1229. Prior to *Santoro*, this standard generally was articulated as a three-pronged test rather than the five-element standard set

MLIN004218

forth above. *See*, *e.g.*, *A.M. Skier Agency, Inc.*, 747 A.2d at 939 (employing a three-element test for determining the propriety of issuing a preliminary injunction). Nevertheless, the substantive analysis articulated as a five-part test in *Santoro* establishes no new elements and requires the same inquiry mandated under the more broadly phrased three-part test set forth in earlier decisions such as *A.M. Skier Agency, Inc.* The record indicates that the trial court employed a legally appropriate standard in reliance upon *A.M. Skier Agency, Inc.*, and that the trial court's analysis of the problems posed by the present appeal was based on viable case law and correct legal standards.

Dr. Lin first argues that Rohm and Haas failed to demonstrate "irreparable harm" and that it, therefore, constituted an abuse of discretion and an error of law for the trial court to issue the preliminary injunction. The crux of this argument is the rather extraordinary claim that the information disclosed by Dr. Lin cannot be deemed a "trade secret" because she does not believe that any of the data Rohm and Haas seeks to protect has a valid scientific foundation. Dr. Lin's Brief at 23. If this were so, then the data would be irrelevant to any scientific presentation and Dr. Lin would not wish to disclose the information in her talks and papers. We agree with the trial court's assessment that Dr. Lin "must believe this information has value because she wants to publish papers on this research." Trial Court Opinion, 6/19/01, 8.

- 9 -

MLIN004219

J. A33010/02

Dr. Lin also argues that the existence of a chemical compound cannot be the subject of trade secret protection because, under patent law principles, the compound and its properties are inseparable and the graphic formulae, chemical nomenclature and the system of organization employed are mere symbols by which compounds can be identified, classified and compared. *Id.* at 24-25. While this statement possibly may be true as a patent law construct, Dr. Lin's analysis is flawed. First, Rohm and Haas is asking for trade secret protection, not patent protection. Second, Rohm and Haas is not attempting to conceal the fact that the various chemical compounds at issue exist in the universe. Rather, the company wishes to protect confidential information concerning which specific undisclosed compounds it uses (and the manner in which these compounds are employed) in its manufacturing processes.

Our Supreme Court has adopted the definition of "trade secret" set forth in comment b to section 757 of the Restatement of Torts: a trade secret may consist of any formula, pattern, device or compilation of information which is used in business and gives the holder an advantage over competitors who do not know or use it. *Felmlee v. Lockett*, 466 Pa. 1, 9, 351 A.2d 273, 277 (1976) (citing Restatement of Torts § 757 cmt. b (1939)). When determining whether information qualifies as a trade secret, the trial court may consider factors that include the following:

> (1) the extent to which the information is known outside the owner's business; (2) the extent to which it is known

- 10 -

MLIN004220

J. A33010/02

> by employees and others involved in the owner's business;
> (3) the extent of measures taken by the owner to guard
> the secrecy of the information; (4) the value of the
> information to the owner and to his competitors; (5) the
> amount of effort or money expended by the owner in
> developing the information; and (6) the ease or difficulty
> with which the information could be acquired or duplicated
> by others.

*Dibble v. Penn State Geisinger Clinic, Inc.*, 806 A.2d 866, 871 (Pa. Super. 2002). The trial court has explicitly considered the above factors in its opinion and has ruled that the information at issue in this case constitutes *bona fide* trade secret data that warrants protection under Pennsylvania law. Trial Court Opinion, 6/19/01, at 7-9.

We have scrutinized the record to ascertain whether it supports the trial court's determinations. *See*, *inter alia*, N.T., 7/10/00, at 126-148 (comprising the testimony of Dr. Han regarding the content of Dr. Lin's disclosures, stating that this was not information revealed to the public, and explaining how and why this information would be useful to a competitor of Rohm and Haas). The record indicates that Rohm and Haas filed a patent application that disclosed specific aspects of a process that company employees developed for an improved method of synthesizing acrylic acid. However, Rohm and Haas also discovered that certain chemical compounds not disclosed in the patent application have the effect of producing a higher yield of product and/or a faster reaction time at a lower cost. Information concerning the identity and use of these undisclosed compounds was retained by Rohm and Haas as a trade secret. This is the type of

- 11 -

MLIN004221

J. A33010/02

information that Dr. Lin revealed and wishes to continue to disclose in her presentations and papers. We conclude that the record supports the trial court's factual determinations, and we see no basis on which we could reverse the ruling that this is trade secret information.

We understand that Dr. Lin disagrees with the evidence adduced by Rohm and Haas, particularly with the testimony of Dr. Han. However, the Superior Court sits as a court of review, and we may not disturb factual findings on the basis of considerations of credibility. *Fanning v. Davne*, 795 A.2d 388, 394 (Pa. Super. 2002). It is not our role to determine the credibility of witnesses when testimony conflicts, nor may we determine the weight to be given to specific evidence. *Id.* Our task, when reviewing the grant of a preliminary injunction, is to ascertain whether any apparently reasonable grounds exist of record to support the trial court's decision. *Santoro*, 781 A.2d at 1225. As we have stated, we find that the record is adequate to support the trial court's ruling.

Dr. Lin also challenges the trial court's determination that the injury to Rohm and Haas is "irreparable" as that term is defined by Pennsylvania law. An injury is regarded as "irreparable" in the sense required for a preliminary injunction to issue if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard. *Anchel v. Shea*, 762 A.2d 346, 351 (Pa. Super. 2000). Dr. Lin has not suggested any means of evaluating the precise cost to Rohm and Haas of her disclosures to

- 12 -

MLIN004222

J. A33010/02

competitors.  She merely contends that revealing the data had no effect on Rohm and Haas and that future disclosures would not be harmful.  The trial court rejected that theory, and we agree with the trial court.  Testimony of record indicates that the identity and uses of the chemical compounds at issue here have value to Rohm and Haas in the synthesis of acrylic acid at a competitive price.  However, questions concerning whether competitors actually are using the data and, if so, how much of an edge has been lost by Rohm and Haas, are not readily quantifiable.  Nor is it possible to suggest an amount of damages that is likely to be the result of future disclosures.  As such, we conclude that the trial court properly determined that the "irreparable injury" element has been established.

In her second and third issues, Dr. Lin contends that the preliminary injunction improperly alters the *status quo* between the parties.  She also argues that the trial court essentially rewrote the negotiated bargain between the parties by requiring her to permit Rohm and Haas to review her proposed presentations and publications to ensure that no trade secrets are revealed.  Dr. Lin avers that maintaining a high profile in her field is key to securing professional opportunities.  Thus, Dr. Lin argues that she must be permitted to publish papers and make presentations based on her work at Rohm and Haas without the fetters imposed by the trial court.

Dr. Lin claims that, in recognition of marketplace realities, she made her right to present and publish a crucial component of the negotiations to

MLIN004223

settle her discrimination suit against Rohm and Haas. Thus, Dr. Lin argues that she has been deprived of the benefit of her bargain by the phrasing of the preliminary injunction, which allegedly precludes her from using any Rohm and Haas data without regard to whether it constitutes trade secret information or is a matter within the public domain. **See** Dr. Lin's Brief at 32-33. Furthermore, Dr. Lin contends that it is improper that the trial court required her to afford Rohm and Haas a ninety-day review period.

The purpose of a preliminary injunction is to preserve the *status quo* as it exists **or previously existed** before the acts complained of, thereby preventing irreparable injury or gross injustice. **Anchel**, 762 A.2d at 351. It is proper for a preliminary injunction to compel a wrongdoer to give up the status he appropriated before an action could have been instituted against him. **West Penn Specialty MSO, Inc. v. Nolan**, 737 A.2d 295, 298 (Pa. Super. 1999). Thus, we agree with Dr. Lin that a trial court ordinarily may not issue a preliminary injunction that alters the status of either party, thereby destroying the balance the court must protect. However, we cannot agree that any such impropriety occurred in the present case.

As noted, Dr. Lin executed multiple documents agreeing she would not reveal non-public information that could be used to provide a competitive edge against Rohm and Haas. Beyond that, she assigned to Rohm and Haas all ownership interests in "all inventions, discoveries, and improvements (patentable or not) conceived or made by [her] and all works of authorship

- 14 -

MLIN004224

J. A33010/02

created by [her] during the term of [her] employment and relating to the business or activities of Rohm and Haas." Confidentiality and Employment Agreement, 1/3/89, ¶ V. Dr. Lin agreed this responsibility would continue beyond termination of her employment at Rohm and Haas. *Id.*

Under the EEOC settlement agreement, Dr. Lin executed a records security acknowledgement. This document explicitly stated she was required to return all documents containing confidential or trade secret information. Agreement and Release, 11/15/99 (Acknowledgement and Records Security Statement). Dr. Lin also agreed to abide by the following:

> I will keep all business and trade secrets, including secret processes of manufacture, research records, personnel records, and all other confidential information owned by or in the possession of Rohm and Haas as secret and confidential. I will not use such information other than in an authorized manner in the course of Rohm and Haas' business. I will not divulge such information to outsiders or other unauthorized persons either while employed by Rohm and Haas or afterwards.

*Id.*, Exhibit "A," Worldwide Confidentiality and Employment Agreement at ¶ II. The departing employee notice, which also was incorporated in the separation agreement, contains the following clause:

> [Rohm and Haas] will keep all originals and copies of tangible Rohm and Haas property which was prepared [by] or worked on by you. This includes drawings, memos, reports, forecasts, estimates, plans, letters, organization charts, pictures, invention records, notebooks, etc.

*Id.*, Exhibit "B," Departing Employee Notice and Acknowledgement of Continuing Obligations at 1. This document acknowledges that some of the

MLIN004225

pertinent confidential information was stored in Dr. Lin's memory, and thus could not be "returned" to Rohm and Haas. *Id.* Nevertheless, Dr. Lin was precluded, under the terms of the agreement, from disclosing confidential information retained in memory as well as in recorded data. *Id.* Finally, the Worldwide Confidentiality and Employment Agreement specifies as follows:

> I will, on termination of my employment, return to Rohm and Haas all papers, notes, books, or other documents or property belonging to Rohm and Haas **or relating to its business**.

*Id.*, Exhibit "A," Worldwide Confidentiality and Employment Agreement at ¶ VI (emphasis added).

The departing employee notice specifically explains that the phrase "confidential information" includes (but is not limited to):

> [M]arketing and advertising plans, specific areas of research and development, project work, product formulation, processing methods, assignments of individual employees, testing and evaluation procedures, cost figures, construction plans and special techniques or methods of any kind peculiar to Rohm and Haas, which offer the opportunity for a competitive advantage. More specifically, Rohm and Haas considers to be Confidential Information any non-public information which could be used for a competitive advantage that you have acquired during any tenure at Rohm and Haas. This would include without limitation any and all unpublished information and knowledge relating to the development, testing, formulation, manufacture and marketing of Rohm and Haas products, as well as any and all methods, procedures and operations relating to the business of Rohm and Haas.

*Id.*, Exhibit "B," Departing Employee Notice and Acknowledgement of Continuing Obligations at 1.

- 16 -

MLIN004226

J. A33010/02

Dr. Lin has been paid for the work she performed while employed at Rohm and Haas.  Under the clear terms of her employment agreement, she has no reasonable claim to a right to disclose confidential information she acquired during her term of employment.  This is so whether she personally discovered or created the information or invention or whether she acquired the information through the work of others.   Nothing in any subsequent document executed by the parties alters this fundamental fact.

The Agreement and Release specifically covers the manner in which Dr. Lin may publish:

> DR. LIN will be able to publish subject to review concerning trade secrets by Dr. Scott Han.  In the event of a dispute, an additional review will be conducted by Dr. Charles Tatum.

Agreement and Release, 11/15/99, at 2 ¶ C.5.h.

The rule is well settled that, when interpreting a contract, a court must construe it as it is written, giving effect to the clear language and plain meaning of the words. *Solomon v. United States Healthcare Systems of Pennsylvania, Inc.*, 797 A.2d 346, 349 (Pa. Super. 2002), *appeal denied*, ___ Pa. ___, 808 A.2d 573 (2002).  Where the contract terms are clear and unambiguous, there is no need to consider other evidence to interpret those provisions. *Id.*

When read together, the unambiguous import of all the above contract provisions is that Dr. Lin was required to return to Rohm and Haas all materials of any sort relating to its business.  Furthermore, Dr. Lin's right to

- 17 -

MLIN004227

publish and to make presentations clearly has been subordinated to the right of Rohm and Haas to protect its trade secret information from disclosure to competitors. The trial court's conclusion that the parties contemplated and agreed to a review process is well founded in the express terms of the parties' various signed agreements. Unfortunately, none of the written contract terms specifies a timeframe to govern this review process.

When the exact time period the parties intended to use cannot be ascertained from the terms of a contract, the agreement is not on that account vitiated. **Cashdollar v. Mercy Hospital**, 595 A.2d 70, 76 (Pa. Super. 1991). Rather, courts will infer an agreement for a "reasonable time." **Id.** We note that every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement. **Donahue v. Federal Express Corporation**, 753 A.2d 238, 242 (Pa. Super. 2000).

We have already stated that the trial court conducted extensive hearings in this matter. On February 26, 2001, Henry C. Foley, Ph.D., testified. Professor Foley is the head of the Department of Chemical Engineering at the Pennsylvania State University. N.T., 2/26/01, at 2. Professor Foley testified concerning his familiarity with the trade secret review process common to the industry. He gave specific examples taken from the practices of American Cyanimid Company, Inc., and also E.I. du

MLIN004228

J. A33010/02

Pont de Nemours and Company. *Id.* at 63-64. In his experience, such review takes anywhere from six to twelve weeks. *Id.* at 64.

We are cognizant of Dr. Lin's contention that Professor Foley's testimony is irrelevant because he is a "stranger" to this transaction. Dr. Lin's Reply Brief at 14. However, Professor Foley was called as an expert witness, not as a fact witness. The thrust of his testimony was to explain common practices in the chemical industry and to indicate whether the information at issue was matter in the public domain. Dr. Lin did not challenge Professor Foley's qualifications as an expert when he was called. *See* N.T., 2/26/01, at 2-10 (Voir dire of Professor Foley) and 67-74 (cross-examination of Professor Foley). She may not do so for the first time on appeal. Pa. R.A.P. 302(a).

Where the trial court's decision to grant a preliminary injunction has any apparently reasonable basis, we will uphold it. *A.M. Skier Agency, Inc.,* 747 A.2d at 939. Although the ninety-day period imposed by the trial court is at the outer edge of the timeframe established as normal by Professor Foley's testimony, we cannot, on that basis alone, declare the trial court's ruling to be unsupported by the record. We see no indication that the preliminary injunction has altered the *status quo* as it existed prior to Dr. Lin's presentation at the 2000 ACS meeting, or that the scope of the preliminary injunction improperly modified the terms of the negotiated relationship between the parties.

- 19 -

MLIN004229

Dr. Lin's final contention is that the trial court abused its discretion by granting a preliminary injunction broader than necessary to maintain the *status quo*. Dr. Lin characterizes the injunction as affording Rohm and Haas unfettered control of her right to publish and make scientific presentations. She also complains that the preliminary injunction prohibits her from using data the parties allegedly agree is public domain material. We do not read the terms of the preliminary injunction that broadly, nor does the record support the conclusion that Rohm and Haas agrees that the information Dr. Lin wishes to publish is in the public domain. ***See supra*** (discussing testimony of Professor Foley).

We have already discussed the contractual provisions that govern the rights and duties of the parties. As stated above, the record supports the trial court's conclusions that Rohm and Haas is entitled to protect its trade secrets and other confidential information, and that the company contracted with Dr. Lin to do just that. Other than imposing a "reasonable time" requirement, the trial court did not burden Dr. Lin with any restrictions on scientific publications and presentations that were not contemplated specifically by the parties and made explicit in the various agreements and acknowledgments she signed before leaving the employ of Rohm and Haas.

Dr. Lin promised to protect the confidential and trade secret information she learned at Rohm and Haas. But she did not do so, thereby demonstrating the need for action on the part of the trial court. When Dr.

MLIN004230

Lin did submit her proposed presentation to Dr. Han, she only provided him the relevant information a few days before she was scheduled to speak. Thus, the need for a specifically delineated review period was demonstrated by Dr. Lin's own unreasonable behavior in failing to give Dr. Han an adequate amount of lead time to review her presentation before the March 2000 ACS meeting.

We have scrutinized the record in conjunction with our careful consideration of the parties' arguments and the trial court's response. Contrary to Dr. Lin's assertions, we find the trial court's order to be neither inartfully drawn nor illegally broad. Rather, we conclude that the preliminary injunction entered in this case represents a balanced response to the evidence of record. We see no indication of legal error nor do we find abuse of discretion. Accordingly, we affirm the grant of the preliminary injunction.

On September 25, 2001, we entered an order sealing the certified record, the parties' briefs and the reproduced record filed in this case. Upon full inspection of the record, we find that it specifically details much of the confidential information Rohm and Haas seeks to protect. Furthermore, the parties' briefs explicitly address this confidential matter. It would be useless to uphold the preliminary injunction if we were to permit dissemination of the confidential information via the record, reproduced record and the parties' briefs. We therefore direct that the order of September 25, 2001, must remain in full effect and that the certified record, the reproduced

MLIN004231

J. A33010/02

record, and the parties' briefs shall remain sealed until all appellate avenues, or the time for seeking appellate relief, have elapsed and the matter has been returned to the trial court. Upon remand from the appellate courts, the trial court shall then have jurisdiction to consider and rule upon any party motion to unseal the record.

The order granting the preliminary injunction is affirmed. The party briefs, the certified record and the reproduced record shall remain sealed consistent with this memorandum.

Judgment Entered:

_____
Prothonotary

FEB 2 8 2003

Date:_____

- 22 -

MLIN004232