Page 141

1    We have pending litigation. There's
2  this litigation. There was the abuse of process case
3  that we're waiting on, which we did get a decision in
4  that, but we're waiting to see where these cases go.
5    Again, as I told you, we're doing a
6  risk benefit analysis on whether we do want to go back
7  or not. We're still at that point, depending on what
8  the outcome of some of these other cases are, what we
9  get for documents in these cases, and to do analysis,
10 and whether we want to go back, as I said, and
11 re-expose Dr. Lin to our confidential information and
12 trade secrets again that we know that she used and
13 disclosed.
14 Q.    Would you agree with me that nothing has
15 happened in Montgomery County since May of 2008?
16 A.    I don't -- I think something has happened,
17 but I don't recall.
18 Q.    I think we already agree that nothing has
19 happened in Montgomery County since the Appellate
20 Court decision of March of 2010, right?
21 A.    I don't believe that's totally accurate,
22 but --
23 Q.    What's happening? What's going on in
24 Montgomery County?
25 A.    I would have to look at the record, but I

Page 142

1  believe there was something that happened in the
2  interim, but I don't recall.
3  Q.    Could you tell me what that is because I'm
4  unaware of anything?
5  A.    I would have to look at the record.
6  Q.    As you sit here today do you understand that
7  through your counsel, I guess at your suggestion, tell
8  me if I'm wrong, requested that if the matter in
9  Montgomery County was to be closed it would have to be
10 closed or there would have to be another hearing at
11 your request, not at her request? Do you understand
12 that?
13 A.    Correct, yes. I believe that's what happened
14 since the Order.
15 Q.    So, as long as you don't request closure or
16 another hearing, she twists in the wind, right?
17       MR. KRESGE: Objection to the form
18 of the question.
19 Q.    I'll phrase it differently. As long as you,
20 Rohm and Haas, don't request closure or another
21 hearing, the case remains open, correct?
22 A.    That's my understanding. Yes.
23 Q.    What's your understanding about the fact of
24 an open case against a former employee where the claim
25 is theft of a trade secret? What's your understanding

Page 143

1  about that, the impact of that on her? What's your
2  understanding of that?
3  A.    I don't understand the question.
4  Q.    How do you think that impacts her
5  professional life, the fact that over the last 13
6  years and ongoing the claim has been made that she
7  stole your trade secrets and has employed them to
8  compete against you? What do you think the impact of
9  that is on her, in terms of your unilateral decision
10 to keep the record open?
11 A.    The record in Montgomery County I think
12 speaks for itself. I mean, it shows that we had a
13 preliminary injunction hearing that the Court did find
14 that Dr. Lin used and did disclose our confidential
15 information, and all we were seeking after that was a
16 discovery request which we never received.
17       So, that was -- the length of that
18 case was due to Dr. Lin's and EverNu's actions in the
19 case for not complying with Court Orders where she was
20 sanctioned over and over again, and there was
21 continued non-compliance.
22 Q.    Let's move ahead.
23 A.    I agree.
24 Q.    Were you successful in having Russomanno
25 removed for comparing your data to what she was

Page 144

1  inventing?
2  A.    I don't recall what happened to Russomanno.
3  Q.    Were you successful in having him put in a
4  new position so that this would never be an
5  embarrassment to you again?
6        MR. KRESGE: Objection to the form
7  of the question.
8        MR. FIORAVANTI: If I got it wrong,
9  all he has to say is I don't know or no.
10       MR. KRESGE: The way it has been
11 phrased --
12       MR. FIORAVANTI: This is discovery.
13       MR. KRESGE: It's right to have
14 discovery, but not discovery with such inaccurate
15 loaded questions that are argumentative.
16 Q.    What, if any, impact did you have on
17 Russomanno's career, if you know?
18 A.    I don't know.
19 Q.    Now, you did not get a prompt reply to your
20 February 13, 2008 letter, did you?
21       MR. KRESGE: Which one is that?
22 A.    Do you have the reply? I could look at the
23 document.
24       MR. KRESGE: Which exhibit are you
25 referring to?