# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. MANHUA MANDY LIN,

    Plaintiff,

       v.

ROHM AND HAAS COMPANY,

    Defendant.

CIVIL ACTION

No. 11-3158

## MEMORANDUM

YOHN, J.

January 2̶0̶ 2015

    This motion in limine presents an intersection of Title VII retaliation law and Pennsylvania corporate law. Dr. Manhua Mandy Lin, a former Rohm and Haas employee, has accused Rohm and Haas of violating Title VII's antiretaliation provision by harming EverNu, her single-member Pennsylvania limited liability corporation (LLC). I previously denied defendant's motion for summary judgment with reference to Rohm and Haas's alleged retaliatory acts subsequent to 2004 against EverNu as part of Lin's retaliation claim. With this motion in limine, Rohm and Haas seeks to preclude Lin from collecting any of EverNu's damages, if I find that Rohm and Haas retaliated against Lin via EverNu in violation of Title VII. Rohm and Haas argues that Lin cannot collect EverNu's damages because they belong only to EverNu—not to her. It also contends that I cannot pierce EverNu's corporate veil to allow Lin to collect these damages. Although Lin can present Rohm and Haas's alleged acts against EverNu

1

as retaliatory acts against her under Title VII, she cannot recover EverNu's damages based on such retaliatory acts. When Lin chose to structure EverNu as a Pennsylvania LLC, she relinquished her right to sue for EverNu's damages.

## I.    Background[1]

Lin started her legal journey in 1999. That year, Lin, who had worked as a research scientist at Rohm and Haas for ten years, filed a complaint with the U.S. Equal Employment Opportunity Commission (EEOC) against Rohm and Haas alleging discrimination and retaliation. Lin then left Rohm and Haas as part of an EEOC-mediated settlement that allowed Rohm and Haas to review any of her work for trade-secret violations before she published it. In March 2000, Lin sent a proposed presentation on her work with acrylic acid to Rohm and Haas for its review. Concluding that it revealed Rohm and Haas trade secrets, Rohm and Haas threatened to sue Lin to preserve the trade secrets. Lin presented the information anyway, and so Rohm and Haas sued her in June 2000 in the Montgomery County Court of Common Pleas, claiming that Lin had revealed Rohm and Haas trade secrets in her presentation. Lin responded by filing an EEOC complaint that same month in which she alleged that Rohm and Haas filed the Montgomery County lawsuit in retaliation for her earlier EEOC complaint.

About two years later, in June 2002, Lin filed a Title VII and Pennsylvania Human Relations Act (PHRA) lawsuit in this judicial district (*Lin I*). Arguing that her March 2000 acrylic acid presentation complied with any obligations she owed to Rohm and Haas, she again claimed that Rohm and Haas was pursuing the Montgomery County litigation as retaliation for her earlier EEOC complaint. In January 2004, after holding that the Montgomery County litigation was not an adverse action under Title VII's antiretaliation provision, the Honorable J.

---

[1] I recount only an abbreviated version of this case's background and concentrate on facts relevant to this motion.

Curtis Joyner of this court granted Rohm and Haas summary judgment on Lin's Title VII and PHRA retaliation claims.

While *Lin I* was pending, Rohm and Haas shifted its focus in the Montgomery County litigation from Lin's work with acrylic acid to Lin's work with methacrylic acid (MAA). In March 2003, Rohm and Haas learned that Lin was conducting Department of Energy (DOE)-funded research through EverNu—a single-member Pennsylvania LLC formed in 2000 by Lin. Soon after learning of EverNu, in April 2003, Rohm and Haas moved to compel Lin to produce information on EverNu's grant proposal to the DOE. And in August 2003, it subpoenaed EverNu's corporate designee, demanding documents related to EverNu's incorporation, operation, and business and technical activities. Rohm and Haas in 2004 then requested that Lin produce any information on MAA that she had submitted to the DOE. Lin never produced any of this information, and on June 21, 2004, shortly after she lost *Lin I*, she filed another EEOC complaint, this time contending that Rohm and Haas had retaliated against her with these discovery requests.

Rohm and Haas nevertheless continued in Montgomery County to pursue MAA-related discovery and the case against Lin. In July 2004, Rohm and Haas successfully moved for court orders to enforce the MAA-related discovery requests. At Rohm and Haas's request, the court then sanctioned Lin for noncompliance. Rohm and Haas also sought and obtained a default judgment against Lin that enjoined her from using Rohm and Haas trade secrets and from continuing to research MAA, though the Pennsylvania Superior Court later overturned the MAA portion of the injunction.

Following this default judgment, Rohm and Haas contacted the DOE about Lin and EverNu. In a May 2008 letter, Rohm and Haas asked the DOE to sanction Lin and EverNu and

3

also to disclose its plans for the MAA information that Lin and EverNu had generated. Rohm and Haas, through its in-house litigation chief, James Vouros, also sent six emails to the DOE in which it asked about the status of DOE funding for EverNu's MAA project.

A few years later, on May 13, 2011, Lin alone filed this lawsuit—EverNu is not a party. As relevant here, she claimed that Rohm and Haas violated the Title VII and PHRA antiretaliation provisions and intentionally interfered with prospective contractual relations. On March 26, 2012, in deciding Rohm and Haas's motion to dismiss, I held that Lin could not assert retaliation claims based on Rohm and Haas's August 2003 discovery requests and any prior events. Because she litigated and lost those claims in *Lin I*, she was barred from litigating them again here. But I also held that Lin could bring retaliation claims grounded in events after 2004.

Then on April 14, 2014, I denied Rohm and Haas's motion for summary judgment on the Title VII and PHRA retaliation claims. Although Judge Joyner in *Lin I* had held that the Montgomery County litigation was not an adverse action under Title VII's antiretaliation provision, I found that they could now constitute adverse actions given the Supreme Court's intervening decision in *Burlington Northern and Sante Fe Railway Co. v. White*, 548 U.S. 53 (2006). As for Lin's tortious interference with prospective contractual relations claim, however, I held that she lacked standing to bring this claim because it belonged to EverNu. Responding to her claim that EverNu is her alter ego, I found that she had adduced no evidence showing that EverNu's corporate veil should be pierced to allow her to bring this claim for EverNu.

On September 12, 2014, with trial approaching on Lin's retaliation claims, Rohm and Haas moved to exclude/strike Lin's claims for EverNu's damages. As damages for Rohm and Haas's alleged retaliatory actions against her, Lin seeks lost licensing fees belonging to EverNu, lost profits in grants awarded to EverNu, and lost salary to Lin from EverNu as a derivative of

the harm to EverNu that left EverNu unable to pay her.  Highlighting my earlier ruling that Lin

cannot bring EverNu's tortious interference with prospective contractual relations claim, Rohm

and Haas argues that Lin also cannot collect EverNu's damages as part of her retaliation claims.

Rohm and Haas also contends that I cannot pierce EverNu's corporate veil because veil piercing

is never done for the shareholder's benefit and since EverNu is an entity that is separate from

Lin, barring Lin from collecting its damages.   After the parties argued this motion on October 9,

I ordered additional briefing.  With the parties' supplemental briefs submitted, I can now decide

this motion.

## II.    Discussion

### A.    Title VII Law and EverNu's Damages

Under Title VII's antiretaliation provision, an employer may not "discriminate against"

an employee "because [she] has opposed" a practice that Title VII forbids or has "made a charge,

testified, assisted, or participated" in a Title VII proceeding.  42 U.S.C. § 2000e-3.  This

provision "provide[s] [employees with] broad protection from retaliation." *Burlington*, 548 U.S.

at 67.  Given this broad protection, Lin argues that Rohm and Haas must pay her personally for

damages it caused EverNu as part of an alleged retaliatory campaign against her, and that it

matters not that she and EverNu are separate entities under Pennsylvania corporate law.  That

position is untenable.  Although Title VII provides employees with broad protection from

retaliatory acts, it does not nullify state corporate law and allow Lin to collect EverNu's

damages.

The Supreme Court has held that Title VII's antiretaliation provision forbids a wide range

of employer action.  In *Burlington*, the Court established an expansive standard for determining

if an employer's action was retaliatory.  In considering whether the antiretaliation provision

5

reached employer actions taken outside of the workplace, the Court concluded that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace." *Id.* at 63. The Court thus held that a plaintiff must show that the employer's action, regardless of where it took place, "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citations omitted) (internal quotation marks omitted).

The Court then held in *Thompson v. North American Stainless* that this standard applies to third-party reprisals. 131 S. Ct. 863, 867–69 (2011). There, the Court considered, in part, whether the defendant violated Title VII when it fired an employee's fiancé in retaliation for the employee's filing of an EEOC charge so that the fiancé could bring a Title VII action. *Id.* Finding it "obvious" that the defendant's action would dissuade a reasonable employee from engaging in protected activity, the Court held that this third-party reprisal—and others—violate Title VII's antiretaliation provision. *Id.* at 868. According to the Court, to hold otherwise would run counter to *Burlington*'s "broad standard," a standard adopted "because Title VII's antiretaliation provision is worded broadly." *Id.*[2]

Lin argues that *Burlington* and *Thompson* allow her to collect EverNu's damages, without any consideration of Pennsylvania corporate law. She claims that "[t]hese decisions demonstrate that when an employer retaliates against a third party in order to punish the plaintiff, Title VII entitles the plaintiff to recover for profits that she would have received from the third party and other damages that she suffered as a result of the retaliation against the third party."

---

[2] The Court, however, said nothing to suggest that the employee who filed the EEOC complaint could recover whatever damages the fiancé may have suffered as a result of the defendant's actions. Indeed, in *Thompson* it was the terminated fiancé who brought the action.

Lin Supplemental Br. 1.[3]  Lin further argues that "*Burlington Northern* and *Thompson* do not require analysis of corporate technicalities, such as the tax treatment of LLCs or veil piercing, when an employer retaliates against the employee's single member company." *Id.* at 7.

Despite the Court's expansive reading of the antiretaliation provision in these cases, Lin overstates its reach as applied to EverNu's damages.  In both cases, the Court determined what employer actions qualify as retaliatory actions such that a plaintiff can sue under Title VII's antiretaliation provision.  The Court, in essence, established only the broad standard that a plaintiff must meet to satisfy the "adverse action" component of a prima facie retaliation case.[4] The Court said nothing about collecting a third-party's damages, nothing about disregarding the corporate structure, and nothing about Title VII nullifying state corporate law.  The text of Title VII is likewise silent on Lin's position.  Title VII "is thus like many another congressional enactment in giving no indication that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute." *United States v. Bestfoods*, 524 U.S. 51, 63 (1998) (internal quotation marks omitted).

## B.   Pennsylvania Corporate Law

I thus turn to Pennsylvania corporate law to ascertain whether Lin can collect EverNu's damages should I find Rohm and Haas liable for retaliation.  Lin chose to organize EverNu as a Pennsylvania LLC.  As a result, Lin was able to obtain millions in federal grant dollars for

---

[3] Besides *Burlington Northern* and *Thompson*, which do not support this position, Lin cites only *Allen v. Radio One of Texas II, LLC*, Civ. No. H-09-4088, 2011 WL 5156688 (S.D. Tex. Oct. 28, 2011).  That case has no precedential effect here, and, in any event, the Fifth Circuit later reversed the district court's decision on a different ground. *See Allen v. Radio One II, LLC*, 515 F. App'x 295 (5th Cir. 2013).

[4] Indeed, at the summary judgment stage, I held that Lin had alleged facts sufficient to satisfy this broad standard. *See Lin v. Rohm & Haas*, No. 2:11-cv-3158-WY, 2014 WL 1414304, at *6 (E.D. Pa. Apr. 14, 2014) ("The Montgomery County Litigation requests at issue in this case . . . are sufficient to establish a prima facie case that they 'might well have dissuaded a reasonable [scientist-employee] from making or supporting a charge of discrimination.'" (quoting *Burlington*, 548 U.S. at 57)).

7

EverNu[5] while also shrouding EverNu in a "corporate veil" that limited her personal liability for EverNu's debts and obligations. But with these benefits came costs, namely that Lin forfeited the right to sue for EverNu's damages. Now Lin requests that I ignore these "corporate technicalities" and, in essence, pierce EverNu's corporate veil (if Rohm and Haas is liable), allowing her to collect damages that belong to EverNu—not to Lin—under Pennsylvania corporate law. But "there is a strong presumption in Pennsylvania against piercing the corporate veil." *Lumax Indus. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). And it is almost never done to benefit the shareholder "who created the veil in order to procure . . . business advantages," as Lin has done here. *Sams v. Redevelopment Auth. of New Kensington*, 244 A.2d 779, 781 (Pa. 1968).

A court usually pierces the corporate veil after finding that the shareholder and the corporation are the same entity—that there is a unity of interest between them. To determine whether this is the case, the court considers the following factors: "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Lumax*, 669 A.2d at 895 (citation omitted).

Lin, for good reason, has not alleged any of these factors. As Rohm and Haas points out, that is because "of course, Lin would never so allege that EverNu was illegitimately established to perpetuate a fraud or that the factors for piercing the EverNu corporate veil exist, because that would be tantamount to Lin stating that she defrauded the federal government out of millions of dollars in grant monies awarded to EverNu." Rohm & Haas Mot. Limine 10.

Besides, the Pennsylvania Supreme Court has repeatedly refused to pierce a corporate veil to benefit a shareholder who created the veil to obtain business advantages. That is because shareholders "cannot choose to accept the benefits incident to a corporate enterprise and at the

---

[5] The Small Business Administration regulation governing the Small Business Innovative Research Program offering federal grant monies through the DOE requires the grantee to be a business and not an individual.

same time brush aside the corporate form when it works to their (shareholders') detriment."

*Sams*, 244 A.2d at 781. Before choosing a corporate form, shareholders should evaluate the

"advantages and disadvantages" of that form "and after incorporation has been selected, the

shareholders cannot be heard to argue that the courts should not treat them as a corporation for

some purposes and as corporation for other purposes, whichever suits their present economic

interest." *Id.*; *see also Patton v. Worthington Assocs. Inc.*, 89 A.3d 643, 649 (Pa. 2014)

("Individuals elect to conduct their affairs using the corporate form for various reasons, including

to insulate their personal assets from exposure to liability for the debts of the corporation. . . .

Once these choices are made, such persons and entities are not free to blur the lines of the

capacity in which they act as it may suit them, and the courts must take care to maintain the

necessary distinctions.").

For similar reasons, the U.S. Supreme Court, too, has rejected the idea that a court can

pierce a corporation's veil to benefit its shareholder. In *Domino's Pizza v. McDonald*, a sole

shareholder sought to pierce his corporation's veil to state a claim under 42 U.S.C. § 1981, a

statute that combats racial discrimination in contracts, and to collect damages under contracts

that were between his corporation and Domino's. 546 U.S. 470, 473 (2006). In dismissing the

shareholder's claim, the Court asserted that "it is fundamental corporation and agency law—

indeed, it can be said to be the whole purpose of corporation and agency law—that the

shareholder and contracting officer of a corporation has no rights and is exposed to no liability

under the corporation's contracts." *Id.* at 477. By choosing to incorporate his company, the

shareholder had accepted the advantages accompanying that decision, like limited personal

liability, as well as the disadvantages, namely a lack of personal contractual rights under his

corporation's contracts. *Id.* at 477. The Court thus held that the shareholder could not state a

9

§ 1981 claim to seek contractual damages that belonged to his corporation, as this outcome would "make[] light of the law of corporations." *Id.*

Here, when Lin chose to structure EverNu as a LLC, she insulated herself from personal liability for EverNu's debts and obligations. *See* 15 Pa. Cons. Stat. Ann. § 8922(a) ("[T]he members of a limited liability company shall not be liable, solely by reason of being a member, . . . for a debt, obligation or liability of the company of any kind or for the acts of any member, manager, agent or employee of the company."). Indeed, as a Pennsylvania LLC, EverNu was "a separate, fictional legal person distinct from [Lin]." *Missett v. Hub Int'l Pennsylvania, LLC*, 6 A.3d 530, 535 (Pa. Super. Ct. 2010).[6] A cornerstone of corporate law, this corporate veil provided Lin with a significant benefit—limited liability for the debts and obligations of EverNu.

By forming EverNu as a Pennsylvania LLC, Lin also positioned EverNu to receive millions of dollars in DOE grant money. Between January 2002 and April 2008, EverNu received $3.2 million in grants under the DOE Small Business Innovative Research Program (SBIR). To receive this money under the SBIR, EverNu had to qualify as a "business concern," meaning Lin as an individual never could have obtained this SBIR grant money. 13 C.F.R. § 121.702. Lin, in effect, formed EverNu LLC to obtain federal grant money that she needed to pursue her MAA research, inuring to her another benefit of her chosen corporate form.

But Lin's decision to form EverNu as a Pennsylvania LLC did not come without costs. When she structured EverNu in this way, she forfeited her rights to any property acquired by EverNu, such as EverNu's MAA patent. *See* 15 Pa. Cons. Stat. Ann. § 8923(a) ("Property

---

[6] Lin agrees that "EverNu and [she] are separate legal entities with separate legal interests." Rohm & Haas Mot. Limine, Ex. B. At oral argument, however, she retreated from this position, claiming that federal tax law views her and EverNu as one and the same because EverNu's profits pass through EverNu directly to her. But this is not true for Pennsylvania (the incorporating state) tax law. *See* 15 Pa. Cons. Stat. Ann. § 8925(a) (treating LLCs as corporations for tax purposes). Moreover, federal tax law is only one factor, of many, determining whether this corporate veil should be pierced under Pennsylvania law.

transferred to or otherwise acquired by a limited liability company becomes property of the company. A member has no interest in specific property of a company."). Most importantly, she relinquished her right to sue for damages that belong to EverNu. *See id.* § 8991(b) ("A member of a company is not a proper party to an action or proceeding by . . . the company . . . .").

In light of the forgoing authority, I refuse to pierce EverNu's corporate veil at the request of Lin, the person who created it. By structuring EverNu as a Pennsylvania LLC, Lin accepted not only the business benefits accompanying that corporate form, such as limited personal liability and millions of dollars in federal grant money, but also the costs associated with it, namely the inability to sue for damages that belong to EverNu. She therefore cannot now try to avoid that cost because it suits her economic interests in this litigation.[7]

## III.   Conclusion

For these reasons, I exclude Lin's claims for lost licensing fees belonging to EverNu, lost profits in grants awarded to EverNu, and lost salary to Lin from EverNu as a derivative of the harm to EverNu that left EverNu unable to pay her. While Lin correctly asserts that Rohm and Haas's alleged acts against EverNu can qualify as retaliatory acts under Title VII against her, she cannot recover EverNu's damages based on such retaliatory acts against EverNu. An appropriate order has previously been issued.

William H. Yohn Jr., Judge

---

[7] EverNu certainly has the right to sue Rohm and Haas under a different legal theory for the damages Lin seeks here, and it has already done so in the Philadelphia Court of Common Pleas in 2010. Rohm & Haas Mot. Limine, Ex. B.

11